**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMBASE CORPORATION AND CARTERET BANCORP, INC.<br><br>Plaintiffs,<br><br>and<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Civil Action No. 93-531<br>(Judge Loren Smith) |

**AMBASE'S RESPONSE TO THE UNITED STATES' RESPONSE TO THE FDIC-RECEIVER**

The United States makes three arguments in an effort to deprive AmBase of any recovery for the government's breach of contract. We briefly respond to each. The United States argues that Carteret's lost profits must be capped at $266 million because "it is nonsensical to contend . . . that the discounted value of lost profits from the date of the breach to the conclusion of the contracts could exceed $266 million. The asserted market value of the thrift as of the date of breach fully took into account the market's assessment of any profits the thrift would realize over the course of the contract. See *Suess v. United States*, 52 Fed. Cl. 221, 231 (Fed. Cl. 2002)." United States Response to FDIC's Response to AmBase's Corrected Statement of Issues at 2. There are three flaws with this argument. First, the Federal Circuit's decision in *Energy Capital* makes clear that damages incurred prior to the date of judgment should not be discounted and

specifically rejected the government's effort to reduce damages by discounting to the date of breach. *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1330 (Fed. Cir. 2002). Under *Energy Capital*, the undiscounted stream of earnings would be relevant to the extent the Court relied upon the stock market valuation of Carteret in formulating damages. That number would dwarf even a deficit of $300 million. Second, nothing in the Court's decision in *Suess* purports to cap expectancy damages in all cases at the stock market value of the thrift at the time of FIRREA. Rather, the Court awarded such damages only after concluding that the plaintiff in Suess had failed to prove lost profits. Third, it is premature to engage in a substantive discussion of expectancy damages since expert discovery on damages has not even commenced.

The United States also argues that even if AmBase can establish a lost-profits claim in excess of $300 million, this Court should dismiss this case as "nonjusticiable and moot" because the receivership deficit will "greatly exceed $300 million" by the time this case is tried. This argument, however, falls far short of satisfying the United States' burden of establishing mootness. *See* FDIC Response to AmBase's Statement of Issues at 14 (demonstrating that the United States bears a "heavy" burden of establishing mootness); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) (party suggesting that case has become moot bears the burden of proving that "subsequent events" have "produced that alleged result").

First, as demonstrated above, AmBase will demonstrate damages from lost profits in excess of $300 million. Even accepting the United States' projected timeline for the trial of this case and the improperly inflated calculations of the receivership deficit it seeks to defend, the damages owed by the United States will continue to exceed the receivership deficit until this case is tried.

Second, as AmBase has demonstrated in its previous briefing, the FDIC's calculations of the receivership deficit improperly include charges that have not, or need not have, been borne by the United States or the receivership or that are attributable solely to improper government actions that destroyed liquidation value without conferring any benefit on the receivership or AmBase. Accordingly, the damages caused by the United States' breach of contract will continue substantially to exceed the genuine receivership deficit.

Third, even if the United States were correct that the receivership deficit may at some future date exceed the damages otherwise payable to AmBase, that potential plainly does not establish that this Court should dismiss this case as moot **now**. *Cf. United States v. Sharpe*, 470 U.S. 675, 681 n.2 (1985) (refusing to dismiss case as moot and explaining that "had we thought that we should decline to reach every constitutional issue that **might** become moot, we would have denied certiorari"). On the contrary, as this Court has properly recognized, the potential for mootness in this case underscores the need for this court promptly and carefully to "review the receivership deficit to permit inclusion of only those costs which are legitimately part of the receivership deficit," *AmBase Corp. v. United States*, 61 Fed. Cl. 794, 802 (2004), so that the United States is not permitted to insulate its breach of contract from judicial redress by ousting this Court of jurisdiction before it can resolve this case on the merits. *Cf. McDaniel v. Sanchez*, 448 U.S. 1318, 1322 (1980) (Powell, J., Circuit Justice) (granting stay where, *inter alia*, "without a stay [the] petition to this Court will become moot").

Finally, although it appears to concede the possibility that the IRS may settle the tax claim against Carteret and that the receivership may, accordingly, ultimately "show[] a lesser deficit than now appears on the books," United States Response to AmBase's Statement of Issues at 85, the United States argues that this Court must accept as dispositive the FDIC's

current estimates of Carteret's tax liability for purposes of determining justiciability now. As even the FDIC appears to recognize, this position is both unreasonable and unfair. The United States makes no attempt to reconcile its suggestion that this Court may take notice of the reduction or elimination of Carteret's tax liability after that liability is finally determined with its demand that this Court dismiss this case as moot now based on receivership-deficit calculations that include mere estimates of that liability.

More fundamentally, the United States' argument turns Article III on its head. As AmBase has demonstrated, the receivership deficit is in the nature of a group of counterclaims held by the United States against Carteret that it seeks to offset against the damages owed by the United States for breach of contract; as is relevant here, the estimated tax liability represents a potential claim by the IRS against Carteret. But although AmBase and Carteret seek damages for injury they have already suffered as a result of the United States' breach of contract that has already occurred, the estimated offset for taxes indisputably "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that such a claim "is not ripe for adjudication") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). It would make a mockery of Article III to reject Carteret and AmBase's otherwise plainly justiciable claim as moot based on receivership-deficit calculations measured in terms of an estimated tax liability that all acknowledge may never come to pass. *See Glendale Fed. Bank v. United States*, 239 F.3d 1374, 1382 (Fed. Cir. 2001).

November 6, 2006

Respectfully submitted,

/s/ Charles J. Cooper

Charles J. Cooper
*Counsel of Record*

David H. Thompson
Vincent J. Colatriano
Howard C. Nielson, Jr.
David M. Lehn

COOPER & KIRK, PLLC
555 11th Street, N.W., Suite 750
Washington, D.C. 20004
Telephone: (202) 220-9600
Facsimile: (202) 220-9601

**CERTIFICATE OF SERVICE**

I hereby certify on November 6, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this through the Court's system.

/s/ Charles J. Cooper

Charles J. Cooper
COOPER & KIRK, PLLC
555 Eleventh Street NW
Suite 750
Washington, DC 20004
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

Respectfully submitted,