**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMBASE CORPORATION AND CARTERET BANCORP, INC.** | ) | |
| **Plaintiffs,** | ) | |
| **and** | ) | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** | ) | |
| **Plaintiff-Intervenor,** | ) | **Civil Action No. 93-531** |
| **v.** | ) | **(Judge Loren Smith)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**GOVERNMENT OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER SETTING PRETRIAL SCHEDULE**

Plaintiffs Ambase Corporation and Carteret Bancorp, Inc. (herein referred to collectively as "Ambase") seek to have this Court enter a scheduling order which would prevent the Government from filing a motion for summary judgment on damages. Alternatively, Ambase seeks to have this Court enter a scheduling order which would allow the Government to file a motion for summary judgment on damages but would require the parties to submit witness and exhibits lists and memoranda of fact and law prior to the resolution of the Government's motion for summary judgment on damages. For the following reasons, the Government opposes Ambase's motion.

## ARGUMENT

### I. THERE IS NO LEGAL OR FACTUAL BASIS UPON WHICH TO DENY THE GOVERNMENT THE OPPORTUNITY TO FILE A MOTION FOR SUMMARY JUDGMENT ON DAMAGES

Ambase argues in its Motion For Entry Of A Scheduling Order ("Motion") that the Government should be prevented from filing a motion for summary judgment on damages because the issues pertaining to Ambase's damage claims are likely to be "intensely factual," and "any benefit from incorporation of a lengthy summary judgment phase into the pretrial schedule would be far outweighed by the costs of postponing trial in this action." These contentions are both contrary to the record proceedings and invalid. As we demonstrate, motions for summary judgment on damages in Winstar-related litigation have been instrumental in eliminating speculative claims for damages. In addition, while Ambase contends its damage theories will involve "intensely factual issues" which will not be subject to resolution by a motion for summary judgment, in fact this litigation indicates that a motion for summary judgment on damages is likely to eliminate the need for a trial on a broad range of damage-related issues.

#### 1. There Is No Discretion To Deny A Party An Opportunity To File A Motion For Summary Judgment On Damages

While Ambase contends we can be deprived of our right to file a motion for summary judgment on damages, it cites no authority to support this proposition. Moreover, no such authority exists. Indeed, the plain language of RCFC 56(b) argues to the contrary as it provides that any party defending against a claim " may, at any time, move with or without supporting affidavits for a summary judgment . . ." The case law supports a party's entitlement to file a motion for summary judgment on damages at any time in the course of the litigation. See, e.g.,

Andretti v. Borla Performance Industries, 426 F.3d 824, 829-30 (6th Cir. 2005) (defendant was entitled to have his motion for summary judgment on damages heard even if doing so involved amending the scheduling order); Carll v. McClain Industries, Inc., 2001 WL 716128, *4 (D. N.H.) ("Rule 56(b) allows a motion for summary judgment at any time . . ."). Thus, Ambase's motion is contrary to the explicit language of RCFC 56(b) and the applicable case law, and must be denied.

**2. Motions For Summary Judgment On Damages Successfully Have Resolved ManyWinstar-Related Cases And Are Likely To Resolve A Broad Range Of Damage-Related Issues In This Case**

While Ambase suggests Winstar-related damage claims are too factual to be resolved upon a motion for summary judgment on damages, the history of Winstar-related litigation indicates that many damage-related issues Ambase is likely to raise in this case will be susceptible to a summary judgment disposition. For example, as a result of a summary judgment proceeding in Fifth Third Bank of Western Ohio v. United States, 55 Fed. Cl. 223 (2003), aff'd in part and rev'd in part on other grounds, 402 F.3d 1221 (Fed. Cir. 2005), this Court was able to enter a summary judgment in the Government's favor on restitution, reliance, and mitigation damage claims, leaving the issues to be tried a fraction of the original claim. See Fifth Third Bank v. United States, 71 Fed. Cl. 56 (2006), appeal docketed, No. 2006-5128 ((Fed. Cir. Sept. 1, 2006). This result also occurred in Granite Mgmt. Corp. v. United States, 416 F.3d 1373 (Fed. Cir. 2005), where the trial court rejected cost of replacement damage theories on the Government's motion for summary judgment on damages. The Federal Circuit affirmed on all issues except whether the thrift's goodwill might have had value to a buyer. Upon remand, that issue as well was decided adversely to the thrift. See Granite Mgmt. Corp. v. United States, 74

Fed. Cl. 155, 165 (Fed. Cl. 2006).

Contrary to Ambase, therefore, the cases in which damage claims have been fully or partially resolved on motions for summary judgment on damages are legion. See, e.g., American Federal Bank, F.S.B. v. United States, 68 Fed. Cl. 346 (2005) (resolving lost profits and reliance damage claims on a motion for summary judgment on damages); Southwest Investment Company, Inc. v. United States, 63 Fed. Cl. 182 (2004) (awarding motion for summary judgment on damages because of a failure to prove causation); Standard Federal Bank v. United States, 62 Fed. Cl. 265 (2004) (summary judgment on lost profits, reliance and cost of replacement damage claims); Standard Federal Bank v. United States, 2002 WL 31947572 ( Fed. Cl. 2002) (same); Coast Federal Bank, F.S.B. v. United States, 48 Fed. Cl. 402 (2000), aff'd, 323 F.3d 1035 (Fed. Cir. 2003) (summary judgment on plaintiff's lost profits claim).

