**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMBASE CORPORATION AND CARTERET BANCORP, INC., Plaintiffs, | ) | |
| and | ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Intervenor, | ) | |
| v. | ) | Civil Action No. 93-531 (Judge Loren Smith) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER SETTING PRETRIAL SCHEDULE**

Plaintiffs AmBase Corporation and Carteret Bancorp, Inc. ("Plaintiffs") hereby respectfully submit this reply in support of their motion for entry of an order setting a complete pretrial schedule. In our motion, we requested that the Court establish a schedule for pretrial activities and that it set (subject, of course, to the Court's own schedule) a trial date. While the FDIC supports this request (and, indeed, seeks an earlier trial date than that proposed by Plaintiffs),[1] Defendant, continuing its by-now predictable pattern in the *Winstar* cases of seeking delay wherever possible, opposes our request.[2] For the reasons discussed below and in our motion, Defendant's position, if adopted, would lead to unjustifiable and prejudicial delays in the resolution of

[1] *See* FDIC's Response to Shareholder Plaintiffs' Motion for Entry of an Order Setting Pretrial Schedule ("FDIC Resp.") at 2.

[2] *See* Government Opposition to Plaintiffs' Motion for Entry of an Order Setting Pretrial Schedule ("Gov't Opp.") at 6.

this long-pending case, with little if any countervailing benefits in terms of efficiencies to the parties or to the Court.

In this case, Plaintiffs intend to prove damages that largely track the damages awarded in *Slattery v. United States*. Just as a trial was necessary in that case to resolve the issues of causation and reasonable certainty, so too these inherently factual questions will have to be resolved at trial. Given that *Slattery* has already set forth the legal framework governing such damages, summary judgment in this context will serve no purpose other than delay for delay's sake.

In our motion, we also made what seemed to us the uncontroversial point that there should be only one trial in this case, and that the scope of that trial should include all outstanding issues before the Court, including issues pertaining to damages and to the size of the receivership deficit. With respect to this issue, it is the FDIC that is advocating for a course that would produce delays and inefficiencies, as it argues that this Court should first have a trial and render a decision on damages and only then, if necessary, have further proceedings on the receivership deficit. For the reasons stated below and in our motion, the costs of such bifurcated proceedings significantly outweigh any purported benefits.

## DISCUSSION

### I. PRETRIAL SCHEDULE

Defendant devotes the better part of its Opposition to knocking down a strawman. Claiming that we argue that Defendant "should be prevented from filing a motion for summary judgment on damages," Gov't Opp. at 2, Defendant spends much time marshalling authorities supporting a party's right to file a summary judgment motion. *Id.* at 2-4. It goes so far as to chastise us for citing "no authority to support [the] proposition" that a party can be "deprived of [its] right to file a motion for summary judgment. *Id.* at 2.

Of course, the reason we cited to no authority in support of such an argument is that ***we have never made such an argument***. Nowhere in our motion did we advocate that Defendant "be prevented" from filing a summary judgment motion. Rather, our position was quite straight-forward, and hardly radical: Given the length of time that this case has been pending, and the virtual certainty that the damages issues in this case cannot be fully resolved on summary judgment, the Court should not set a schedule that would indefinitely suspend pretrial proceedings or postpone trial during the pendency of any summary judgment motions that may be filed. In short, while we fully acknowledge the "right" of any party to file a summary judgment motion, we request only that the Court set a schedule that allows the trial and ultimate resolution of this case to avoid being held hostage to summary judgment proceedings that stand no realistic chance of obviating the need for, or significantly narrowing the scope of, trial.

Defendant cites to a handful of *Winstar* decisions in which Defendant was granted summary judgment on damages issues. *See* Gov't Opp. at 3-4. Defendant's reliance on the results of summary judgment proceedings in the *Winstar* cases, however, hardly bolsters Defendant's position. To the contrary, those results prove our point. In only two of the cases cited by Defendant were the plaintiffs' damages claims fully resolved on summary judgment.[3] Moreover, while we are independently aware of two other *Winstar* cases in which all damages issues were resolved on summary judgment, in both of those cases, the Court of Appeals ***reversed*** and remanded for a trial on at least some of those claims. *See, e.g., Granite Mgmt. Corp. v. United States,* 416 F.3d 1373, 1383-84 (Fed. Cir. 2005); *La Van v. United States,* 382 F.3d 1340, 1352 (Fed. Cir. 2004).

