**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMBASE CORPORATION AND CARTERET BANCORP, INC.,

Plaintiffs,

and

FEDERAL DEPOSIT INSURANCE CORPORATION,

Plaintiff-Intervenor,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 93-531
(Judge Loren Smith)

**MOTION, IN SATISFACTION OF COURT'S REQUEST, TO SUBMIT STATEMENT OF GOVERNMENT REGULATORS' TESTIMONY ON CAUSATION**

AmBase submits this filing in response to the Court's request, during the status conference held on November 14, to identify specific deposition testimony referenced by counsel. Set forth below is the deposition testimony of several senior Office of Thrift Supervision ("OTS") officials acknowledging that Carteret would not have been seized absent the breach. The OTS was Carteret's primary regulator, and each of the three top officials in the Northeast Region, whose testimony is quoted below, confirmed that Carteret would not have been seized if the government had honored its contractual commitment. This testimony precludes the granting of summary judgment in favor of the government on the issue of whether the breach caused Carteret's failure.

As the financial records of Carteret demonstrate, the bank had negative tangible capital of approximately $60 million in 1992 in the aftermath of the breach. Calomiris Report at 48 (attached as Exhibit 3 to Plaintiffs' Position Statement of November 7, 2007). Professor Calomiris has demonstrated that Carteret would have had approximately $140 million of supervisory goodwill available to count toward the tangible capital requirement in the absence of a breach. *See Id.* Carteret therefore would have easily satisfied its tangible capital requirement were it not for the breach. *See Id.* Accordingly, several of the questions to the government regulators focused on this factual scenario.

**<u>TESTIMONY OF ANGELO VIGNA</u>**

Angelo Vigna was the top regulator in the Northeast Region of the OTS at the time of Carteret's seizure. He testified:

> Q. If the injunction that Judge Bissell entered had not been vacated but continued to be in effect, requiring OTS to accord full regulatory capital treatment to Carteret's unamortized supervisory goodwill, would Carteret have been seized, in your opinion?
>
> A. No.

Vigna deposition (attached as Exhibit A) at 159.

> Q. If Carteret had cash, tangible capital, for example, Carteret had raised $150 million to replace dollar for dollar the supervisory goodwill that it lost, would Carteret have been seized in your opinion?
>
> A. No.

Vigna deposition at 158.

> Q. Can you recall a thrift that satisfied or nearly satisfied its tangible capital requirement that was seized?
>
> A. No.

Vigna deposition at 156.

## TESTIMONY OF ROBERT ALBANESE

Mr. Albanese was the second highest ranking official in the Northeast Region of the OTS at the time of Carteret's seizure. He testified as follows:

> Q. Do you believe that Carteret would have been seized if they had satisfied their -- its tangible capital requirement rather than having had, as it did, a tangible capital deficit?
>
> A. No.
>
> . . . .
>
> A. If they had enough that their tangible capital requirement would have been met, I think it gets back to your earlier question, I don't think they would have been seized.

Albanese Deposition at 159-161 (attached as Exhibit B).

## TESTIMONY OF MICHAEL SIMONE

Michael Simone reported directly to Robert Albanese at the time of Carteret's seizure. He testified during his deposition as follows:

> Q. I guess my question to you is if, let's say Carteret had an additional $140 million in capital so that its tangible capital instead of being negative $60 million had been positive $80 million, do you think that Carteret would have been permitted to operate beyond December 4, 1992?
>
> A. It's very likely, particularly if they were still capital deficient there would have been some sort of a capital plan put back in place.
>
> Q. But it's your opinion that given Carteret's core profitability, if it had a positive tangible capital of say $80 million, it would have been permitted to continue to operate, is that correct?
>
> A. It's likely, yes.
>
> Q. Can you think of any instance in which a thrift was seized where it had positive tangible capital of $80 million and core profitability?
>
> A. No.

Simone Deposition at 105 (attached as Exhibit C).

Likewise, in a 1995 interview, Mr. Simone "indicated that had the institution approximately two weeks or a month of existence prior to takeover by OTS, the institution may have survived as the interest rate climate has been changing." Interview notes at 1 (attached as Exhibit D). If the institution would have survived even in the aftermath of the breach, it necessarily follows that Carteret would have survived absent the breach.

* * *

Taken together, these statements create a genuine issue of material fact as to whether Carteret would have been seized absent the breach. These admissions should carry particular weight since these regulators had "spent a lot of time" with Carteret's management and had personal knowledge of the institution. Vigna Deposition at 106. Moreover, Carteret is prepared to offer both expert and fact testimony and other evidence that corroborate the government's admissions. In light of this evidence, and for the reasons stated in its November 7 filing and at the November 14 status conference, AmBase requests that it be permitted to prove its damages, and the invalidity of the receivership deficit, in a trial commencing February 11, 2008.

November 19, 2007

Respectfully submitted,

/s/ Charles J. Cooper

Charles J. Cooper
*Counsel of Record*

David H. Thompson
Vincent J. Colatriano

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November 2007, I caused to be served by the Court's electronic filing system copies of the foregoing on the following counsel:

David Levitt, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.—Room 12006
Attn: Classification Unit—8th Floor
Washington, DC 20530

Andrew Gilbert, Esq.
FDIC Legal Division
550 17th Street, N.W.
Room 2098
Washington, DC 20429

/s/Charles J. Cooper