**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**AMBASE CORPORATION and CARTERET BANCORP, INC.**

**Plaintiffs,**

**FEDERAL DEPOSIT INSURANCE CORPORATION,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

**Civil Action No. 93-531C**

**Senior Chief Judge Loren A. Smith**

# PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS CARTERET BANCORP'S CLAIM FOR A SURPLUS

**Federal Deposit Insurance Corporation**
**Legal Division**
**Andrew C. Gilbert**
***Counsel of Record***
***for Plaintiff-Intervenor FDIC***
**550 Seventeenth Street, NW, MB-3060**
**Washington, DC 20429**
**(202) 898-3871**
**agilbert@fdic.gov**

**Of Counsel:**
**John V. Thomas**
***Deputy General Counsel***
**D. Ashley Doherty**
***Counsel***
**Gary Kuiper**
***Counsel***

**December 21, 2007**

# TABLEOF CONTENTS

PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS .................................................. 1
TABLE OF AUTHORITIES ..................................................................................................II
PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS .................................................. 1
STATEMENT OF THE CASE................................................................................................ 2
ARGUMENT ......................................................................................................................... 3
I. STANDARD OF REVIEW .................................................................................................. 3
II. CARTERET BANCORP MAY NOT CROSS-CLAIM AGAINST FDIC ............................... 3
III. CARTERET BANCORP FAILS TO STATE A CLAIM FOR A SURPLUS ......................... 4
IV. THE COURT LACKS JURISDICTION TO EVALUATE FDIC'S MANAGEMENT OF THE RECEIVERSHIP............................................................................................................ 5
A. DAMAGES MAY NOT BE APPORTIONED BETWEEN FDIC AND SHAREHOLDER PLAINTIFFS ......................................................................................................................... 5
B. NON-APPORTIONMENT OF DAMAGES IS NOT UNJUST ............................................... 7
C. SHAREHOLDER PLAINTIFFS MUST EXHAUST THEIR ADMINISTRATIVE REMEDIES.......................................................................................................................... 8
D. SHAREHOLDER PLAINTIFFS' CHALLENGE IS NOT RIPE FOR REVIEW .................... 9
E. THE COURT LACKS JURISDICTION TO CONDUCT APA REVIEW ............................. 10
F. FDIC CANNOT BE ORDERED TO PAY SHAREHOLDER PLAINTIFFS' ADMINISTRATIVE CLAIM ............................................................................................... 12
CONCLUSION..................................................................................................................... 13
CERTIFICATE OF FILING.................................................................................................. 14

## TABLE OF AUTHORITIES

### Cases

AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I") .................................................... 2, 5
AmBase Corp. v. United States, 61 Fed. Cl. 794, 796 (2004)("AmBase II") ....................... passim
American Capital Corp. v. United States, 472 F.3d 859, 866 (Fed. Cir. 2007).................. 2, 4, 5, 6
American Red Ball Internat'l, Inc. v. United States, -- Fed. Cl. – , 2007 WL 4238993 (Nov. 28, 2007) ................................................................................................................. 3
Armstrong World Indus. Inc. v. Adams, 961 F.2d 405, 411 (3d. Cir. 1992)................................. 9
Carteret Savings Bank, F.A. v. Office of Thrift Supervision, 762 F. Supp. 1159 (D.N.J. 1991), rev'd & vacated, 963 F.2d 567 (3d Cir. 1992)............................................................... 8
Eurodif S.A. v. United States, 506 F.3d 1051, 1054 (Fed. Cir. 2007).................................... 9, 11
Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995)............................................................. 8
Hall v. United States, 69 Fed. Cl. 51, 56 (2005)......................................................................... 11
Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1303-04 (Fed. Cir. 2004). ...................... 4
Hindes v. FDIC, 137 F.3d 148, 165 (3rd Cir. 1998)...................................................................... 12
In re Milwaukee, St. Paul & Pacific Railroad Co., 701 F.2d. 604 (7th Cir. 1983)....................... 10
Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003 ........................................................ 11
McNabb v. United States, 54 Fed. Cl. 759 (2002)....................................................................... 11
MedImmune, Inc. v. Genentech, Inc., -- U.S. – , 127 S.Ct.764, 771 (2007) .............................. 10
Perez v. United States, 156 F.3d 1366, 1370 (Fed.Cir.1998) ....................................................... 3
Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988) .......................... 3
Suess v. United States, 33 Fed. Cl. 89 (1995).................................................................................. 6
Suess v. United States, 52 Fed. Cl. 221 (2002)................................................................................ 6
Suess v. United States, 74 Fed. Cl. 510, 518 (2006) ..................................................................... 6
Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., 482 F.3d 1330, 1336 (Fed. Cir. 2007) ..................................................................................................................... 10
Trek Leasing, Inc. v. United States, 62 Fed. Cl. 673 (2004) ..................................................... 11
United States v. King, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ............................... 12
Whitney Benefits, Inc. v. United States, 18 Cl. Ct. 394 (1989), *modified*, 20 Cl. Ct. 324 (1990), *aff'd*, 926 F.2d 1169 (Fed. Cir. 1991) ........................................................................... 6

