IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBASE CORPORATION and
CARTERET BANCORP, INC.

Plaintiffs,

FEDERAL DEPOSIT INSURANCE CORPORATION,

Plaintiff-Intervenor,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 93-531C

Senior Chief Judge Loren A. Smith

**PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS CARTERET BANCORP'S CLAIM FOR A DIRECT AWARD OF DERIVATIVE DAMAGES**

Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC") is the successor to the rights of Carteret Savings Bank, FA ("Carteret" or the "thrift"), and manager of the FSLIC Resolution Fund, which succeeded by operation of law to the assets and liabilities of the Resolution Trust Corporation ("RTC"). The FDIC filed a Complaint in Intervention in this action.[1]

In its First Amended Complaint, Carteret Bancorp, Inc. ("Carteret Bancorp") pled a derivative claim for breach of contract on behalf of Carteret Savings Bank, F.A. ("Carteret"). Carteret Bancorp did not claim derivative damages for itself. However, Carteret Bancorp now seeks a direct award of some or all of Carteret's derivative damages.[2] Since Carteret Bancorp has failed to state a claim for relief, that informal claim must now be dismissed. RCFC 12(b)(1), (6).

[1] Complaint in Intervention of Plaintiff Federal Deposit Insurance Corporation, AmBase Corp. v. United States, No. 93-531C (Ct. Fed. Cl.)("AmBase")(Mar. 28, 1997).

[2] Plaintiff AmBase Corp. ("AmBase") is not a party to the derivative claim for breach of contract. FAC Count VI. AmBase is therefore no longer a party to this action.

## STATEMENT OF THE CASE

Plaintiffs AmBase Corporation ("AmBase") and Carteret Bancorp, Inc. ("Carteret Bancorp")(collectively, the "Shareholder Plaintiffs") filed a First Amended Complaint ("FAC") in this action. That complaint asserted six claims for relief: five direct (FAC Counts I-V) and one derivative. FAC Count V. Four of the direct claims (FAC, Counts I-IV) have been dismissed.[3] The FDIC has moved for dismissal of the fifth direct claim. Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for A Surplus (Dec. 21, 2007).

The derivative claim, pled by Carteret Bancorp alone, seeks damages from the Government for Carteret alone. FAC, Count VI, ¶ 87. Those damages would be payable, in turn, to the FDIC as Carteret's successor in interest. Recently, however, Shareholder-Plaintiffs characterized as "flawed" the "analysis" that "any damages award must 'flow through' the receivership, and that the receivership deficit at the time of any award effectively reduces any damages recovery by the shareholders of the thrift." [4] Shareholder-Plaintiffs seem to be implying that they are entitled to a direct award of derivative damages. Not only are they not entitled to such an award, their attempt to obtain it is a violation of their fiduciary duties as derivative plaintiffs. Shareholder Plaintiffs' claim should thus be dismissed.

[3] AmBase Corp. v. United States, 58 Fed. Cl. 32 (2003)("AmBase I"). FAC Counts I-III asserted direct breach of contract claims; Count IV asserted a "takings" claim.
[4] Plaintiffs' Reply in Support of Their Motion for Entry of an Order Setting Pretrial Schedule at 8 (Mar. 26, 2007).

## ARGUMENT

I. STANDARD OF REVIEW

When the issued of subject matter jurisdiction has been raised, "[p]laintiffs must establish jurisdictional facts to survive a motion to dismiss." American Red Ball Internat'l, Inc. v. United States, -- Fed. Cl. – , 2007 WL 4238993 (Nov. 28, 2007); citing RCFC 12(b)(1), Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988). "The court assumes that all well-pled allegations in the Complaint are true and draws all reasonable inferences in plaintiffs' favor. Rule 12(b)(6) states, '[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not, under the law, entitle him to a remedy.' " Id., quoting Perez v. United States, 156 F.3d 1366, 1370 (Fed.Cir.1998), citing RCFC 12(b)(6).

