IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBASE CORPORATION and
CARTERET BANCORP, INC.

Plaintiffs,

FEDERAL DEPOSIT INSURANCE
CORPORATION,

Plaintiff-Intervenor,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 93-531C

Senior Judge Loren A. Smith

**PLAINTIFF-INTERVENOR FDIC'S MOTION TO DISMISS SHAREHOLDER PLAINTIFFS' CLAIM THAT DAMAGES SHOULD BE BASED ON THEIR ALLEGED LOSSES**

Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC") is the successor to the rights of Carteret Savings Bank, FA ("Carteret" or the "thrift"), and manager of the FSLIC Resolution Fund, which succeeded by operation of law to the assets and liabilities of the Resolution Trust Corporation ("RTC"). The FDIC filed a Complaint in Intervention in this action.[1]

FDIC hereby moves to dismiss Shareholder Plaintiffs' claim that the Court should award the losses allegedly suffered by the Shareholder Plaintiffs, in the past or in the future, as damages on the derivative claim asserted by Carteret Bancorp, on behalf of Carteret, for breach of contract. FDIC also moves to dismiss Shareholder Plaintiffs' theory that the "exact value of the

[1] Complaint in Intervention of Plaintiff Federal Deposit Insurance Corporation, <u>AmBase Corp. v. United States</u>, No. 93-531C (Ct. Fed. Cl.)("<u>AmBase"</u>)(Mar. 28, 1997).

Carteret receivership," AmBase Corp. v. United States, 61 Fed. Cl. 794 (2004)("AmBase II"), is relevant to the calculation of damages on that derivative claim.

**STATEMENT OF THE CASE**

Plaintiffs AmBase Corporation ("AmBase") and Carteret Bancorp, Inc. ("Carteret Bancorp")(collectively, the "Shareholder Plaintiffs") filed a First Amended Complaint ("FAC") in this action. That complaint asserted six claims for relief: five direct (FAC Counts I-V) and one derivative. FAC Count V. Four of the direct claims (FAC, Counts I-IV) have been dismissed.[2] The FDIC has moved for dismissal of the fifth direct claim. Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for A Surplus (Dec. 21, 2007).

The derivative claim, pled by Carteret Bancorp alone, seeks damages from the Government for Carteret. FAC, Count VI, ¶ 87. The damages it seeks are for Carteret's losses. Id. Since filing their FAC, however, Shareholder Plaintiffs have argued to the Court that it must "determine the size of the deficit or surplus in order to determine the just amount which puts *them* in 'as good a position as *[they]* would have been in,' had the breaching party fully performed its obligation."AmBase II, 61 Fed. Cl. at 794 (alteration in original)(emphasis added). In other words, Shareholder Plaintiffs argue that the measure of Carteret's damages is not the Thrift's loss but their own. This theory does not state a claim for relief under applicable contract law and must therefore be dismissed. RCFC 12(b)(6).

**STANDARD OF REVIEW**

When the issue of subject matter jurisdiction has been raised, "[p]laintiffs must establish jurisdictional facts to survive a motion to dismiss." American Red Ball Internat'l, Inc. v. United States, -- Fed. Cl. – , 2007 WL 4238993 (Nov. 28, 2007); citing RCFC 12(b)(1), Reynolds v.

[2] AmBase Corp. v. United States, 58 Fed. Cl. 32 (2003)("AmBase I"). FAC Counts I-III asserted direct breach of contract claims; Count IV asserted a "takings" claim.

Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988). "The court assumes that all well-pled allegations in the Complaint are true and draws all reasonable inferences in plaintiffs' favor. Rule 12(b)(6) states that '[a] motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not, under the law, entitle him to a remedy.' " Id., quoting Perez v. United States, 156 F.3d 1366, 1370 (Fed.Cir.1998), citing RCFC 12(b)(6).

**ARGUMENT**

I. DAMAGES ARE MEASURED BY CARTERET'S LOSS ALONE

The underlying fatal flaw in Shareholder Plaintiffs' argument is that Shareholder Plaintiffs have no direct claims based on the Government's breach of Carteret's goodwill contracts. Because Shareholder Plaintiffs lack direct claims, no attempt to measure their past or future "losses" has any legal significance in this action.

In an early opinion in this case, while dismissing Shareholder Plaintiffs' "takings" claim, the Court stated that

> The government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action.

AmBase Corp. v. United States, 58 Fed. Cl. 32, 51 (2003)(emphasis added)("AmBase I"); *see also id*. (compensation "due to Carteret"). This seemed to make it clear that any damages awarded on Carteret Bancorp's derivative contract claim would be paid to Carteret, to which the FDIC is now successor. This statement also seemed to make it clear that damages on the breach of contract claim would be measured by the loss to Carteret alone.[3]

---

[3] Indeed, Shareholder Plaintiffs' First Amended Complaint ("FAC") specifically asserted that the Government's breach of the goodwill contracts at issue here caused harm to Carteret and entitled Carteret to damages from the Government. FAC Count VI.

In another opinion, however, the Court expressed the apparently contrary view that

> since the Ambase Plaintiffs are to have *their* recovery reduced by the size of the receivership deficit, the Court must determine the size of the deficit or surplus in order to determine the just amount which puts *them* in 'as good a position as *[they]* would have been in,' had the breaching party fully performed its obligation.

AmBase Corp. v. United States, 61 Fed. Cl. 794, 802 (2004)("AmBase II")(alteration in original)(emphasis added), quoting Bluebonnet Savings Bank, FSB v. United States, 339 F.3d 1341 (Fed. Cir. 2003). This seemed to say that the measure of damages award in a shareholder derivative suit involving a goodwill contract is the loss to the shareholder plaintiffs, rather than to the corporation on whose behalf they sue. If so, the statement is not correct.