Further, while Ambase contends its damage claims are likely to focus on "intensely factual issues," it is highly likely Ambase will advance theories which will be susceptible to resolution by a motion for summary judgment on damages. For example, Ambase has already contended that the amount of damage caused by the breach exceeded Carteret Savings Banks ("Carteret's") market capitalization at the time of the breach. This involves a pure question of law rather than "intensely factual issues," and can be resolved on a motion for summary judgment on damages. Likewise, Ambase contended that the value of the goodwill is measurable by a cost of replacement analysis. As demonstrated by Granite and Fifth Third, however, this issue, as well, can be resolved by a motion for summary judgment on damages. Based upon the theories Ambase has already advanced in support of its damage claims, therefore, the theories Ambase may advance in future filings are likely to be subject to resolution

on a motion for summary judgment on damages as well.

In short, based upon Ambase's contentions concerning damages, it is likely that many of th issues it will raise can be resolved on a motion for summary judgment on damages. Accordingly, Ambase's motion should be denied.

**3. Contrary To Ambase, The Filing Of Witness And Exhibit Lists and Proposed Findings Of Fact And Conclusions Of Law Cannot Proceed While Motions For Summary Judgment On Damages Are Pending.**

Ambase argues that, even if the Court allows the Government to file a motion for summary judgment on damages, it should schedule the filing of witness and exhibit lists and proposed findings of fact and conclusions of law prior to resolving the outstanding motions for summary judgment on damages. Contrary to Ambase, however, it is not realistic to require parties to file Appendix A materials prior to the resolution of outstanding motions for summary judgment on damages. While such motions are outstanding, the scope of the issues that will remain for trial is simply unknown, which precludes parties from filing witness and exhibit lists and proposed findings of fact and conclusions of law. Any such materials filed before the resolution of outstanding motions for summary judgment on damages would simply be tentative and would have to be resubmitted after the motions for summary judgment on damages are resolved

Further, the dates Ambase proposes for the filing of motions for summary judgment on damages are unrealistic even if the scope of the proceedings could be known prior to the resolution of motions for summary judgment on damages, which is not the case. For example, the earliest date Ambase advances for the filing of the Government's motion for summary judgment on damages, which is at the time Ambase's experts' reports are filed in May 2007, is

impractical because Ambase's experts will not yet have been deposed and, therefore, the Government will be unable to use their depositions in support of its motion. Likewise, the later date Ambase proposes, which is the time at which the Government's experts' reports are submitted in August 2007 is also impractical because the Government's experts will not have been deposed and, therefore, their testimony will not be available to support the Government's motion for summary judgment on damages.

In short, there is no practical alternative to scheduling the motions for summary judgment on damages to be filed after the completion of expert discovery by the Government and the plaintiffs, and to schedule the filing of Appendix A materials only at reasonable intervals following the resolution of the motions for summary judgment on damages. This is the course generally followed in all Winstar-related cases and Ambase had advanced no persuasive reason it it should not be followed in this case as well.

## II. RATHER THAN SCHEDULING POST-DISCOVERY PROCEEDINGS AT THIS TIME, THIS COURT SHOULD AWAIT THE COMPLETION OF EXPERT DISCOVERY AND THEN DETERMINE THE APPROPRIATE TIME INTERVALS FOR THE REMAINING PRE-TRIAL PROCEEDINGS

Contrary to Ambase, in order to advance the efficient resolution of this proceeding, the schedule for Appendix A and other pre-trial proceedings should be held in abeyance until the completion of discovery and the meeting of the parties at a status conference. At that time, the Court can be advised by the parties if any parties wish to file motions for summary judgment on damages. If parties indicate an intent to file such motions, this Court can schedule filing dates for the respective motions. The schedule of Appendix A and other pre-trial material can await the resolution of the outstanding motions or can be scheduled at certain time intervals following the resolution of the outstanding motions. This will expedite the proceeding and allow an

orderly resolution of the litigation.

## IV. THE SCOPE OF THE TRIAL CANNOT YET BE DETERMINED

Finally, Ambase contends that the trial should not be limited to damage issues but should include receivership deficit issues as well. As we argued in the show cause proceeding, however, as a derivative plaintiff, Ambase is not entitled to any damage award which will be the property of the Federal Deposit Insurance Corporation ("FDIC") as receiver for Carteret. As receiver, the FDIC must distribute the award in accordance with the order of priorities established by the FDIC Act. 12 U.S.C. § 1821(d)(11). This Court has not yet ruled whether it has jurisdiciton to interfere with the calculation of the receivership deficit. If the Court adopts the Government's and FDIC receiver's view that it lacks the authority to oversee the calculation of the receivership deficit, the trial can be and should be limited to a determination of damages. If the Court believes it can exercise jurisdiction over the calculation of the receivership deficit, the trial should include not only the issue of the fact and amount of damage, if any, but also the appropriate calculation of the receivership deficit. Any other result would involve two trial proceedings and will unnecessarily prolong the litigation. Given the lack of certainty at the present time of the scope of the Court's judgment on the extent of its jurisdiction, however, a decision concerning the scope of the trial should be held in abeyance until the Court determines, at the status conference following the close of expert discovery, the extent, if any, to which it may review the FDIC's calculation of the receivership deficit.

## CONCLUSION

For these reasons, we respectfully request that Ambase's motion for the scheduling of pretrial proceedings be denied.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Jeanne E. Davidson for Kenneth Dintzer

KENNETH M. DINTZER
Assistant Director

/ David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-0309

Attorneys For Defendant

CERTIFICATE OF FILING

I hereby certify that on March 12, 2007, a copy of the foregoing Government Opposition To Plaintiffs' Motion For Entry Of An Order Setting Pretrial Schedule was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David A. Levitt