The fact of the matter is that the reported *Winstar* decisions convincingly establish the virtual certainty that our damages claims will not be fully resolved on summary judgment. We

[3] *See, e.g., Southwest Inv. Co. v. United States,* 63 Fed. Cl. 182 (2004); *Standard Fed. Bank v. United States,* 62 Fed. Cl. 265 (2004).

are aware of ***at least*** 20 cases in which this Court or the Federal Circuit have held that Defendant's summary judgment motion should be denied either in full or in part.[4] Indeed, just last month, this Court observed that it " 'often has rejected the use of summary judgment in considering claims for expectancy damages.'" *Holland v. United States*, No. 95-524, 2007 U.S. Claims LEXIS 40, at *22 (Fed. Cl. Feb. 20, 2007) (quoting *Astoria*, 72 Fed. Cl. at 717)). In fact, in one of the cases relied upon by Defendant, Judge Miller acknowledged that in light of the inherently factual nature of the damages questions raised in these cases, "it would be the *rara avis*, indeed, that could merit summary judgment." *Fifth Third,* 55 Fed. Cl. at 236. *See also Cal Fed*, 245 F.3d at 1350.

Not only is it virtually certain that summary judgment motions will not obviate the need for a trial, it is also virtually certain that such motions would not substantially narrow the scope of that trial. As we noted in our motion, any damages trial in this case will almost certainly focus on quintessentially factual issues, including but not limited to such questions as whether the claimed damages were caused by the breach, whether Carteret Savings Bank would have failed

[4] *See California Fed. Bank v. United States,* 245 F.3d 1342 (2001); *Granite*, 416 F.3d at 1383-84; *La Van*, 382 F.3d at 1352; *Northeast Sav. v. United States,* 72 Fed. Cl. 173 (2006) (motion denied in full); *Astoria Fed. Sav. & Loan Ass'n v. United States*, 72 Fed. Cl. 712 (2006) (motion denied in full); *Holland v. United States*, No. 95-524, 2007 U.S. Claims LEXIS 40 (Fed. Cl. Feb. 20, 2007) (motion denied in full); *American Fed. Bank v. United States*, 68 Fed. Cl. 346 (2005) (motion denied in part); *American Sav. Bank v. United States*, 62 Fed. Cl. 6 (2004) (motion denied in part); *Anchor Sav. Bank v. United States,* 59 Fed. Cl. 126 (2003) (motion denied in part); *Citizens Fed. Bank v. United States*, 52 Fed. Cl. 561 (2002) (motion denied in part); *Citizens Fin. Servs. v. United States,* 57 Fed. Cl. 64 (2003) (motion denied in part); *Coast Fed. Bank v. United States*, 48 Fed. Cl. 402 (2000) (motion denied in part); *Fifth Third Bank of W. Ohio v. United States*, 55 Fed. Cl. 223 (2003) (motion denied in part); *First Fed. Lincoln Bank v. United States*, 68 Fed. Cl. 602 (2005) (motion denied in part); *Franklin Fed. Sav. Bank v. United States,* 55 Fed. Cl. 108 (2003) (motion denied in part); *Globe Sav. Bank v. United States,* 59 Fed. Cl. 86 (2003) (motion denied in part); *Hometown Fin. v. United States*, 56 Fed. Cl. 477 (2003) (motion denied in part); *Long Island Sav. Bank v. United States*, 60 Fed. Cl. 80 (2004) (motion denied in part); *Southern Nat'l Corp. v. United States,* 57 Fed. Cl. 294 (2003) (motion denied in part); *Westfed Holdings, Inc. v. United States,* 52 Fed. Cl. 135 (2002) (motion denied in part).

even absent the breach, whether the claimed damages have been calculated with reasonable certainty, and whether Plaintiffs engaged in reasonable mitigation efforts. There is simply no appreciable chance that these inherently fact-bound questions could be resolved on summary judgment. *See Cal Fed*, 245 F.3d at 1350 ("Both the existence of lost profits and their quantum are factual matters that should not be decided on summary judgment if material facts are in dispute."); *Northeast*, 72 Fed. Cl. at 180 ("Causation presents a quintessential issue of fact."); *Globe*, 59 Fed. Cl. at 98 ("Causation . . . is an issue of fact and ordinarily is not properly adjudicated on a motion for summary judgment."). Notably, Defendant does not suggest that these types of critical damages issues are suitable to resolution through summary judgment.[5]