### Statutes

12 U.S.C. § 1281(d)(6) ................................................................................................. 8
28 U.S.C. § 2517(a) ...................................................................................................... 12
5 U.S.C. §§ 701 et seq.................................................................................................. 11

### Rules

RCFC 12(b)(1)................................................................................................................ 3
RCFC 12(b)(6)................................................................................................................ 3

### Treatises

J.W. Moore et al., 15 Moore's Federal Practice § 101.75 at 101-152 (3d ed. 2007)...................... 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBASE CORPORATION and<br>CARTERET BANCORP, INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 93-531C<br><br>Senior Chief Judge Loren A. Smith |

**PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS CARTERET BANCORP'S CLAIM FOR A SURPLUS**

Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC") is the successor to the rights of Carteret Savings Bank, FA ("Carteret" or the "thrift"), and manager of the FSLIC Resolution Fund, which succeeded by operation of law to the assets and liabilities of the Resolution Trust Corporation ("RTC"). The FDIC filed a Complaint in Intervention in this action.[1]

FDIC hereby moves to dismiss the claim of plaintiff Carteret Bancorp, Inc. ("Carteret Bancorp") for recovery of "the amount of [a] surplus" in which Carteret Bancorp allegedly "possesses a direct interest." First Amended Complaint ("FAC") Count V.[2] That claim should now be dismissed for failure to state a claim. RCFC 12(b)(6). Shareholder Plaintiffs' subsequent informal claim of "mismanagement" by the FDIC of the Carteret receivership, and their claim for review of the projected receivership deficit, should be dismissed for lack of subject matter jurisdiction. RCFC 12(b)(1).

[1] Complaint in Intervention of Plaintiff Federal Deposit Insurance Corporation, AmBase Corp. v. United States, No. 93-531C (Ct. Fed. Cl.)("AmBase")(Mar. 28, 1997).

[2] Plaintiff AmBase Corp. ("AmBase") is not a party to the claim for a surplus or the derivative claim for breach of contract. FAC Counts V, VI. AmBase is therefore no longer a party to this action.

## STATEMENT OF THE CASE

Plaintiffs Carteret Bancorp and AmBase Corporation ("AmBase")("Shareholder Plaintiffs") asserted six claims for relief: five direct and one derivative. FAC Counts I-V, VI. Four of the direct claims (FAC, Counts I-IV) have been dismissed. AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I"). The fifth direct claim, for recovery of a surplus, is asserted by Carteret Bancorp alone. FAC, Count V.

This Court may have already dismissed this claim informally when, in a prior opinion, the Court was skeptical of Shareholder Plaintiffs' request that it "exercise its power to direct pro rata recovery by the shareholders." AmBase Corp. v. United States, 61 Fed. Cl. 794, 796 (2004)("AmBase II"). The Court noted that the Shareholder Plaintiffs had "not pointed to a single example of such direct recovery" in a case brought before this Court. Id. However, the Court did not expressly dismiss Count V.