II. CARTERET BANCORP MAY NOT CROSS-CLAIM AGAINST FDIC

As this Court has acknowledged, in asserting a claim for direct payment of damages Shareholder Plaintiffs are asserting that the FDIC has "mismanaged the receivership, resulting in an unfair reduction of the amount of *their* potential damages award." AmBase Corp. v. United States, 61 Fed. Cl. 794, 796 (2004)("AmBase II")(emphasis added). This is, as the Court recognized, a claim against the FDIC." Id. As Court has further acknowledged, the "FDIC is not generally considered to be the government for jurisdictional purposes in Winstar litigation" and "this claim between two non-governmental parties would seem to fall outside the jurisdictional limitations of the Tucker Act." Id.

Carteret Bancorp's claim for direct payment of derivative damages runs afoul of procedural requirements as well. The Rules of this Court, while allowing for counterclaims and third-party claims by the Government, make no provision for cross-claims between plaintiffs. RCFC

13, 14; *cf*. R. Fed. Cir. 13(g). In the absence of any provision for cross-claims, Carteret Bancorp may not maintain a "mismanagement" claim against the FDIC here. Its claim for direct payment of derivative damages, which is premised on the "mismanagement" charge, should therefore be dismissed.

Carteret Bancorp has not sought leave of this Court to amend its complaint to seek the derivative damages for itself, nor has it sought the written consent of the parties to do so. RCFC 15(a). The FDIC does not consent to amendment, just as it does not consent to trial of this claim. RCFC 15(b).

## III. CARTERET BANCORP FAILS TO STATE A CLAIM FOR DIRECT PAYMENT OF DERIVATIVE DAMAGES

### A. New Jersey Law Applies to Carteret Bancorp's Claims

Carteret converted from a state-chartered savings and loan association to a federally-chartered mutual savings and loan association in 1982. It became a federally-chartered stock association in 1983 and remained so until its seizure by the Government on Dec. 4, 1992. Carteret was supervised and regulated at the federal level by the FHLBB and FSLIC until late 1989 and thereafter by Office of Thrift Supervision. [FDIC's] Complaint in Intervention at 3, ¶ 8; FAC at 4, ¶ 7.

Via the Home Owners' Loan Act of 1933 ("HOLA"), Congress delegated broad authority to the OTS (as successor to the Federal Home Loan Bank Board) to regulate federal savings and loan associations. 48 Stat. 128, as amended, 12 U.S.C. § 1461 et seq. That authority is broad, and can extend to the associations' internal management as well as external matter like their relationships with borrowers. Fidelity Federal Sav. & Loan Ass'n v. Cuesta, 458 U.S. 141, 170 (1982). However, it "does not permit [OTS] to pre-empt the application of all state and local laws to such

institutions." Id. at 171 (O'Connor, J., concurring). Nor has OTS attempted to pre-empt all state laws applicable to thrifts.

OTS has regulated certain aspects of the relationship between shareholders and federal stock associations. 12 C.F.R. Part 552 (2007 ed.). Those aspects include, among other things, shareholder meetings and voting. Id. at § 552.6. But OTS has not attempted to regulate shareholder litigation.

In the absence of federal pre-emption, the applicable state law governs shareholder derivative claims. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 97 (1991)(demand requirement in derivative litigation is substantive and governed by state law). Choice of law clauses in the contracts at issue here specify that New Jersey law applies to the extent that federal law does not control. See, e.g., Assistance Agreement between the Federal Savings and Loan Insurance Corporation ("FSLIC") and Carteret § 19 (Sept. 29, 1982); Assistance Agreement between FSLIC and Carteret § 22 (June 6, 1986).[5] There is no federal common law of corporations. O'Melveny v. Myers, 512 U.S. 79, 83-85 (1994); see also Atherton v. FDIC, 519 U.S. 213, 226 (1997)(no general federal common law standard of care for officers and directors of federal savings association). Given the absence of express regulation, Federal law does not control with respect to