As the Court correctly stated earlier, "the purpose of a damages award for the breach of a contract is to restore *the victim of the breach* to the position in which he would have been in were the contract not breached." AmBase II, 61 Fed. Cl. at 801, citing Dobbs, Law of Remedies, § 1.1, at 3 (2nd ed. 1995)(emphasis added). That victim is, as the Bluebonnet case made clear, the non-breaching contract party. Bluebonnet Savings Bank, F.S.B. v. United States, 266 F.3d 1349, 1356 (2001), quoting Restatement (Second) of Contracts, § 344(a)(1981), citing Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001). As recognized in the Court's early opinion, that non-breaching contract party is Carteret, not the Shareholder Plaintiffs. AmBase I, 58 Fed. Cl. at 51. Carteret alone is to be restored "to as good a position as [it] would have been in" had the goodwill contracts not been breached.

Because Shareholder Plaintiffs have no direct contract claims, and thus are not victims of the breach, the Court has no reason to determine what amount would put them in "as good a position as [they] would have been in" had the Government fully performed its obligations.

AmBase II, 61 Fed. Cl. at 802 They do not risk having "their recovery" reduced, whether by the receivership deficit or anything else, because the recovery on the derivative contract claim—the only contract claim remaining in this case—is Carteret's, not theirs.[4] Nor does the Court have any reason to determine the "exact value" of the Carteret receivership deficit: that sum is irrelevant to a determination of Carteret's losses.[5]

## II. CARTERET'S RECEIVERSHIP DEFICIT IS NOT RELEVANT TO ITS DAMAGES

As an alternative basis for reviewing the receivership deficit, Shareholder Plaintiffs assert that the FDIC has mismanaged the Carteret receivership and that, as a result, either this case will become moot (because the projected receivership deficit will come to exceed the damages award), or, if the case remains justiciable, Shareholder Plaintiffs will ultimately receive less, in payment on their receivership claim, than they believe that they should. AmBase II, 61 Fed. Cl. at 796, 802. They assert that an inquiry into the "exact value" of the Carteret receivership deficit should be conducted in order to prevent this hypothetical future result.

Shareholder Plaintiffs are mistaken, as to the facts and the law. First, the FDIC has complied fully and reasonably with its statutory duties in managing the Carteret receivership. Second, Shareholder Plaintiffs' claims of future underpayment are premature. As the FDIC has consistently stated, its projections of the Carteret deficit are highly contingent.[6] Moreover, Shareholder Plaintiffs have only a "*contingent* interest in a liquidation surplus" arising from the fact that "*if* funds remain after all depositors, creditors, and other claimants have been paid, the

[4] Shareholder Plaintiffs' claim for a direct award of derivative damages must be dismissed. Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for a Direct Award of Derivative Damages (Sept. 21, 2007).
[5] Perhaps the Court's remark was addressed not to the derivative contract claim but rather to Carteret Bancorp's direct claim for a surplus.. Due to developments in goodwill contract law, that claim is no longer viable and must be dismissed. Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for A Surplus (Dec. 21, 2007).
[6] FDIC, Goodwill Financial Reporting Package—Carteret Federal Savings Bank, Report 3 (Mar. 23, 2007)(FX 1A)(Ex. 1 hereto).

receiver is to distribute such funds to the depository institution's shareholders" and thus a favorable judgment could "*potentially* enlarge any liquidation surplus to be distributed among the shareholders." First Hartford Corp. Pension Plan & Trust v. FDIC, 194 F.3d at 1288, citing 12 U.S.C. § 1821 (d)(11). Until this case, along with all claims against the Carteret receivership, is resolved, the deficit in that receivership has no "exact value."

Most importantly, FDIC's management of the Carteret receivership is, like the projected receivership deficit, irrelevant for purposes of calculating damages from breach of Carteret's goodwill contracts. Neither the FDIC's management nor the projected receivership deficit has anything to do with the amount of damages owed by the Government *to Carteret*. That amount is measured exclusively by the loss suffered by the Thrift. As far as this case is concerned, the projected receivership deficit may become relevant, if at all, only to the issue of justiciability, which may arise again *after* damages are determined.

As in other cases, the Court here may have to "wrestle" with "finding a viable damages theory that fits the complex fact patterns of these cases, and that is fair *to the damaged thrift[]*, but is based on real losses sustained so as not to overcompensate for the breach." Glendale Fed. Bank F.S.B. v. United States, 378 F.3d 1308, 1312 (2004)(emphasis added). But fairness to Carteret is the only fairness that is relevant to determining damages on Carteret's derivative contract claim.

**CONCLUSION**

Shareholder Plaintiffs's claim that losses allegedly suffered by them, in the past or in the future, are relevant to the calculation of damages on the derivative claim, asserted by Carteret Bancorp on behalf of Carteret, for breach of contract, should be dismissed. Shareholder Plaintiffs's related claim, that the "exact value of the Carteret receivership" is relevant to the calculation of damages on that derivative claim, should also be dismissed. *See* Fifth Third Bank

of Western Ohio v. United States, 402 F.3d 1221, 1223, 1236-37 (2005)(upholding trial court's pre-trial decision to preclude goodwill contract plaintiff from presenting "cover damages" theory).

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert
*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas
*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

December 21, 2007

**CERTIFICATE OF FILING**

I hereby certify this 21st day of December 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*

FDIC
Federal Deposit Insurance Corporation
3501 North Fairfax Drive
Arlington, VA 22226

March 23, 2007

**TO:** Floyd Robinson, Senior Counsel
Legal Division

**FROM:** J. Craig Sweeney, Manager
Subsidiary Accounting and Resolution Support Unit
Division of Finance

**SUBJECT:** Goodwill Financial Reporting Package – Carteret Federal Savings Bank

Attached is the Division of Finance's Goodwill Financial Reporting Package for the Carteret Federal Savings Bank receivership as of December 31, 2006. Included in this package are the following four reports which were specifically prepared to support this goodwill litigation matter:

| | |
|---|---|
| Report 1 | Inception Pro Forma Recap |
| Report 1-A | Mapping of Total Asset Inception Balances from Report 1 to Report 2 |
| Report 2 | Statement of Assets and Liabilities in Liquidation (unaudited) |
| Report 3 | Projected Receivership Results as of 12/31/2006 |

A standard set of receivership financial statements for Carteret Federal Savings Bank as of December 31, 2006 is also provided. DOF releases these receivership financial statements to the public upon FOIA or other requests.