In light of these undeniable, and undenied, facts, the relevant question is ***not*** whether Defendant (or any party, for that matter) should be "prevented" from filing summary judgment motions, but rather whether the pretrial schedule should have built into it an open-ended summary judgment phase during which all other pretrial activities, and the trial date itself, are indefinitely suspended. In our motion, we candidly admitted that answering this question requires a balancing of competing interests, and that any resolution of that question carried with it the potential

[5] Defendant does purport to identify other issues that it anticipates may be raised through our damages claims and that it suggests may be resolved through summary judgment. Gov't Opp. at 4-5. Defendant claims, for example, that whether recoverable damages can exceed Carteret's market capitalization at the time of the breach is such an issue. Defendant does not identify a single decision, however, that has rejected such a damages claim, let alone rejected it on summary judgment, and it inexplicably ignores that this Court has itself, after a trial, awarded damages exceeding a seized thrift's market capitalization. *See Suess v. United States,* 74 Fed. Cl. 510 (2006). While Defendant also notes that some decisions have resolved cost of replacement capital damages claims on summary judgment, it incorrectly implies that we have already raised such a damages claim. We have not; instead, our expert has opined that, if the Carteret receivership deficit is a potential offset to damages, that deficit should be adjusted to reflect the unrealized value of Carteret's supervisory goodwill. In any event, the issues Defendant has identified as potential subjects of summary judgment motions do not alter in the slightest the relevant points – *i.e.*, that a trial will certainly need to be held in this case and that the primary damages issues that will need to be resolved are simply not appropriate candidates for summary judgment.

for inefficiencies. We argued that, given the fact that summary judgment motions are extremely unlikely to obviate the need for or significantly narrow the scope of the trial, and given the fact that every day in which the resolution of this case is delayed threatens to further erode the damages to which Plaintiffs may be entitled, that balance weighs heavily in favor of our position. In short, any inefficiencies or unfairness that might result from the parties being required to continue preparing for trial during the pendency of summary judgment motions pales in comparison with the inefficiencies and unfairness that would result should pretrial proceedings and trial be suspended for months while summary motions that stand no realistic chance of either obviating the need for or materially limiting the scope of trial are litigated. Defendant, by contrast, does not even acknowledge the competing interests that must be balanced, and instead simply stresses one side of the equation – *i.e.*, the inefficiencies it believes would result should our proposal be adopted.[6] For that reason alone, Defendant has not demonstrated why the Court should strike the balance in favor of its position.

Ultimately, Defendant's argument that trial should be put off indefinitely in favor of lengthy summary judgment proceedings has very little to recommend it. After fourteen years of

---

[6] Even here, however, Defendant's complaints about inefficiencies ring hollow. Defendant claims that because the scope of trial will remain unknown until summary judgment motions are decided, the parties will be "preclude[d]" from filing witness/exhibit lists and pretrial briefs, and that any such materials would have to be "resubmitted" after the motions are decided. Gov't Opp. at 5. Leaving aside that these two assertions contradict each other, Defendant's concerns are overblown. Even assuming that summary judgment is granted with respect to some aspect of Plaintiffs' damages claims, the most likely result is that the scope of issues to be tried would be reduced. In that event, it would be a fairly simple task for the parties to adjust their witness/exhibit lists to exclude the issues that no longer would need to be tried.

Defendant also complains that our suggestion that it could file any summary judgment motion by September, when it submits its own expert reports, is "impractical" since its experts will not have been deposed by then. Gov't Opp. at 6. This complaint is utterly without merit, since anything that Defendant believes its experts can say to support its summary judgment motion can be said in the expert reports themselves or in an affidavit in support of the summary judgment motion. *See* RCFC 56. Defendant obviously does not need to wait to depose its own experts in order to develop testimony to support its motion.

litigation in this Court (to say nothing of previous litigation in the district court), and with the all-too-real dangers further delay poses to any prospect of recovery by Plaintiffs for Defendant's breach, this Court should insist on a compelling justification before it adopts a proposal that would put off the final resolution of this case any longer than is necessary. Defendant comes nowhere close to providing such a compelling justification.