The Court subsequently referred to "damages to be awarded to the Plaintiffs" and "damages [to be] recovered by the Plaintiff" and stated that Shareholder Plaintiffs must be put "in 'as good a position as [they] would have been in, had the breaching party fully performed its obligation.' " Id. at 795, 802 (emendation in original)(citation omitted). Such statements, which assume an award of damages directly to Shareholder Plaintiffs, imply that a direct claim survives. Shareholder-Plaintiffs think so: they recently disparaged the idea that a damages award here "must 'flow through' the receivership." Plaintiffs' Reply in Support of Their Motion for Entry of an Order Setting Pretrial Schedule at 8 (Mar. 26, 2007).

Shareholder Plaintiffs are mistaken. The recent case of American Capital Corp. v. United States, 472 F.3d 859, 866 (Fed. Cir. 2007) makes it clear that Carteret Bancorp has failed to state a claim for a surplus. Count V of the FAC should therefore be dismissed. The subsequent infor-

mal claims for "mismanagement" by the FDIC of the Carteret receivership, and for review of the projected receivership deficit, are premised on this mistaken belief that Shareholder Plaintiffs are entitled to a direct award of damages. Therefore, those claims should also be dismissed for lack of subject matter jurisdiction.

## ARGUMENT

### I. STANDARD OF REVIEW

When the issue of subject matter jurisdiction has been raised, "[p]laintiffs must establish jurisdictional facts to survive a motion to dismiss." American Red Ball Internat'l, Inc. v. United States, -- Fed. Cl. – , 2007 WL 4238993 (Nov. 28, 2007); citing RCFC 12(b)(1), Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988). "The court assumes that all well-pled allegations in the Complaint are true and draws all reasonable inferences in plaintiffs' favor. Rule 12(b)(6) states, '[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not, under the law, entitle him to a remedy.' " Id., quoting Perez v. United States, 156 F.3d 1366, 1370 (Fed.Cir.1998), citing RCFC 12(b)(6).

### II. CARTERET BANCORP MAY NOT CROSS-CLAIM AGAINST FDIC

In asserting a claim for a direct award of damages Shareholder Plaintiffs assert that the FDIC has "mismanaged the [Carteret] receivership, resulting in an unfair reduction of the amount of their potential damages award." AmBase II, 61 Fed. Cl. at 796. This is, as the Court recognizes, "a claim against the FDIC," which "is not generally considered to be the government for jurisdictional purposes in *Winstar* litigation"; ergo, "this claim between two non-governmental parties would seem to fall outside the jurisdictional limitations of the Tucker Act." Id. at 796 (internal citations omitted).

In addition, Carteret Bancorp's "mismanagement" claim runs afoul of procedural requirements. The Rules of this Court make no provision for cross-claims. RCFC 13, 14; *cf*. R. Fed. Cir. 13(g). Absent such a provision, Carteret Bancorp may not maintain a "mismanagement" claim against the FDIC here. Its claim for direct recovery of a surplus, and the corresponding "mismanagement" charge, should therefore be dismissed.

III. CARTERET BANCORP FAILS TO STATE A CLAIM FOR A SURPLUS

Carteret Bancorp's remaining direct claim for recovery of a surplus is premised upon the fact that compensation that may be paid to Carteret Savings Bank, F.A. ("Carteret") for the government's breaches of contract. FAC Count V, ¶ 80. Carteret Bancorp alleges that it is entitled to recover the amount of this surplus directly "from the United States." Id. In effect, Carteret Bancorp asks this Court to find that there is a "surplus" resulting from an award of damages to the thrift, determine the amount, and award it directly to Carteret Bancorp rather than to Carteret. See AmBase II, 61 Fed. Cl. at 799 ("Plaintiffs seek to determine the size of the receivership amount so that a damage claim against the government . . . may be apportioned."