[5] Other contract documents contained choice-of-law provisions to the same effect. See, e.g., Merger Agreement between First Federal Savings and Loan Association of Delray Beach and Carteret Savings and Loan Association, F.A., § 17 (Sept. 29, 1982); Merger Agreement between Barton Savings and Loan Association and Carteret Savings and Loan Association, F.A § 17 (Sept. 29, 1982); Federal Home Loan Bank Board Resolution No. 82-662 (Sept. 30, 1982); Combination and Merger Agreement between Admiral-Builders Savings and Loan Association and Carteret Savings and Loan Association, F.A. § 23 (Nov. 21, 1985); .Capital Contribution Agreement between Carteret Savings Bank, F.A. and the Maryland Deposit Insurance Fund § 16 (Feb. 27, 1986); Merger Agreement and Plan of Merger between First Federal Savings and Loan Association of Montgomery County and Carteret Savings Bank, F.A. § 16 (June 3, 1986); Acquisition Agreement between the Federal Savings and Loan Insurance Corporation , ad Receiver for Mountain Security Savings Bank, and Carteret Savings Bank, F.A. § 15 (June 6, 1986). That is hardly surprisingly, given that Carteret's principal office was located in Newark, New Jersey. Id. at § 1. In the absence of a choice of law provision, the law of the state of incorporation would apply. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991); *see also* Hicks v. Lewis, 2003 WL 22309482 (Tenn. Ct. App. Oct. 7, 2003)(after Kamen, all cases apply substantive law of state of incorporation to demand requirement).

this shareholder derivative suits and New Jersey law thus applies to Carteret Bancorp's claim for direct payment of some or all of a derivative award.

B. Derivative Damages Are Payable Only to Carteret

1. Under New Jersey Law, Derivative Damages Are Payable Only to the Thrift

According to the New Jersey Supreme Court,

> '[a] shareholder derivative action permits a shareholder to bring suit against wrongdoers *on behalf of the corporation*, and it forces those wrongdoers to compensate the corporation for the injury they have caused.' In that circumstance, 'the cause of action actually belongs *to the corporation* . . . .'

In re PSE & G Shareholder Litigation, 173 N.J. 258, 177-78 801 A.2d 295, 307 (N.J. 2002)(internal citation omitted)(emphasis added); see also Pomeroy v. Simon, 17 N.J. 59, 64, 110 A.2d 19, 22 (N.J. 1955)(derivative action is "designed to redress the wrongs to the corporation itself . . . for the benefit of the corporation.").[6] As a result, the recovery in a derivative action "inures to the benefit of the corporation." In re Sharkey v. Emery, 272 B.R. 574 (Bankr. D.N.J. 2001); see also Valle v. North Jersey Automobile Club, 125 N.J. Super. 302, 307, 310 n. 4; 301 A.2d 518, 521, 522 n.4 (N.J. Super. Ch. 1973)("Any recovery by the representative plaintiff inures to the corporation's benefit, not the plaintiff's . . . The corporation is entitled to all, not just part, of the benefits.")

This is especially so in the case of corporation in receivership. In the case of a closely-held *open* corporation, it may be permissible to order an individual recovery, provided that " 'to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporations, and (iii) interfere with a fair distribution of the recovery among all interested persons.' " Brown v. Brown, 323 N.J. Super. 30,

[6] The New Jersey Court Rules furnish the procedural rules for bringing a shareholder derivative action; New Jersey common law furnishes the substantive law. In re PSE & G Shareholder Litigation, 173 N.J. 258, 287, 801 A.2d 295, 312 (discussing N.J.S.A. Rule 4:32-5, now 4:32-3).