Attachments

cc: Susan Bank, Legal Division
John V. Thomas, Legal Division

# CARTERET FEDERAL SAVINGS BANK
## Receivership Fund Code: 1309
## Inception Date: 1/20/1995

## Goodwill Package as of December 31, 2006

### REPORT 1: Inception Pro Forma Recap

This report summarizes the inception balances of this receivership per the Pro Forma package prepared by the Closing team. Adjustments are made to the failed institution's balance sheet in order to reflect the proven balances through the date of closing, as well as convert those asset and liability balances retained by the FDIC/RTC to a cash basis of accounting.

### REPORT 1-A: Mapping of Total Asset Inception Balances from Report 1 to Report 2

This report provides a mapping of how the Pro Forma inception balances in Report 1 were combined and/or reclassified to record the inception balances on the receivership's general ledger, as presented in Report 2.

### REPORT 2: Statement of Assets and Liabilities in Liquidation (unaudited)

This report presents the financial position of this receivership as of December 31, 2006 based on actual general ledger results and post-close adjustments, if any. The total asset, liability, and net assets/(deficit) balances at inception are carried forward from Report 1.

### REPORT 3: Projected Receivership Results as of 12/31/2006

This report projects the financial position of this receivership after application of estimated liabilities based on assumed priority. The focus of this report is the underlying net assets/(deficit) position at various stages of claim distribution. Refer to Report 3 footnotes for additional information.

### Receivership Financial Statements

The Statement of Assets and Liabilities in Liquidation (unaudited), Statement of Operations (unaudited), and accompanying footnotes are produced from the FDIC general ledger accounting system and present both year-to-date and inception-to-date receivership activity for the period ended December 31, 2006.

# CARTERET FEDERAL SAVINGS BANK
## INCEPTION PRO FORMA RECAP
(Rounded in Dollars)

**REPORT 1**
**Pro Forma Recap**

**Receivership Fund Code: 1309**
**Inception Date: 1/20/95**

| | Pro Forma Unadjusted Balance | Pro Forma Adjustments [a] | Inception Balances (Per Pro Forma) (Adjusted by RTC) |
|---|---|---|---|
| **Assets** | | | |
| Cash and Non-Interest Earning Deposits | $ 10,063,050 | $ (3,275) | $ 10,059,775 |
| Interest Earning Deposits with FHLB | 2,658,733 | - | 2,658,733 |
| Securitization Reserve | 71,312,507 | (7,684,100) | 63,628,407 |
| Other Investment Securities | 7,389,821 | 7,077,893 | 14,467,714 |
| **Subtotal Cash and Due From Balances** | **91,424,111** | **(609,482)** | **90,814,629** |
| MBS Guar/Insur U.S. Government | 10,015,197 | - | 10,015,197 |
| Other Mtg Backed Securities | 80,858,664 | - | 80,858,664 |
| Equity Securities - Except FHLB Stock | 1,125 | - | 1,125 |
| Federal Funds Sold | 294,184,760 | - | 294,184,760 |
| **Subtotal Securities & Obligations** | **385,059,746** | **-** | **385,059,746** |
| Mortgage Loans | 590,381,195 | 122,544,525 | 712,925,720 |
| Commercial Loans | - | 14,181,058 | 14,181,058 |
| Consumer Loans | 34,705,402 | (637,355) | 34,068,047 |
| Construction Loans | 128,737,346 | (128,737,346) | - |
| **Subtotal Loans** | **753,823,943** | **7,350,882** | **761,174,825** |
| Furniture/Fixtures/Autos | 2,320,854 | - | 2,320,854 |
| Other Real Estate Owned | 2,782,443 | - | 2,782,443 |
| Investments in Subsidiaries | 5,541,773 | 3,925,801 | 9,467,574 |
| Office Premises and Equipment | 5,013,564 | - | 5,013,564 |
| Postage - Stamps/Meter | 2,452 | 4,273 | 6,725 |
| FHLB Stock | 7,860,200 | - | 7,860,200 |
| Allowance for Loan Losses - Mtg. Loans | (60,019,396) | 60,019,396 | - |
| Valuation Allowance - Securities | (154,525) | 154,525 | - |
| Valuation Allowance - Mtg. Pool Securities | (7,562,671) | 7,562,671 | - |
| Valuation Allowance - REO | (1,375,000) | 1,375,000 | - |
| Valuation Allowance - Subsidiaries | (2,323,950) | 2,323,950 | - |
| Accrued Interest - Securities | 56,349 | (56,349) | - |
| Accrued Interest - Mtg. Pool Securities | 509,139 | (509,139) | - |
| Accrued Interest - Mtg. Loans | 4,212,092 | (4,212,092) | - |
| Accrued Interest Commer./Consum. Loans | 743,953 | (492,812) | 251,141 |
| Prepaid Expenses | 1,498,395 | (1,495,134) | 3,261 |
| Other Assets | 299,194 | (469,355) | (170,161) |
| Advances LSO | 1,296,238 | - | 1,296,238 |
| Accrued Interest on FHLB Stock | 130,180 | (130,180) | - |
| Valuation Allowance - Other Assets | (142,844) | 142,844 | - |
| **Subtotal Other Assets** | **(39,311,560)** | **68,143,399** | **28,831,839** |
| **Total Assets** | **$ 1,190,996,240** | **$ 74,884,799** | **$ 1,265,881,039** |
| **Liabilities** | | | |
| Demand Deposits | 231,244,658 | (49,767) | 231,194,891 |
| Savings Deposits | 344,836,845 | - | 344,836,845 |
| Time Deposits | 793,321,472 | - | 793,321,472 |
| Unearned Safe Deposit Box Income | 11,387 | 10,331 | 21,718 |
| Taxes Payable | 557 | (557) | - |
| Other Liabilities | 8,703,838 | (1,745,390) | 6,958,448 |
| Suspense Liabilities | 67,949 | (67,677) | 272 |
| **Total Liabilities** | **$ 1,378,186,706** | **$ (1,853,060)** | **$ 1,376,333,646** |
| **Net Assets/(Deficit)** | | | |
| Undivided Profits/Acquired Equity | (187,190,466) | 76,737,859 | (110,452,607) |
| **Total Net Assets/(Deficit)** | **$ (187,190,466)** | **$ 76,737,859** | **$ (110,452,607)** |
| **Total Liabilities and Net Equity** | **$ 1,190,996,240** | **$ 74,884,799** | **$ 1,265,881,039** |

[a] Pro Forma Adjustments are commonly prepared by the FDIC/RTC to record unprocessed work, non-booked items, corrections of posting errors, and resolved reconciling items, in order to reflect the proven balance of the balance sheet accounts of the Failed Institution through the date of closing. Adjustments also include the conversion from an accrual basis of accounting to a cash basis of accounting for assets and liabilities retained by the FDIC/RTC.