## II. SCOPE OF TRIAL

The FDIC's position regarding the scope of any trial in this case appears to be based on a series of what we believe to be mistaken premises. The first is that we are seeking to "expand" the scope of trial to include receivership deficit issues, since the Court ruled in 2004 that it saw "no reason to pursue any inquiry into the specifics of the receivership until at least such time as there is a decision that some damages must be awarded." *AmBase v. United States*, 61 Fed. Cl. 794, 802 (2004). *See* FDIC Resp. at 4. But, as the FDIC implicitly acknowledges, much has happened since the time of the 2004 decision. The Court instituted the Show Cause proceedings pertaining to receivership deficit issues, and the parties engaged in extensive fact discovery and expert discovery regarding those issues. The Court subsequently issued its Order of December 13, 2006, in which it found that the issues pertaining to justiciability – *i.e.*, the receivership deficit issues – were "fact dependent" and determined that the case was "justiciable at this time." Plaintiffs understand these developments, and the Court's ruling, to confirm that all relevant factual issues that potentially bear upon any damages award to which Plaintiffs may ultimately be entitled should be within the scope of trial; we would suggest, therefore, that it is the FDIC who is seeking artificially to restrict, and not Plaintiffs who are seeking to expand, the trial's scope.

In any event, with the facts bearing upon receivership deficit issues (at least through the time of the most recent receivership financial statements released by the FDIC) now fully devel-

oped through fact discovery, this case is in a very different posture than it was at the time of the Court's 2004 ruling. It would be terribly inefficient, and would result in considerable delays, if factual issues bearing upon the receivership deficit were ***not*** included within the scope of trial. Notably, as to this point even Defendant agrees, as it insists that any trial "should include not only the issue of the fact and amount of damage, if any, but also the appropriate calculation of the receivership deficit," since "[a]ny other result would involve two trial proceedings and will unnecessarily prolong the litigation." Gov't Opp. at 7.[7]

The FDIC's second mistaken premise is that the size of the receivership deficit bears only upon the issue of justiciability, and is "irrelevant" now that the Court has decided that the case is justiciable. FDIC Resp. at 5. But Defendant, and the FDIC, have argued in other cases, and will certainly argue here, that any damages award must "flow through" the receivership, and that the receivership deficit at the time of any award effectively reduces any damages recovery by the shareholders of the thrift. While Plaintiffs believe that analysis is flawed, the fact remains that if Defendant's and the FDIC's claims are correct, then the proper calculation and size of the receivership deficit unquestionably remain of critical importance in this case.[8] Any factual disputes bearing upon the calculation and size of the receivership deficit should therefore remain within the scope of trial.

In these circumstances, the interests of efficiency and judicial economy clearly point to

[7] Defendant qualifies its position by arguing that the Court should first determine "the extent, if any, to which it may review the FDIC's calculation of the receivership deficit." Gov't Opp. at 7. The FDIC also suggests that it continues to question the Court's jurisdiction to conduct such an inquiry. FDIC Resp. at 5. But regardless of what the FDIC and Defendant think about the jurisdictional issue, the Court has ***already*** made the determination that it has jurisdiction to conduct an inquiry into the receivership deficit. *See AmBase*, 61 Fed. Cl. at 796-803.

[8] For the same reason, the FDIC's suggestion that Plaintiffs wasted time by engaging in discovery into receivership deficit issues that are "irrelevant" to damages is meritless. FDIC Resp. at 3.

the need to have one, and only one, trial in this case. The scope of that trial should include all relevant factual issues bearing upon Plaintiffs' recovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order setting a pretrial schedule that incorporates the dates proposed in our motion.

March 26, 2007

Respectfully submitted,

/s/ Charles J. Cooper

Charles J. Cooper
*Counsel of Record*

David H. Thompson
Vincent J. Colatriano
David M. Lehn

COOPER & KIRK, PLLC
555 11th Street, N.W., Suite 750
Washington, D.C. 20004
Telephone: (202) 220-9600
Facsimile: (202) 220-9601

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March 2007, I caused to be served by the Court's electronic filing system copies of the foregoing on the following counsel:

David Levitt, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.—Room 12006
Attn: Classification Unit—8th Floor
Washington, DC 20530

Andrew Gilbert, Esq.
FDIC Legal Division
550 17th Street, N.W.
Room 2098
Washington, DC 20429

/s/Charles J. Cooper