That is obviously an impossible task: no surplus exists until after all claims against the receivership have been finally resolved. Moreover, the U.S. Court of Appeals for the Federal Circuit recently made it clear that a bank holding company like Carteret Bancorp may not itself recover for breach of a goodwill contract unless it "has a 'direct *personal* interest in a cause of action.' " American Capital Corp. v. United States, 472 F.3d 859, 866 (Fed. Cir. 2007)(italics added). A bank holding company does not have such an interest unless it was contractually *required* to commit resources (e.g., cash and stock) to a goodwill transaction, even if it actually did so and made promises in connection with the deal. 472 F.3d at 866, citing Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1303-04 (Fed. Cir. 2004). In the absence of a required commit-

ment, a bank holding company's rights to recover damages for the thrift's losses are "purely as a shareholder" of the thrift"; the thrift's injuries that result "in its losses and ultimate downfall are properly its own." American Capital Corp., 472 F.3d at 867.

Carteret Bancorp does not allege that it was contractually required either to make promises or contribute resources. This Court has not found that Carteret Bancorporation was required to make promises or contribute resources; nor has it found that Carteret actually made promises or contributed resources; to the contrary, only Carteret itself has been found to have entered into goodwill contracts with the Government. See, e.g., AmBase I, 58 Fed. Cl. at 36 (FHLBB approved "Carteret's offer"; FHLBB sent "Carteret a forbearance letter"; Assistance Agreement was executed "between Carteret and FSLIC"; etc.). Therefore, Carteret Bancorp's direct claim for payment of a "surplus" should be dismissed.

## IV. THE COURT LACKS JURISDICTION TO EVALUATE FDIC'S MANAGEMENT OF THE RECEIVERSHIP

### A. Damages May Not Be Apportioned Between FDIC and Shareholder Plaintiffs

The FDIC reports annually, as of calendar year-end, the projected financial results for the Carteret receivership.[3] The FDIC makes it clear that its projections are just that, and that the numbers contained therein are subject to a variety of contingencies. Nevertheless, Carteret Bancorp has attacked the FDIC's projections, claiming that they reflect, inter alia, FDIC mismanagement of the Carteret receivership.[4] The Court has proposed that it determine whether the FDIC's projections of liabilities are "accurate or appropriate." AmBase II, 61 Fed. Cl. at 796. The Court also proposes to "carefully review the receivership deficit to permit inclusion of only those costs which are legitimately part of the receivership deficit." Id. at 802.

[3] See, e.g., FDIC, Goodwill Financial Reporting Package—Carteret Federal Savings Bank (Mar. 23, 2007).(FX 1A).

[4] Shareholder Plaintiffs have also asserted that the receivership deficit has been inflated due to misconduct by the Government, such as inadequately funding the Resolution Trust Corporation. [Shareholder Plaintiffs'] Corrected Statement of Issues at 70-71 (June 26, 2006).

As authority for the proposition that it had the power to conduct such an "equitable review," the Court cited to the case of Suess v. United States, 33 Fed. Cl. 89 (1995), which arguably indicated that the Court "might have the power to award a surplus" in this case. AmBase II, 61 Fed. Cl. at 797. The Court then opined that it would be "surprising" if it did not, as a corollary, also have the power "to determine the precise amount of that surplus." Id.

As it happens, no "surplus" was ultimately awarded to the shareholder plaintiffs in the Suess case.[5] Moreover, as demonstrated above, Carteret Bancorp has failed to state a direct claim for a surplus because it has failed to demonstrate the requisite "direct personal interest." American Capital Corp., 742 F.3d at 866. Now that it is clear that Carteret has not met the test for a direct award of a surplus, it follows that the damages award in this case cannot be "apportioned."