36, 731 A.2d 112 (App. Div. 1999), quoting American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.01(d); see also id. at 38 ("Nor is there any suggestion in the record that [the corporation] has been left with assets insufficient to meet its obligations to creditors, who would therefore be prejudiced if [plaintiff] is permitted to recover damages that otherwise are due the corporation.") But the shareholders of a corporation in receivership, even one that is closely-held, will rarely (if ever) be able to meet that test, since direct recovery in that situation will necessarily "prejudice the interests of creditors" and "interfere with a fair distribution of the recovery among all interested person." Indeed, under New Jersey law, "[w]here the corporation is in the hands of a receiver, the right of action by the receiver to protect the interest of the corporation is exclusive." Wachsman v. Tobacco Products Corp. of New Jersey, 42 F. Supp. 174, 178 (D.N.J. 1941). Thus Carteret Bancorp may not, under New Jersey law, obtain a direct award of damages on the derivative claim.

2. Corporate Law Generally Precludes Direct Payment of Derivative Damages

The general trend of state corporate law is to the same effect. Where goodwill contract claims are brought derivatively, "the only claim that can be heard is the corporation's contract claims against the government and the only beneficiary of any relief will similarly be the corporation." First Hartford Corp. Pension Plan & Trust v. United States, 194 F. 3d 1279, 1293 (Fed. Cir. 2000); *see also* Bailey v. United States, 341 F.3d 1342, 1347 (Fed. Cir. 2003). In other words, "[t]he proceeds of [a derivative] action belong to the corporation," Ross v. Bernhard, 396 U.S. 531, 538 (1970); *see also* 5 J.W. Moore et al., Moore's Federal Practice § 23.1.02[1](3d ed. 2005).

The same is true with respect to shareholder derivative claims brought by shareholders of bankrupt entities. In re Ionosphere Clubs, Inc., 17 F.3d 600, 606 (2d Cir. 1994), quoted in

Statesmen Savings Holding Corp. v. United States, 41 Ct. Cl. 1, 17 (1998). Moreover, most states do not allow an exception in the case of closely-held corporations, even if the shareholders were " 'severely personally damaged ' " S. Aronson et al., Shareholder Derivative Actions: From Cradle to Grave" ¶ I.A.f. (Practicing Law Institute 2007), quoting Glod v. Baker, 851 So.2d 1255, 1264-67, 1276 (La. App. 3rd Cir. Aug. 6, 2003). Therefore, any and all damages awarded on the shareholder derivative claim in this case must be paid to the FDIC as successor to Carteret.

3. *Slattery* Does Not Support Payment of Derivative Damages to Shareholder Plaintiffs

Shareholder Plaintiffs recently stated that they are now seeking a "Slattery-type award," by which they appear to mean an award to them, rather than to Carteret, of some or all of the damages awarded on Carteret's derivative claim.[7] If so, they misread the final order in that case.

At one point during the proceedings before the trial court, the Slattery shareholder plaintiffs sought payment to themselves of derivative damages.[8] The Government expressed concern that those shareholder plaintiffs were seeking to have the trial court's damages award "paid outside of the receivership framework." Transcript of Proceedings, Slattery v. United States, No. 93-280 (Ct. Fed. Cl., June 15, 2006) at 59-60. Eventually, however, the Court and all parties agreed that the damages award had to be paid to the FDIC as receiver for the thrift, and the final order

[7] Telephone Status Conference Call before Sr. Judge Smith, AmBase (Nov. 30, 2007)(statement of counsel for Shareholder Plaintiffs) (transcript unavailable). It is theoretically possible that Shareholder Plaintiffs meant that they want an award of damages in the form of the receivership deficit plus their own losses. But given Shareholder Plaintiffs' insistence that Carteret receivership deficit should be zero, and the Court's inability to enjoin the FDIC with respect to the allowance of administrative claims against the receivership, the effect of such a request would be to reduce the total damages award to Carteret, to Shareholder Plaintiffs' almost certain detriment. A request for such a result would be highly quixotic.