**REPORT 1 - A**

**Carteret Federal Savings Bank**
**Receivership Fund Code 1309**
**Mapping of Total Asset Inception Balances from Report #1 to Report #2**

| Per Report #1 - Inception Pro Forma Recap | | Per Report #2 - Statement of Assets and Liabilities | |
|---|---|---|---|
| **Line Item Descriptions** | **Inception Balances** | **Inception Balances** | **Line Item Descriptions** |
| **Assets:** | | | |
| Interest Earning Deposits with FHLB | 2,658,733 | | |
| Securitization Reserve | 63,628,407 | | |
| Other Investment Securities | 14,467,714 | | |
| MBS Guar/Insur U.S. Government | 10,015,197 | | |
| Other Mtg Backed Securities | 80,858,664 | | |
| Equity Securities - Except FHLB Stock | 1,125 | | |
| Rounding | 1 | | |
| | **171,629,841** | **171,629,841** | Securities |
| Consumer Loans | **34,068,047** | **34,068,047** | Consumer Loans |
| Commercial Loans | **14,181,058** | **14,181,058** | Commercial Loans |
| Mortgage Loans | **712,925,720** | **712,925,720** | Real Estate Mortgages |
| Cash and Non-Interest Earning Deposits | 10,059,775 | | |
| Federal Funds Sold | 294,184,760 | | |
| FHLB Stock | 7,860,200 | | |
| Postage Stamps/Meters | 6,725 | | |
| Advances LSO | 1,296,238 | | |
| Accrued interest - Commer/Consumer Loar | 251,141 | | |
| Prepaid Expenses | 3,261 | | |
| Other Assets | (170,161) | | |
| **Reclass from Investments in Subsidiaries** | **7,911,088** [a] | | |
| Rounding | (1) | | |
| | **321,403,026** | **321,403,026** | Other Assets/Judgments |
| Other Real Estate Owned | 2,782,443 | | |
| Furniture/Fixtures/Autos | 2,320,854 | | |
| Office Premises and Equipment | 5,013,564 | | |
| | **10,116,861** | **10,116,861** | Owned Assets |
| Investments in Securities | 9,467,574 | | |
| **Reclass to Other Assets** | **(7,911,088)** [a] | | |
| | **1,556,486** | **1,556,486** | Net Investments in Subsidiaries |
| **Total Assets** | **$ 1,265,881,039** | **$ 1,265,881,039** | **Total Assets** |

[a] For purposes of recording inception balances to the FDIC general ledger, the Loan Receivable from Subsidiaries balance in the Investments in Subsidiaries category was reclassified to the Other Assets category.

**REPORT 2**

# CARTERET FEDERAL SAVINGS BANK
## Statement of Assets and Liabilities in Liquidation (Unaudited)
### INCEPTION TO 12/31/2006
(Rounded in Dollars)

**Receivership Fund Code: 1309**
**Inception Date: 1/20/95**

| | Inception Balances (Per RTC General Ledger) [a] | Net Change In Balances [b] | 12/31/2006 Actual G/L Balances [c] | Adjustments to 12/31/2006 Actual G/L Balances | Adjusted 12/31/2006 Balances |
|---|---|---|---|---|---|
| **Assets:** | | | | | |
| Cash and Investments | $ - | $ 109,085 | $ 109,085 | | $ 109,085 |
| Receivables | - | - | - | | - |
| **Assets in Liquidation** | | | | | |
| Securities | 171,629,841 | (171,629,841) | - | | - |
| Consumer Loans | 34,068,047 | (34,068,047) | - | | - |
| Commercial Loans | 14,181,058 | (14,181,058) | - | | - |
| Real Estate Mortgages | 712,925,720 | (712,925,720) | - | | - |
| Other Assets/Judgments | 321,403,026 | (321,403,026) | - | | - |
| Owned Assets | 10,116,861 | (10,116,861) | - | | - |
| Net Investments in Subsidiaries | 1,556,486 | (1,556,486) | - | | - |
| **Subtotal: Assets in Liquidation** | **1,265,881,039** | **(1,265,881,039)** | - | | - |
| Less: Estimated Loss on Assets | - | - | - | | - |
| Advances on Assets | - | - | - | | - |
| **Total Assets** | **$ 1,265,881,039** | **$ (1,265,771,954)** | **$ 109,085** | **$ -** | **$ 109,085** |
| **Liabilities:** | | | | | |
| **Administrative Liabilities** | | | | | |
| Accounts/Notes Payable | - | - | - | | - |
| Suspense/Escrow Accounts | - | 15,378 | 15,378 | | 15,378 |
| Due to FDIC for Service - Billed Expenses | - | 68,384 | 68,384 | | 68,384 |
| Due to FDIC for Borrowed Funds | - | 6,024,887 | 6,024,887 | | 6,024,887 |
| Estimated Litigation Losses - Probable | - | - | - | | - |
| Other Contingent Liabilities | - | - | - | | - |
| **SubTotal - Administrative Liabilities** | - | **6,108,649** | **6,108,649** | | **6,108,649** |
| **Proven Depositor/Creditor Claims** | | | | | |
| Due to FDIC Subrogated Deposit Claims | - | 18,527,270 | 18,527,270 | | 18,527,270 |
| Unisured Deposit Claims Due Others | 1,376,333,646 | (1,376,333,646) | - | | - |
| Other Creditor Claims | - | 303,496 | 303,496 | | 303,496 |
| Estimated Interest on Claims | - | 168,625,125 | 168,625,125 | | 168,625,125 |
| **Subtotal - Proven Depositor/Creditor Claims** | **1,376,333,646** | **(1,188,877,755)** | **187,455,891** | | **187,455,891** |
| **Other Claims** | | | | | |
| Estimated Federal Income Tax Liability | - | - | - | | - |
| Other Subordinated Obligations | - | - | - | | - |
| Liabilities at Inception - Unproven | - | - | - | | - |
| **Subtotal Other Claims** | - | - | - | | - |
| **Total Liabilities** | **$ 1,376,333,646** | **$ (1,182,769,106)** | **$ 193,564,540** | **$ -** | **$ 193,564,540** |
| **Net Assets / (Deficit):** | | | | | |
| Net Assets/(Deficit) At Inception | (110,452,607) | - | (110,452,607) | | (110,452,607) |
| Premiums Received / (Paid) at Resolution | - | 143,821,654 | 143,821,654 | | 143,821,654 |
| Asset - Related Equity Adjustments | - | 25,488,825 | 25,488,825 | | 25,488,825 |
| Liability/Claims-Related Equity Adjustments | - | (169,868,983) | (169,868,983) | | (169,868,983) |
| Income/(Loss)of the Liquidation | - | (82,444,344) | (82,444,344) | | (82,444,344) |
| **Total Net Assets/(Deficit)** | **$ (110,452,607)** | **$ (83,002,848)** | **$ (193,455,455)** | **$ -** | **$ (193,455,455)** |
| **Total Liabilities and Net Assets/(Deficit)** | **$ 1,265,881,039** | **$ (1,265,771,954)** | **$ 109,085** | **$ -** | **$ 109,085** |