As a result, Whitney Benefits, previously viewed as support for a review of the FDIC's management of the Carteret receivership, is now inapposite. In that case, plaintiffs "were each seeking less than one hundred percent of the damages award, but the combined amounts sought by the parties exceeded the total damages award." AmBase II, 61 Fed. Cl. at 800, *summarizing* Whitney Benefits, Inc. v. United States, 18 Cl. Ct. 394 (1989), *modified*, 20 Cl. Ct. 324 (1990), *aff'd on other grounds*, 926 F.2d 1169 (Fed. Cir. 1991). Each plaintiff had a direct claim for a share of a damages award, placing the Government in the position of a "stakeholder." Id. After American Capital Corp., however, it is clear that Carteret Bancorp does not have a direct claim for a surplus. As a result, the Government is not in the position of a stakeholder, there is no possibility that the Government will incur double liability, and there is no need to evaluate the

[5] "[T]he lost franchise value" of the thrift was awarded to the thrift itself (and thus, since the FDIC had succeeded to the rights of that failed thrift, to the FDIC). Suess v. United States, 52 Fed. Cl. 221 (2002). Subsequently, the judgment was amended to include a 50% control premium, to provide that the award of the lost franchise value was in addition to the receivership deficit, and to allow for a future tax gross-up for taxes due on the damages award. Suess v. United States, 74 Fed. Cl. 510, 518 (2006). No direct award of any surplus was ever made to the shareholder plaintiffs.

FDIC's management of the Carteret receivership or its projections of the Carteret receivership deficit.

B. Non-Apportionment of Damages Here Is Not Unjust

Appealing to the Court's sense of justice, Shareholder Plaintiffs argue that the Court should review the FDIC's alleged mismanagement of the Carteret receivership and projections of the receivership deficit because otherwise "the government may prevent Plaintiffs from recovering *any* amount by compounding the interest owed on the receivership deficit and pursuing other actions which enlarge the deficit, and then simply relying on the passage of time to protect the government from recovery," an "unjust result." AmBase II, 61 Fed. Cl. at 802 (emphasis in original).

"[T]he government" does not "compound the interest owed on the receivership deficit." As Carteret Bancorp subsequently acknowledged,[6] the FDIC, not the Government, calculates the interest due on the receivership's outstanding loan from the Resolution Trust Corporation and on claims by third-party creditors. The FDIC, not the Government, selects the applicable interest rate.[7] Finally, the FDIC has *not* attempted to rely "on the passage of time to protect the government from recovery." To the contrary, Shareholder Plaintiffs themselves initiated the time-consuming attempt to dismiss the FDIC as intervenor and have the measure of the FDIC's damages declared,[8] as well as lengthy discovery of the particulars of the receivership deficit (while damages discovery was stayed),[9] thereby delaying trial on damages for several years.[10] If delay

---

[6] [Shareholder Plaintffs'] Corrected Statement of Issues at 48 (June 26, 2006).
[7] Id. at 48-49.
[8] [Shareholder Plaintiffs'] Motion to Dismiss the FDIC and Motion to Define the Measure of Carteret's Contract Damages (Sept. 17, 2003).
[9] [AmBase Corporation's] Motion to Hold Expert Discovery in Abeyance (Sept. 22, 2003).
[10] Scheduling Order, AmBase (Apr. 13, 2007)(re damages discovery).

eventually leads to a result that Shareholder Plaintiffs regard as "unjust," they must accept the consequences.

C. Shareholder Plaintiffs Must Exhaust Their Administrative Remedies

As the Court previously noted, the FDI Act requires claimants of a receivership, including Shareholder Plaintiffs, "to first exhaust administrative remedies" before seeking judicial review of the FDIC's handling of their claims. AmBase II, 61 Fed. Cl. at 798, quoting Freeman v. FDIC, 56 F.3d 1394, 1400 (D.C. Cir. 1995). Claimants have 60 days either to seek administrative review or sue directly in District Court "to challenge the disallowance of their claim." Id, citing 12 U.S.C. § 1281(d)(6). The FDI Act "prevent[s] claimants from seeking a judicial remedy outside of this established procedure." Id. Shareholder Plaintiffs' administrative claim against the receivership is not yet resolved; therefore, they have not satisfied the test for seeking administrative review or suing directly in District Court.