[8] At the time of the hearing, the Court of Appeals had not issued its decision in American Capital Corp. The decision was not issued until October 30, 2006, -- days after the Slattery hearing and only – days before the Slattery decision. The American Capital Corp. decision was not final until March 8, 2007, well after Slattery.

so provided.[9] The Slattery shareholder plaintiffs agree with the FDIC that "any final judgment in this case will be paid by the United States to FDIC-Receiver."[10] A "Slattery-type award" is thus one that, in accord with generally-applicable principles, awards all derivative damages to the FDIC as receiver.

4. Carteret's Quest for Direct Damages Infringes on Its Derivative Shareholder Duties

Carteret Bancorp originally asserted that it would "fully and adequately represent" not only "the shareholder's interest" but also "the interests of Carteret's creditors, in pursuing Carteret's claims against the United States." FAC, Count VI, ¶ 85. In seeking to appropriate for itself the damages awarded on the derivative claim, Carteret Bancorp is obviously not representing the interests of Carteret's creditors, either governmental or non-governmental.[11]

Carteret Bancorp may not put its interests ahead of the interests of Carteret's creditors. To the contrary, a would-be derivative plaintiff will be disqualified its interests are "antagonistic" to "the very parties he seeks to represent." Salovaara v. Jackson Nat. Life Ins. Co., 66 F. Supp. 2d 593, 603, 602 (D.N.J., 1999)(plaintiff was engaged in litigation with "the very entities that he purports to represent here derivately"). In a derivative suit, shareholder plaintiffs "may be considered as trustees or guardians ad litem to the corporation's right of action." Ensher v. Ensher, Alexander & Barsoon, Inc., 187 Cal. App. 2d 407, 410 (Cal. App. 3d Dist. `1960); see also First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1293 (shareholders "file suit as fiduciaries on the corporation's behalf and for the corporation's benefit")(Fed. Cir. 1999), quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549 (1949)("[A] stockholder who brings suit on a cause of action derived from the corporation assumes a position, not

[9] For a full discussion of this history, see Brief of Amicus Curiae The Federal Deposit Insurance Corp., Slattery v. United States, No. 2007-5063 (Fed. Cir., Aug. 13, 2007)("Slattery").
[10] Brief for Plaintiff-Cross Appellant Frank P. Slattery, Slattery (Nov. 20, 2007).
[11] FDIC, Goodwill Financial Reporting Package—Carteret Federal Savings Bank, Report 3 (Mar. 23, 2007)(FX 1A)(Ex. 1 hereto).

technically as a trustee perhaps, but one of a fiduciary character").[12] In overlooking its duties to Carteret's creditors, Carteret Bancorp did not act as a trustee, guardian ad litem, or fiduciary or Carteret.

Dismissal of Carteret Bancorp as a plaintiff would be an appropriate solution to that holding company's conflict of interest. However, it would be a costly and inefficient solution. Instead, Carteret Bancorp's claim for a direct award of derivative damages should be expressly dismissed and Carteret Bancorp should be charged with the duty it assumed in the FAC: viz., representation of the interests of Carteret as a whole, including the interests of its creditors, both governmental and non-governmental, as well as its shareholders.

If it does so successfully, Carteret Bancorp can expect to share, not seize, any derivative damages award.

**CONCLUSION**

Carteret Bancorp's informal claim, to some or all of the damages that may be awarded on the derivative claim, for breach of contract, that it asserted on Carteret's behalf, must be dismissed.

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert
*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas

[12] For that reason that Carteret Bancorp lacks the power to settle or compromise Cartertet's breach of contract action without this Court's approval. RCFC 23.1; *cf.* First Hartford Corp. Pension Plan & Trust v. United States, 54 Fed. Cl. 298 (2002)(court-approved dismissal).

*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

December 21, 2007

**CERTIFICATE OF FILING**

I hereby certify this 21st day of December 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*