**Estimated additional litigation losses considered reasonably possible: $1,410,000**

[a] The inception balances per the General Ledger agree in total with the adjusted inception balances on Report 1 - Inception Pro Forma Recap. Refer to Report 1 - A for the mapping of total asset line items on Report 1 to the corresponding asset categories on Report 2.

[b] The amounts in this column reflect the net change in balances reported at inception (column entitled "Inception Balances") versus those as of the report date (column entitled "12/31/2006 Actual G/L Balances").

[c] These balances reflect amounts reported on the receivership's Statement of Assets and Liabilities in Liquidation. Refer to the accompanying footnotes applicable to the Statement of Assets and Liabilities in Liquidation, as these notes are an integral part of this statement.

**THIS REPORT CONTAINS 12/31/2006 ESTIMATES BASED ON THE BEST INFORMATION AVAILABLE AS OF 12/31/2006. AS WITH ALL ESTIMATES AND PROJECTIONS, ACTUAL RESULTS MAY DIFFER.**

**REPORT 3**

**CARTERET FEDERAL SAVINGS BANK**
**Projected Receivership Results as of 12/31/2006**
**(Rounded In Dollars)**

**Receivership Fund Code: 1309**
**Inception Date: 1/20/95**

| | Adjusted 12/31/2006 Balances | Federal Income Tax | Projected Receivership Results (using Adj 12/31/2006 Bal) | Pass Through Receivership (Fund Code 8602) [d]: Outstanding Claims Priority 6 | Post Insolvency Interest Priority 7 | Claims Not Fixed on Day of Default Priority 7 | Subordinated Debt Priority 9 | Projected Receivership Results Adjusted for Pass-Through Liab | Stockholders' Claims Priority 10 |
|---|---|---|---|---|---|---|---|---|---|
| | | [b] | [c] | | | | | | [e] |
| **Assets:** | | | | | | | | | |
| Cash and Investments | $ 109,085 | | $ 109,085 | | | | | $ 109,085 | |
| Receivables | - | | - | | | | | - | |
| **Assets in Liquidation** | | | | | | | | | |
| Securities | - | | - | | | | | - | |
| Consumer Loans | - | | - | | | | | - | |
| Commercial Loans | - | | - | | | | | - | |
| Real Estate Mortgages | - | | - | | | | | - | |
| Other Assets/Judgments | - | | - | | | | | - | |
| Owned Assets | - | | - | | | | | - | |
| Net Investments in Subsidiaries | - | | - | | | | | - | |
| Subtotal: Assets in Liquidation | - | | - | | | | | - | |
| Less: Estimated Loss on Assets | - | | - | | | | | - | |
| Advances on Assets | - | | - | | | | | - | |
| **Total Assets** | $ 109,085 | | $ 109,085 | | | | | $ 109,085 | - |
| **Liabilities:** | | | | | | | | | |
| **Administrative Liabilities** | | | | | | | | | |
| Accounts/Notes Payable | - | | | | | | | 15,378 | |
| Suspense/Escrow Accounts | 15,378 | | 15,378 | | | | | 68,384 | |
| Due to FDIC for Service - Billed Expenses | 68,384 | | 68,384 | | | | | 6,024,887 | |
| Due to FDIC for Borrowed Funds | 6,024,887 | | 6,024,887 | | | | | - | |
| Estimated Litigation Losses - Probable | - | | - | | | | | - | |
| Other Contingent Liabilities | - | | | | | | | - | |
| SubTotal - Administrative Liabilities | 6,108,649 | | 6,108,649 | | | | | 6,108,649 | |
| **Proven Depositor/Creditor Claims** | | | - | | | | | - | |
| Due to FDIC Subrogated Deposit Claims | 18,527,270 | | 18,527,270 | | | | | 18,527,270 | |
| Unisured Deposit Claims Due Others | - | | - | 1,578,552 | | 292 | | 1,578,844 | |
| Other Creditor Claims | 303,496 | | 303,496 | | | | | 303,496 | |
| Estimated Interest on Claims | 168,625,125 [a] | | 168,625,125 | | 1,566,971 | | | 170,192,096 | |
| Subtotal - Proven Depositor/Creditor Claims | 187,455,891 | - | 187,455,891 | 1,578,552 | 1,566,971 | 292 | - | 190,601,706 | |
| **Other Claims** | | | | | | | | | |
| Estimated Federal Income Tax Liability | - | 103,093,931 | 103,093,931 | | | | | 103,093,931 | |
| Other Subordinated Obligations | - | | - | | | | | - | |
| Liabilities at Inception - Unproven | - | | - | | | | | - | |
| Subtotal Other Claims | - | 103,093,931 | 103,093,931 | - | - | - | - | 103,093,931 | |
| | | | | | | | | - | |
| **Total Liabilities** | $ 193,564,540 | $ 103,093,931 | $ 296,658,471 | $ 1,578,552 | $ 1,566,971 | $ 292 | $ - | $ 299,804,286 | - |
| **Net Assets / (Deficit):** | | | | | | | | | |
| Net Assets/(Deficit) At Inception | (110,452,607) | | (110,452,607) | | | | | (110,452,607) | |
| Premiums Received / (Paid)at Resolution | 143,821,654 | | 143,821,654 | | | | | 143,821,654 | |
| Asset - Related Equity Adjustments | 25,488,825 | | 25,488,825 | | | | | 25,488,825 | |
| Liability/Claims-Related Equity Adjustments | (169,868,983) | (103,093,931) | (272,962,914) | (1,578,552) | (1,566,971) | (292) | | (276,108,729) | |
| Income/(Loss)of the Liquidation | (82,444,344) | | (82,444,344) | | | | | (82,444,344) | |
| **Total Net Assets/(Deficit)** | $ (193,455,455) | $ (103,093,931) | $ (296,549,386) | $ (1,578,552) | $ (1,566,971) | $ (292) | $ - | $ (299,695,201) | - |