Shareholder Plaintiffs' prior lawsuit in District Court had nothing to do with their claim here that the FDIC has mismanaged the Carteret receivership. The District Court lawsuit did not challenge the FDIC's disallowance of Shareholder Plaintiffs' claim against the receivership. (Indeed, it could not have, since that has not happened.) Rather, as the Court noted, that was a lawsuit, like this one, against the United States for breach of contract. AmBase II, 61 Fed. Cl. at 799, discussing Carteret Savings Bank, F.A. v. Office of Thrift Supervision, 762 F. Supp. 1159 (D.N.J. 1991), rev'd & vacated, 963 F.2d 567 (3d Cir. 1992). The transfer of that lawsuit to this Court, the forum with "exclusive jurisdiction" over federal breach of contract claims, id., will not preclude the District Court from exercising jurisdiction over a *future* lawsuit contesting the FDIC's future resolution of Shareholder Plaintiffs' claim against the Carteret receivership.

D. Shareholder Plaintiffs' Challenge is Not Ripe for Review

In order for an issue to be ripe for judicial review, there must currently be a real dispute to be resolved between the parties. "If the facts are uncertain and the court is being asked to make a legal ruling based on the possibility that certain facts will be found to exist at some point in the future, then a decision [by the court] would constitute nothing more than an advisory opinion based on a hypothetical scenario." J.W. Moore et al., 15 Moore's Federal Practice § 101.75 at 101-152 (3d ed. 2007). The doctrine of ripeness

> is designed to 'prevent the courts , through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' It is drawn 'both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . .'

Eurodif S.A. v. United States, 506 F.3d 1051, 1054 (Fed. Cir. 2007)(internal citations omitted)(challenges to methods and standards Commerce Department would use to review future uranium imports were not ripe for review.

An issue is not yet ripe for review when a "double contingency" exists. Armstrong World Indus. Inc. v. Adams, 961 F.2d 405, 411 (3d. Cir. 1992). In this case, just such a double contingency exists: a real dispute between Shareholder Plaintiffs and the FDIC will not exist unless and until damages are awarded to the receivership on Carteret's derivative contract claim *and* Shareholder Plaintiffs' claim against the receivership deficit is resolved in a manner unsatisfactory to them. There is currently no way to know whether either of those things will happen. Substantive review of the FDIC's projections of the Carteret receivership deficit would thus result in nothing more than " 'an opinion advising what the law would be upon a hypothetical state of facts,' " in a dispute that would not " 'admi[t] of specific relief through a decree of a conclusive character.' " Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., 482 F.3d 1330, 1336 (Fed.

Cir. 2007), quoting MedImmune, Inc. v. Genentech, Inc., -- U.S. – , 127 S.Ct.764, 771 (2007); see also Teva Pharmaceuticals at 1337 (plaintiffs seeking declaratory judgment must show "in-jury-in-fact" that is "likely to be redressed by the requested relief.").

In a strikingly similar case, shareholders of a railroad in the midst of reorganization sought a declaratory judgment that certificates of indebtedness held by the railroad were worthless. In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 701 F.2d 604 (7th Cir. 1983). The shareholders sought to have the certificates declared worthless because they had been issued pursuant to a federal statute, known as the "MRRA," that allegedly violated the Constitution. Holding that the shareholders' claims were not ripe for review, the court stated:

> [T]he shareholders' claims are speculative and hypothetical. The shareholders are not currently suffering any concrete harm because neither the principal nor interest is being paid. There is a possibility that there will be insufficient assets remaining in the estate to satisfy the [railroad's] creditors with priority senior to MRRA claims. There is, moreover, an excellent possibility that the entire MRRA-related debt will be forgiven as a result of [another statute]. If either of these events occurs, there will be no injury to the shareholders, and they will have no case or controversy to press.
>
> . . . .
>
> . . . Future events may well render the shareholders' claims moot.

Id. at 609, 610 (dismissing appeal). Shareholder-Plaintiffs here are in exactly the same position. Therefore, Shareholder Plaintiffs' challenges to the FDIC's management of the Carteret receivership, and the size of the Carteret receivership deficit, are not ripe for review.