**The accompanying notes are an integral part of this Report 3.**

## Footnotes to Report 3 - Fund Code 1309

[a] Fund Code 1309 is subject to the order of claims priority contained in 12 U.S.C. § 1821(d)(11), which applies to RTC receiverships commenced after 8/10/1993. The post insolvency interest estimate is computed on unpaid proven claims balance by applying the applicable federal judgement rate immediately prior to this receivership's inception date, consistent with 28 U.S.C. § 1961. The interest compounds annually and continues to accrue until the unpaid proven claims have been satisfied.

[b] Tax returns and IRS transcripts for this receivership reflect federal income taxes due in the amount of $29,902,504. Another $62,828,211 in accrued interest and $10,363,216 in penalties have been estimated through 12/31/2006. An agreement signed between the IRS and the former RTC provides for a deferral of these tax liabilities as long as there are insufficient assets to pay depositor claims in full. Once deposit claims are paid in full, the tax liability becomes due and will be paid in accordance with the order of priority contained in 12 U.S.C. § 1821(d)(11). The potential tax effect of any pending litigation settlement has not been considered at this time.

[c] Pursuant to the contract of sale documents that conveyed the goodwill claims to the FSLIC Resolution Fund - RTC (the Fund), the Fund agreed to advance the costs of litigation, and to remit to the receiver any amounts collected on such claims after deduction of these costs. The Fund has accumulated $6.8 million in expenses incurred on this receiver's goodwill litigation efforts through 12/31/2006, and may continue to accumulate additional litigation expenses. There are no goodwill litigation expenses reflected on this receivership's general ledger as of 12/31/2006. If the final resolution of the goodwill litigation results in a monetary award to the receivership, accumulated goodwill litigation expenses will be deducted from any proceeds distributed to the receivership. If the final resolution of the goodwill litigation does not result in a monetary award to the receivership, the Fund will absorb the expenses.

[d] During the resolution process, a Pass-Through Receivership (Fund Code 8602) was established on 12/4/1992. The estimated Pass-Through Receivership deficit as of 12/31/2006 is estimated above and should be considered in any distribution. Total Pass-Through Receivership liabilities were $4.7 million of which $3.1 million has been paid to arrive at the $1.6 million in Priorities 1 through 6 and $292 in Priority 7 "Claims Not Fixed on Day of Default" shown above, in accordance with the order of claims priority contained in 12 C.F.R. § 360.3 (a). Post insolvency interest on Priority 6 claims, which was computed in accordance with 12 C.F.R. § 360.3 (b), is the $1.57 million shown as Priority 7 above. Note that this post insolvency interest estimate is compounded daily and continues to accrue until unpaid Priority 6 claims have been satisfied.

[e] This column is presented to indicate that stockholders' claims are subordinate to all other unpaid claims reported in the preceding columns.

**CARTERET FSB**
**NEWARK, NJ**
**Fund Number: 1309**
**Inception Date: 1/20/1995**
**Statement of Assets & Liabilities in Liquidation (unaudited)**
**For Period Ending: December 31, 2006**
**(Rounded in Dollars)**

| | Current Balance | Inception Balance |
|---|---|---|
| **Assets** | | |
| Cash and Investments | $ 109,085 | $ 0 |
| Receivables | 0 | 0 |
| **Assets in Liquidation** | | |
| Securities | 0 | 171,629,841 |
| Consumer Loans | 0 | 34,068,047 |
| Commercial Loans | 0 | 14,181,058 |
| Real Estate Mortgages | 0 | 712,925,720 |
| Other Assets/Judgments | 0 | 321,403,026 |
| Owned Assets | 0 | 10,116,861 |
| Net Investments in Subsidiaries | 0 | 1,556,486 |
| **Subtotal - Assets in Liquidation** | **$ 0** | **$ 1,265,881,039** |
| Less: Estimated Loss on Assets in Liquidation (Note 3) | 0 | 0 |
| Advances on Assets | 0 | 0 |
| **Total Assets** | **$ 109,085** | **$ 1,265,881,039** |
| | | |
| **Liabilities (Note 5)** | | |
| **Administrative Liabilities** | | |
| Accounts/Notes Payable | 0 | 0 |
| Suspense/Escrow Accounts | 15,378 | 0 |
| Due to FDIC for Service - Billed Expenses | 68,384 | 0 |
| Due to FDIC for Borrowed Funds | 6,024,887 | 0 |
| Estimated Litigation Losses - Probable (Note 7) | 0 | 0 |
| Other Contingent Liabilities | 0 | 0 |
| **Subtotal - Administrative Liabilities** | **$ 6,108,649** | **$ 0** |
| **Proven Depositor/Creditor Claims** | | |
| Due to FDIC for Subrogated Deposit Claims | 18,527,270 | 0 |
| Uninsured Deposit Claims Due Others | 0 | 0 |
| Other Creditor Claims | 303,496 | 0 |
| Estimated Interest on Claims (Note 6) | 168,625,125 | 0 |
| **Subtotal - Proven Depositor/Creditor Claims** | **$ 187,455,891** | **$ 0** |
| **Other Claims** | | |
| Estimated Federal Income Tax Liability (Note 10) | 0 | 0 |
| Other Subordinated Obligations | 0 | 0 |
| Liabilities at Inception - Unproven | 0 | 1,376,333,646 |
| **Subtotal - Other Claims** | **$ 0** | **$ 1,376,333,646** |
| **Total Liabilities** | **$ 193,564,540** | **$ 1,376,333,646** |
| | | |
| **Net Assets/(Deficit)** | | |
| Net Assets / (Deficit) At Inception | (110,452,607) | (110,452,607) |
| Premiums Received / (Paid) at Resolution | 143,821,654 | 0 |
| Asset - Related Equity Adjustments | 25,488,825 | 0 |
| Liability/Claims-Related Equity Adjustments | (169,868,983) | 0 |
| Income /(Loss) of the Liquidation Since Inception | (82,444,344) | 0 |
| **Total Net Assets/(Deficit)** | **$ (193,455,455)** | **$ (110,452,607)** |
| **Total Liabilities and Net Assets/(Deficit)** | **$ 109,085** | **$ 1,265,881,039** |