E. The Court Lacks Jurisdiction to Conduct APA Review

In managing the Carteret receivership, the FDIC operates in its receivership capacity. Many of the policies and procedures that it applies, however, were—as recognized by Shareholder Plaintiffs—adopted by the FDIC while operating in its corporate capacity. Those policies include, inter alia, the post-insolvency interest rate and the establishment of a Minority Preference Program. See, e.g., AmBase Statement of Issues Reply Brief at 5 (Oct. 19, 2006)(alleging

"improper inflation of the receivership deficit" is attributable to "FDIC in its corporate capacity").

The only statutory basis for attacking those polices is the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"), which provides a remedy for administrative action that is "arbitrary, capricious, or irrational." But claims under the APA are not adjudicable in the Court of Federal Claims. Hall v. United States, 69 Fed. Cl. 51, 56 (2005)(CFC lacks jurisdiction to review an agency decision under the APA), citing Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003)(CFC lacks APA jurisdiction) and McNabb v. United States, 54 Fed. Cl. 759 (2002)("APA reviews are conducted in federal district court rather than the Court of Federal Claims, since the APA addresses 'relief other than money damages.' ").[11]

Even if APA claims were adjudicable in this Court, the appropriate remedy under the APA would not be a judicial determination of the "exact value" of the receivership deficit. It would be to send any invalidated policies back to the FDIC for revision. See, e.g., Eurodif S.A. v. United States, 506 F.3d at 1053 (remand by Court of International Trade to Commerce Dep't of antidumping order). Lacking APA jurisdiction, the Court lacks the ability to invalidate any of the FDIC policies at issue here and require a "do-over." But even if it did, that would not help the Shareholder Plaintiffs, since it would not result in a direct award of damages to them.

Therefore, an opinion deeming an FDIC policy "arbitrary," in violation of the APA, would constitute a mere advisory opinion. This Court thus lacks subject matter jurisdiction over Shareholder Plaintiffs' challenges to the FDIC's management of the Carteret receivership and its projections of the Carteret receivership deficit.

[11] 28 U.S.C.§ 1367, which provides for "supplemental jurisdiction," is not applicable to the Court of Federal Claims. Hall v. United States, 69 Fed. Cl. at 57, citing Trek Leasing, Inc. v. United States, 62 Fed. Cl. 673 (2004).

F. FDIC Cannot Be Ordered to Pay Shareholder Plaintiffs' Administrative Claim

The FDIC cannot be directed here to pass through any specified amount to the Shareholder Plaintiffs in payment of their claim against the Carteret receivership estate. First, as the Court has reiterated, the FDIC is not "the government" for purposes of this case. AmBase II, 61 Fed. Cl. at 797. Second, the FDI Act prohibits judicial action "to restrain or affect the exercise of powers or functions of the [FDIC] as conservator or receivership." 12 U.S.C. § 1281(j). As this Court has acknowledged, "this section is intended to prevent injunctive relief against the FDIC's actions as receiver." AmBase II, 61 Fed. Cl. at 799. The statute applies to the Carteret receivership, because the receivership is involved in an "ongoing administrative proceeding," viz., the resolution of Carteret. Hindes v. FDIC, 137 F.3d 148, 165 (3rd Cir. 1998). Third, the relief this Court can give is "limited to actual, presently due money damages from the United States" and does not include injunctive relief like a directed payment to Shareholder Plaintiffs. United States v. King, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Fourth, this Court may order payments only from appropriated funds, 28 U.S.C. § 2517(a), but a damages award to the Carteret receivership loses that character once made. Therefore, the FDIC cannot be compelled to allow Shareholder Plaintiffs' claim against the receivership. Only if and when that claim is disallowed might judicial review be available.

## CONCLUSION

Carteret Bancorp's direct claim for recovery of "the amount of [a] surplus" in which Carteret Bancorp allegedly "possesses a direct interest" (FAC, Count V) should be dismissed. The Shareholder Plaintiffs' claim for "mismanagement" by the FDIC of the Carteret receivership, and their claim for review of the projected receivership deficit, must also be dismissed.

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert
*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas
*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

December 21, 2007

**CERTIFICATE OF FILING**

I hereby certify this 21st day of December 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*