**Estimated additional litigation losses considered reasonably possible: (Note 7)** **$ 1,410,000**

**The accompanying notes are an integral part of these financial statements.**

Last Month Closed: January 2007 (Period 01)

**CARTERET FSB**
**NEWARK, NJ**
**Fund Number: 1309**
**Inception Date: 1/20/1995**
**Statement of Operations (unaudited)**
**For Period Ending: December 31, 2006**
**(Rounded in Dollars)**

| | Year-to-Date | Inception-to-Date |
|---|---|---|
| **Liquidation Revenues** | | |
| Interest on Cash and Investments | $ 5,867 | $ 25,077,376 |
| **Interest and Late Fee Income on:** | | |
| Securities | 0 | 5,409,738 |
| Consumer Loans | 0 | 70,788 |
| Commercial Loans | 0 | 1,208,389 |
| Real Estate Mortgages | 0 | 30,852,852 |
| Other Assets and Judgments | 0 | 10,099 |
| Recoveries from Charged-Off Assets | 225 | 59,653 |
| Professional Liability / Litigation Recoveries | 2,800 | 1,745,005 |
| Other Miscellaneous Income | 47,317 | 16,481,074 |
| **Total - Liquidation Revenues** | **$ 56,209** | **$ 80,914,974** |
| | | |
| **Liquidation Expenses** | | |
| **Operations** | | |
| **FDIC Service-Billed Expenses for: (Note 9)** | | |
| Marketing / Closing / Settlement | 0 | 0 |
| Oversight / Claims / Accounting | 45,005 | 133,266 |
| Asset Marketing / Management | 0 | 13,163 |
| Investigation and Others | 1,274 | 113,707 |
| Salaries and Indirect Costs (Note 9) | 0 | 20,081,886 |
| Asset Servicing-Related Expenses | 0 | 15,253,315 |
| Asset Sales-Related Expenses | 0 | 4,715,122 |
| Legal and Other Professional Fees | 0 | 4,224,657 |
| Travel and Other Liquidation Expenses | 1,825 | 8,003,712 |
| **Subtotal - Operating Expenses** | **$ 48,104** | **$ 52,538,828** |
| Interest on FDIC Borrowed Funds | 0 | (7,469) |
| Other Interest Expense | 0 | 594,646 |
| Litigation Losses | 0 | 229,546 |
| Loss on Contingent Liabilities | 0 | 2,547,088 |
| **Total Liquidation Expenses** | **$ 48,104** | **$ 55,902,639** |
| **Net Income/(Loss) from Operations** | **$ 8,105** | **$ 25,012,335** |
| | | |
| **Net Income/(Loss)on Managed Assets** | | |
| Owned Assets | 0 | (82,176) |
| Net Investments in Subsidiaries | 0 | (1,155,505) |
| **Total Net Income/(Loss)on Managed Assets** | **$ 0** | **$ (1,237,681)** |
| **Gain/(Loss) on Disposition of Assets** | | |
| Securities | 0 | (32,405,294) |
| Consumer Loans | 0 | (1,137,020) |
| Commercial Loans | 0 | (4,495,093) |
| Real Estate Mortgages | 0 | (61,247,406) |
| Other Assets / Judgments | 0 | (11,662,298) |
| Owned Assets | 0 | 736,157 |
| Net Investments in Subsidiaries | 0 | 3,991,956 |
| **Total - Gain/(Loss) on Disposition of Assets** | **$ 0** | **$ (106,218,998)** |
| **Income/(Loss) of the Liquidation** | **$ 8,105** | **$ (82,444,344)** |

**The accompanying notes are an integral part of these financial statements.**

Last Month Closed: January 2007 (Period 01)

# Notes to Financial Statements:

1. ***Basis of Accounting*** : The FDI Act authorizes the FDIC, as receiver for a failed insured depository institution ("Receivership"), to administer and conclude the affairs of such institution. Financial statement presentations are based on the premise that the assets of the receivership will be liquidated and proceeds distributed to the institution's creditors over time as provided by applicable laws and regulations. While a receivership's average lifespan is three to six years, some may require longer time frames to conclude. At the onset of a receivership, the failed institution's financial records are reviewed and restated to establish a new basis of accounting. The assets and liabilities of the failed institution are adjusted to remove all estimated losses, accruals, and deferrals. These adjustments include loss allowances; partial write downs; prepaid, deferred or accrued expenses having no recovery value; and accrued or deferred income. Restated balances are shown under the *Inception Balance* heading of the *Statement of Assets and Liabilities in Liquidation*. After inception, FDIC's liquidation valuation and measurement practices, as described more fully in the paragraphs that follow, are adopted for all assets and liabilities. In general, transactions are recorded when cash is received or disbursed. Accruals may be used when prospective cash flows are probable and reasonably estimated.

2. ***Use of Estimates*** : As appropriate, estimates of asset values, liabilities, revenues, and expenses are reflected in the financial statements. These amounts are updated over time to compensate for uncertainties inherent in the estimation process. As with the use of all estimates, actual results may differ.

3. ***Valuation of Assets/Loss Allowances*** : Assets of the receivership are shown at values representing cash on deposit or the book value of amounts invested; the principal balance of loans, notes, other debt instruments or receivables (note that interest on these assets is not accrued after failure but is recognized when received); the foreclosed value of real and/or personal property or the book value of assets (cost less depreciation or amortization through date of the institution's failure); and the historical cost of the net investment in subsidiaries, partnerships, or joint ventures, adjusted where appropriate to reflect the receivership's portion of the underlying net earnings or losses.

An Estimated Loss on Assets is provided when anticipated future asset disposition proceeds, including associated expenses, are less than recorded amounts. Future asset disposition proceeds are generally estimated by determining, via sampling or recent disposition activity, the recovery rates for similar assets across all receiverships. However, actual recovery rates for this receivership may differ according to the quality and type of individual asset, as well as over time with changing market conditions. Accordingly, the gains or losses ultimately realized for this receivership will likely vary from amounts estimated.

4. ***Contingent Recoveries*** : Assets of the receivership generally exclude potential collections from activities such as professional liability or other types of pending legal actions. Significant uncertainties prevent reasonable estimation of the amounts ultimately collectible. Instead, these recoveries are generally recognized when cash is received, or when the collection is probable and the amount collectible can be reasonably estimated.

5. ***Actual and Estimated Liabilities*** : The FDIC, as receiver, determines (allows/disallows) claims and distributes proceeds derived from the disposition of the failed institution's assets according to applicable state and federal law governing the payment of creditor claims. Recorded liabilities comprise 1) proven or pending (unproven) claims against the receivership estate, 2) various operating liabilities, and 3) estimates of other probable losses such as pending defensive litigation. Applicable law governing the payment priority of distributions may vary depending on the inception date of the receivership. Therefore, liabilities of the receivership estate are not ranked in order of preference or payment priority on the *Statement of Assets and Liabilities in Liquidation*.

6. ***Estimated Interest on Claims*** : Applicable law governs or directs the payment of post-insolvency interest to creditors holding proven claims against the receivership estate, including the claim(s) held by the FDIC in its Corporate capacity. Post-insolvency interest is the interest

calculated and paid on proven creditor claims, under certain circumstances, after a receiver is appointed. Uncertainties exist as to the universe of creditors whose claims will ultimately be allowed and whether creditors will receive the full principal amount of proven claims against the receivership estate or any post-insolvency interest. No distribution will be made to holders of equity interests until allowed creditor claims have been paid principal and post-insolvency interest in full. Generally, the estimated liability for the total amount of post-insolvency interest payable respective to creditor claims is recognized in these financial statements when at least 95% of the principal of proven creditor claims has been paid.

**7. *Reasonably Possible Litigation Losses* :** In addition to the amounts recorded for probable litigation liabilities, the FDIC Legal Division has determined that the receivership may be subject to reasonably possible losses from unresolved litigation. Reasonably possible losses differ from those which are probable in that there is a lesser likelihood of loss and payment from the receivership. As such, reasonably possible losses are not accrued in the accounts until the FDIC, through periodic review, determines either that the litigation settlement expense has been incurred or that the likelihood of loss has become probable. While not recognized in the *Statement of Assets and Liabilities in Liquidation*, FDIC management may use all or part of the estimate of reasonably possible litigation losses to determine the assets that must be retained by the receivership to satisfy these potential obligations. The amount of reasonably possible losses is shown at the bottom of the receivership's *Statement of Assets and Liabilities in Liquidation* as a separate disclosure. Further, receiverships may be subject to significant losses from cases where uncertainties prevent a reasonable assessment of the ultimate outcome and/or an estimate of the amount of loss which could result.

**8. *Non-Cash Equity Adjustments* :** Unrecorded assets and claims determined to have existed as of the institution's failure are deemed discovered assets and liabilities, respectively, and are recorded as non-cash equity adjustments. Other non-cash equity adjustments include the Estimated Loss on Assets in Liquidation, the Estimated Interest on Claims, as well as the write-off of remaining unpaid liabilities prior to the inactivation of a receivership. Note that certain non-cash equity adjustments such as the estimated loss on assets and probable litigation are reversed when they are recognized as liquidation transactions in the *Statement of Operations*.

**9. *FDIC Service-Billed Expenses (Statement of Operations)* :** FDIC personnel, who are employed by the FDIC in its Corporate capacity, are responsible for conducting all liquidation-related activities for FDIC receiverships. The FDIC in its Corporate capacity bills the receiverships for various liquidation services provided on their behalf. Since 2002, these receivership billings are calculated by multiplying the actual workload volume attributable to an individual receivership by the benchmark rate for the service provided. Benchmark rates are developed and periodically reviewed by FDIC management after considering empirical and industry data relevant to the service provided as well as an overhead component. These expenses are presented by service type under the "*FDIC Service-Billed Expenses*" section in the *Statement of Operations*.

Prior to 2002, the costs of FDIC-provided services were billed to receiverships in two components comprising 1) employee salaries based on actual labor hours directly attributable to an individual receivership and 2) indirect costs allocated amongst active receiverships based on liquidation activity, as reflected by each receivership's salary charges. Where applicable, these billed expenses are reflected as "*Salaries and Indirect Costs*" in the *Statement of Operations*.

**10. *Income Taxes* :** Federal tax law requires that receivers of corporations, including depository institutions for which the FDIC serves as receiver, continue to file federal income tax returns for the receiverships they manage. A receivership may therefore incur a federal income tax liability from activities that occur during the life of the receivership, as well as during pre-receivership periods. Payment of federal income taxes is deferred until higher priority claims are satisfied, but prior to any payment made to equity holders of the failed institution. Because of the contingent nature of these tax claims, federal income tax liabilities are generally not recognized in these financial statements unless circumstances indicate that there is a high probability that they will be paid. Federal law provides an exemption from income taxes imposed by any State or local taxing authority once FDIC is appointed as receiver.