**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**AMBASE CORPORATION and CARTERET BANCORP, INC.**

**Plaintiffs,**

**FEDERAL DEPOSIT INSURANCE CORPORATION,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

**Civil Action No. 93-531C**

**Senior Chief Judge Loren A. Smith**

# PLAINTIFF-INTERVENOR FDIC'S PRE-TRIAL OBJECTIONS TO WITNESSES AND EXHIBITS AND PRE-TRIAL MOTION IN LIMINE

**Federal Deposit Insurance Corporation**
**Legal Division**
**Andrew C. Gilbert**
***Counsel of Record***
***for Plaintiff-Intervenor FDIC***
**550 Seventeenth Street, NW, MB-3060**
**Washington, DC 20429**
**(202) 898-3871**
**agilbert@fdic.gov**

**Of Counsel:**
**John V. Thomas**
***Deputy General Counsel***
**D. Ashley Doherty**
***Counsel***
**Gary Kuiper**
***Counsel***

**December 21, 2007**

# TABLEOF CONTENTS

PLAINTIFF-INTERVENOR FDIC'S PRE-TRIAL OBJECTIONS TO WITNESSES AND EXHIBITS AND PRE-TRIAL MOTION IN LIMINE ........ 1
STATEMENT OF THE CASE ........ 2
SUMMARY OF ARGUMENT ........ 2
ARGUMENT ........ 3
I. STANDARD OF REVIEW ........ 3
II. THE EVIDENCE AT ISSUE ........ 4
III. THE GROUNDS OF THE FDIC'S OBJECTIONS ........ 6
A. The Projected Receivership Deficit Is Irrelevant to The Damages Issue ........ 6
B. The Non-Justiciability Defense is Not Ripe And May Never Be ........ 8
C. Limited Evidentiary Review of The FDIC's Projections May Become Appropriate ........ 10
1. The Court May Determine Which Elements Will Flow to Government Coffers ........ 10
2. The Court May Determine Which Elements Are Insufficiently Final ........ 11
D. Substantive Review of Carteret's Receivership Deficit Will Never Be Appropriate in This Court ........ 13
IV. ADMISSION OF RECEIVERSHIP DEFICIT EVIDENCE WOULD AFFECT SUBSTANTIAL INTERESTS OF THE FDIC ........ 15
CONCLUSION ........ 16
CERTIFICATE OF FILING ........ 18

# TABLE OF AUTHORITIES

## Cases

Ake v. General Motors Corp., 942 F. Supp. 869, 879-80 (W.D.N.Y. 1996) ... 4
AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I") ... 2, 7
AmBase Corp. v. United States, 61 Fed. Cl. 794 (2004) ... 8, 9
Bailey v. United States, 341 F.3d 1342 (2003) ... 8, 10, 11
Baskett v. United States, 2 Cl.Ct. 356, 367-368 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986), *cert. denied*, 478 U.S. 1006, 106 S.Ct. 3300, 92 L.Ed.2d 714 (1986) ... 4
Bennett v. Coors Brewing Co., 189 F.3d 1221, 1238 (10th Cir. 1999) ... 9
Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 658 (2003) ... 9
In re Bean, 252 F.3d 113, 117-118 (2nd Cir. 2001) ... 9
Inslaw, Inc. v. United States, 35 Fed.Cl. 295, 302-303 (1996) ... 4
International Graphics, Division of Moore Business Forms, Inc. v. United States, 5 Cl.Ct. 100, 104 (1984) ... 4
Norman v. United States, 56 Fed. Cl. 255, 267 (2003) ... 4
Paralyzed Veterans of America v. Sec. Veterans Affairs, 345 F.3d 1334, 1349 (Fed. Cir. 2003) 14
Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir. 2002).(en banc) ... 14
Suess v. United States, 33 Fed. Cl. 89 (1995) ... 12
Suess v. United States, 74 Fed. Cl. 510, 516 (2006) ... 16
Texas v. United States, 523 U.S. 296, 300 (1998) ... 9
Weeks Dredging & Contracting, Inc. v. United States, 11 Cl.Ct. 37, 45 (1986 ... 4
Yankee Atomic Electric Co. v. United States, 2004 WL 1535686 (Fed. Cl. 2004) ... 4
Zenith Radio v. Matsushita Elec. Indus. Co.,, 505 F. Supp.1125, 1146 (D.C. Pa. 1980) ... 4

## Statutes

28 U.S.C. § 2503(b). ... 7

## Other Authorities

C. Callen, "Rationality and Relevancy: Conditional Relevancy and Constrained Resources," 2003 Mich. St. L. Rev. 1243, 1253 (2003) ... 7

## Rules

Fed. R Evid. 402 ... 7
Fed. R. Evid. 104(b) ... 7
Fed. R. Evid. 401 ... 7
Fed. R. Evid. 401, cmt. (1972 Prop. Rules) ... 7
RCFC 16 ... 3

## Treatises

C. Koch, 33 Federal Practice & Procedure § 8183 at 246. ... 15
C. Koch, 33 Federal Practice & Procedure § 8306 at 73 (2006) ... 14
C. Wright, et al., 13A Fed. Prac. & Proc. Juris. 2d. § 3532 (2007) ... 9, 16
J.W. Moore, 15 Moore's Federal Practice, § 1-1.70[2] (3d ed. 2007) ... 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBASE CORPORATION and
CARTERET BANCORP, INC.

Plaintiffs,

FEDERAL DEPOSIT INSURANCE
CORPORATION,

Plaintiff-Intervenor,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 93-531C

Senior Chief Judge Loren A. Smith

**PLAINTIFF-INTERVENOR FDIC'S PRE-TRIAL OBJECTIONS TO WITNESSES AND EXHIBITS AND PRE-TRIAL MOTION IN LIMINE**

Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC"), as successor to the rights of Carteret Savings Bank, F.A. and as manager of the FSLIC Resolution Fund that succeeded to the assets and liabilities of the Resolution Trust Corporation ("RTC"), hereby files its Objections to Witnesses and Exhibits, pursuant to Rule VI.14(a)(3) of Appendix A of the Rules of this Court ("RCFC").

The FDIC also files herewith a Motion in Limine, pursuant to Rule 103 of the Federal Rules of Evidence. The FDIC seeks a definitive ruling excluding the admission at this time of all evidence, documentary and testimonial, relating to the projected receivership deficit.

## STATEMENT OF THE CASE

Plaintiffs Carteret Bancorp and AmBase Corporation ("AmBase")("Shareholder Plaintiffs") asserted six claims for relief: five direct and one derivative. FAC Counts I-V, VI. Four of the direct claims (FAC, Counts I-IV) have been dismissed. AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I").

The fifth direct claim, for recovery of a surplus, is asserted by Carteret Bancorp alone. FAC, Count V. That plaintiff now also asserts related informal claims of "mismanagement" by the FDIC of the Carteret receivership and miscalculation of the projected receivership deficit.

The sixth claim, a shareholder derivative claim, also pled by Carteret Bancorp alone, seeks damages from the Government for Carteret. FAC, Count VI. However, that plaintiff now asserts, in violation of its fiduciary duty to Carteret, that it is entitled to a direct award of some or all of any derivative damages. Shareholder Plaintiffs also argue that the measure of Carteret's damages is not that thrift's loss but theirs.

In accompanying motion papers, the FDIC moves for dismissal of all claims except Carteret Bancorp's derivative claim on behalf of Carteret, the damages on which will be measured by the loss to that thrift.[1]

## SUMMARY OF ARGUMENT

Prior to a damages award, this Court lacks subject matter jurisdiction over issues related to the Carteret receivership deficit. That will continue to be true in the event of a damages award in an amount greater than the projected receivership deficit, since the continued justiciability of this action will not be in question.

---

[1] Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for A Surplus (Dec. 21, 2007); Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for a Direct Award of Derivative Damages (Dec. 21, 2007); Plaintiff-Intervenor FDIC's Motion to Dismiss Shareholder Plaintiffs' Claim That Damages Should Be Based on Their Alleged Losses (Dec. 21, 2007).

If damages awarded are *less* than the projected receivership deficit, the issue of the continued justiciability of this action will become ripe for decision. Then, and only then, will the issue of the weight to be given to FDIC projections of the Carteret receivership deficit be ripe.

The Court will never be required to determine what the receivership deficit "should" be. Rather, the Court may confront an evidentiary issue: whether the Government can produce evidence, sufficient in quantity and weight, to show that damages awarded on Carteret's breach of contract claims are likely to be less than the amount that would probably flow back to the United States Treasury via payment of claims against the Carteret receivership.

If and when the Government moves to dismiss this action for lack of justiciability, Carteret's Goodwill Reporting Package (FX 1A)(Ex. 1A hereto)[2] and related evidence may be introduced into evidence for the limited purpose of demonstrating the FDIC's estimates of that deficit. No other documentary or witness testimony will be required.

This Court lacks jurisdiction to review the FDIC's management of the Carteret receivership on the merits, to enjoin the FDIC with respect to future allowance (or disallowance) of claims against that receivership, or to review challenges to FDIC policies. Therefore, no documentary or witness testimony is admissible on those issues. In any event, review of FDIC polices, which could be conducted only pursuant to the Administrative Procedure Act ("APA"), would be limited to the administrative record.

**ARGUMENT**

I. STANDARD OF REVIEW

The basic purpose of a motion in limine, pursuant to Rule 16 of the Rules of this Court, is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or

[2] FDIC, Goodwill Financial Reporting Package—Carteret Federal Savings Bank (Mar. 23, 2007)(FX 1A)(Ex. 1 hereto).

cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." Yankee Atomic Electric Co. v. United States, 2004 WL 1535686 (Fed. Cl. 2004), quoting Norman v. United States, 56 Fed. Cl. 255, 267 (2003)(internal citation omitted). See also Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 302-303 (1996); Weeks Dredging & Contracting, Inc. v. United States, 11 Cl. Ct. 37, 45 (1986). In this manner, the court filters out irrelevant evidence and performs its function of "simplifying issues for trial." Baskett v. United States, 2 Cl. Ct. 356, 359 (1983), *aff'd*, 790 F.2d 93 (Fed. Cir. 1986), *cert. denied*, 478 U.S. 1006, 106 S. Ct. 3300, 92 L.Ed.2d 714 (1986); Inslaw, 35 Fed. Cl. at 303. The use of motions in limine is favored in complex litigation as a means of "'increasing trial efficiency and promoting improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial.' " International Graphics, Division of Moore Business Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984)(citations omitted).

A motion *in limine* is an appropriate vehicle to challenge the admissibility of draft government reports. *See, e.g.*, Ake v. General Motors Corp., 942 F. Supp. 869, 879-80 (W.D.N.Y. 1996) (granting motion *in limine* to preclude admission of non-final report of government investigation); see also Zenith Radio v. Matsushita Elec. Indus. Co., 505 F. Supp. 1125, 1146 (C.D. Pa. 1980).

II. THE EVIDENCE AT ISSUE

Shareholder Plaintiffs are expected to challenge the FDIC's management of the Carteret receivership, the FDIC's projections of the Carteret receivership deficit, and FDIC policies and procedures utilized in managing the receivership and making the projections. They are expected to attempt to introduce the testimony of numerous FDIC employees, as well as documents,

relating to the management of the receivership, the development of the FDIC polices at issue, and the calculation of the projected receivership deficit.

Fully one dozen of the possible trial witnesses identified by Shareholder Plaintiffs—nearly half the total number of people identified on their Preliminary Witness List (Dec. 7, 2007)—would not be subject to subpoena and testifying if the Court were appropriately to limit the trial to evidence relevant to Carteret's contract damages.[3] Hundreds of proposed exhibits could be removed from their exhibit list. Each of the opposing damages experts (Dr. Calomiris, for Shareholder Plaintiffs; Dr. Saunders for the Government) has submitted a report on receivership deficit issues that is as long and detailed as his damages report; each has been deposed with respect to receivership deficit issues for an entire week, as long as he was deposed on damages issues. If the Court were to limit trial to evidence relevant to Carteret's contract damages, each expert could cut his time on the stand significantly.

Unless and until the continued justiciability of this action becomes a real, as distinguished from hypothetical, issue, the FDIC objects to the admission of all evidence, documentary and testimonial, relating to the FDIC's projections of the Carteret receivership deficit. If and when the Government moves to dismiss this action for lack of justiciability, the FDIC consents to the admission into evidence of Carteret's Goodwill Reporting Package (FX 1A)(Ex. 1 hereto) and

---

[3] The following people, listed on Shareholder Plaintiffs' Preliminary Witness List (Dec. 7, 2007), have nothing to say about Carteret's contract damages and are expected to testify exclusively about the FDIC's projections of the Carteret receivership deficit:
G. Michael Saran (Counsel, FDIC);
Wayne Green (Accountant, FDIC);
Karen Hughes (Deputy Director and Controller, FDIC);
James Vortriede (Senior Financial Management Analyst, FDIC);
Elaine Tama (Senior Accountant, NASA; former RTC/FDIC employee);
Edward Griffin (former Manager, FDIC; New Jersey resident);
Donna Cribbs (former Manager, RTC; Georgia resident);
Steven Johnson (former Tax Analyst, FDIC; Texas resident);
James Anderson (Accounting Manager, FDIC);
Jay Jupitor (former Manager, RTC);
J. Paul Ramey (former official, RTC; address unknown);
James Midnich (former official, RTC; New Jersey resident).

related evidence, for the limited purpose of demonstrating the FDIC's estimates of that deficit. No other documentary evidence, and no witness testimony, with respect to the FDIC's management of the Carteret receivership or the FDIC's projections of the Carteret receivership deficit, should ever be admitted in this proceeding.

III. THE GROUNDS OF THE FDIC'S OBJECTIONS

A. The Projected Receivership Deficit Is Irrelevant to The Damages Issue

Shareholder-Plaintiffs have argued that this Court should determine the "proper calculation and size of the receivership deficit" even if it awards damages in an amount *greater* than the projected receivership deficit. Plaintiffs' Reply in Support of Their Motion for Entry of an Order Setting Pretrial Schedule at 8 (Mar. 26, 2007)("SHP Reply").[4] They assert that this is appropriate because "the receivership deficit at the time of *any* award effectively reduces any damages recovery by the shareholders of the thrift." Id. (emphasis in original).

That is not correct. As demonstrated in the FDIC's accompanying motion papers, Shareholder Plaintiffs do not have a direct claim for damages. Their direct claim for a surplus must be dismissed, along with their claim to some or all of the derivative damages that might be awarded to Carteret on its breach of contract claim. Damages in this action will be measured by the loss suffered by Carteret by reason of the Government's breaches of contract, not by losses allegedly suffered by the Shareholder Plaintiffs; moreover, those damages must be paid to the FDIC as successor to Carteret's rights. Shareholder Plaintiffs are not entitled to any "damages recovery" and thus run no risk of having it "reduced."

[4] The Shareholder Plaintiffs emphasize that "the receivership deficit at the time of any award effectively reduces any damages recovery by the shareholders of the thrift." Plaintiffs' Reply in Support of Their Motion for Entry of an Order Setting Pretrial Schedule (Mar. 8, 2007). That stockholders will receive distributions from the receivership estate only after creditors are paid in full does not affect the justiciability of the case. Therefore, it cannot justify inquiry by this Court into "the specifics of the receivership."

The risk that Shareholder Plaintiffs run is that they may not recover as much as they think they are entitled to on their administrative claims against the Carteret receivership estate. Depending on the amount of damages awarded here, that may happen: a variety of creditors, governmental and non-governmental, hold higher-priority claims. But this possibility is merely a function of the fact that Carteret's claim for breach of contract, the only claim remaining in this action, is derivative. AmBase Corp. v. United States, 58 Fed. Cl. 32, 52, 54 (2003)("AmBase I") (shareholder plaintiffs pursue Carteret's breach of contract claim derivatively). It does not change the fact that the only relevance of the size of the projected receivership deficit here is to the issue of justiciability.

"Evidence which is not relevant is not admissible" at trial. Fed. R. Evid. 402.[5] Relevant evidence is

> evidence having any tendency to make the existence of any fact that *is* of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401 (emphasis added). There is no provision for admission of evidence with respect to facts that *may be* "of consequence to the determination of the action." As the drafters of the Federal Rules of Evidence note, relevance exists "only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401, cmt. (1972 Prop. Rules). Matter that *may be* "properly provable," depending on the outcome of the case, is not relevant.[6] Because the size of the Carteret receivership deficit is not relevant to damages, and because

---

[5] "The proceedings of the Court of Federal Claims shall be . . . in accordance with the Federal Rules of Evidence." 28 U.S.C. § 2503(b).

[6] Such evidence does not fall within the definition of evidence the relevancy of which is "conditioned on fact." Fed. R. Evid. 104(b). Such evidence is evidence whose relevance is dependent on the introduction of other evidence, not on the outcome of the trial. Id. "Trial judges generally limit their application of conditional relevancy to a few sorts of problems, such as authentication, proof of notice or knowledge, admissibility of prior wrongs or acts under Federal Rule 404(b), and personal knowledge of witnesses." C. Callen, "Rationality and Relevancy: Conditional Relevancy and Constrained Resources," 2003 Mich. St. L. Rev. 1243, 1253 (2003); see also id. at 1297.

justiciability is not currently and may never be an issue, evidence relating to that deficit is not relevant or admissible at this time.

B. The Non-Justiciability Defense is Not Ripe And May Never Be

This Court has determined that it "must carefully review the receivership deficit to permit inclusion of only those costs which are legitimately part of the receivership deficit." AmBase Corp. v. United States, 61 Fed. Cl. 794, 802 (2004)("*AmBase II*"). The size of the projected receivership deficit in goodwill cases is relevant to the issue of whether claims should be dismissed "for lack of Article III standing as an intra-governmental dispute." AmBase II, 61 Fed. Cl. at 801, discussing Bailey v. United States, 341 F.3d 1342 (2003). Specifically, a goodwill case presents "a nonjusticiable intra-governmental dispute" if the size of the award "recovered from the government by the FDIC" is less than the FDIC's subrogated claim, such that the entire damages award "would flow to the [FSLIC Resolution Fund], from one government coffer to another." Id., quoting Bailey, 341 F.3d at 1346.

Since the projected receivership deficit is relevant only for purposes of comparison to a damages award, this Court originally saw "no reason" for it to "pursue any inquiry" in this case "into the specifics of the receivership until at least such time as there is a decision that some damages must be awarded." AmBase Corp. v. U.S., 61 Fed. Cl. at 802. That continues to be true. The Government recently challenged the continued justiciability of the case, arguing that "any recovery on Carteret's contract claim will flow to the United States and the case is moot" and should therefore be dismissed. Government Response to AmBase's Statement of Issues at 6 (August 30, 2006). This Court rejected that argument, however, and found that "the case is justiciable at this time." Amended Order, AmBase Corp. v. U.S., No. 93-531C (Apr. 13, 2007),

amending Order, AmBase Corp. v. United States, No. 93-531C (Dec. 13, 2006). No challenge to the justiciability of the case is currently pending.

Because the continued justiciability of this action depends upon "the outcome of another as-yet undecided issue," trial now on the issue of justiciability would be premature. C.A. Wright, et al., 13A Fed. Prac. & Proc. Juris. 2d. § 3532 at 114 (2007), citing In re Bean, 252 F.3d 113, 117-118 (2nd Cir. 2001)(issue of whether bankruptcy trustee's compensation should be offset did not present "real controversy" until after bankruptcy court had passed on trustee's fee application); Bennett v. Coors Brewing Co., 189 F.3d 1221, 1238 (10th Cir. 1999)(prior to determination of whether plaintiffs' releases were valid, attorneys' fees provision therein was not ripe for review). Moreover, the issue of justiciability is not merely premature: it is "not ripe for judicial review" since "it is premised upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 658 (2003), quoting Texas v. United States, 523 U.S. 296, 300 (1998).

In fact, the issue of justiciability may never be mature or ripe for decision: as this Court has recognized, "[i]f, after trial, it is determined that no damages are to be awarded, it will render the present question moot." AmBase Corp. v. United States, 61 Fed. Cl. 794, 802 (2004). More importantly, the issue of justiciability may never come up again. Discovery has not produced evidence indicating that the case has become non-justiciable. To the contrary, Shareholder Plaintiffs' experts now calculate damages ranging from $785 million to over $8 billion dollars. Since Carteret's total net receivership deficit was last projected at $299.7 million (including

taxes), as of year-end 2006,[7] a damages award of an amount anywhere on this continuum would greatly exceed the projected receivership deficit.[8]

C. Limited Evidentiary Review of the FDIC's Projections May Become Appropriate

If damages eventually awarded are less than the projected receivership deficit, the Government can be expected to argue that the case has become non-justiciable. It can also be expected to proffer the then-current Carteret goodwill financial reporting package as evidence in support of that proposition. If that happens, both the FDIC and Shareholder Plaintiffs will be entitled to an *evidentiary* review. That is, both the FDIC and Shareholder-Plaintiffs will free to challenge, as this Court will be to review, the sufficiency (including the relevance, weight, and probative value) of any evidence submitted by the Government.

That review must, however, be limited to traditional evidentiary grounds: it cannot serve as a subterfuge for deciding non-justiciable and unenforceable claims against the FDIC, as receiver or in any other capacity.

1. The Court May Determine Which Elements Will Flow to "Government Coffers"

At that time, the first question before the Court will be which elements of the total projected receivership deficit should be considered for the purposes of determining justiciability. In the Bailey case, the Court did not hold that the damages award should be compared to the entire "receivership deficit" of $68.2 million. Rather, it held that the "subrogated claim owned by the [FSLIC Resolution Fund]" of $66 million was the relevant comparison. Bailey v. United States, 341 F.3d at 1346. The subrogated claim was a claim "for funds provided to cover deposit liabilities" that the receivership had been unable to repay out of recoveries on assets. Id. The

---

[7] FDIC - Goodwill Financial Reporting Package-Carteret Federal Savings Bank (Mar. 23 2007)(FX 1A)(Ex. 1 hereto).

[8] FDIC, Chart: Components of the Carteret FSB Receivership Deficit Projections by Year (Reported: 202-2006; Projected 2007-2010)(Dec. 21, 2007)(FX 1C)(Ex. 2 hereto).

rationale for the Court's decision was that "the FRF's subrogated claim of $66 million" would exceed the "maximum potential damages award of $64 million" and thus "any damage award . . . would flow to the FRF." Id.

In reaching the decision that Bailey was non-justiciable, the court in that case did not take into account either "expenses, including FDIC operating expenses, and taxes," or interest, which brought the receivership deficit to "$71.1 million as of December of 200." Bailey, 341 F.3d at 1344-45. The logical inference is that, for the purposes of determining justiciability, it is appropriate to consider the various elements of a receivership deficit, rather than considering it *in toto.* If justiciability becomes an issue after the damages trial, the question of which elements of the total receivership deficit are relevant to the issue of justiciability can be decided by documentary evidence alone; witness testimony will not be required.

At that time, the first question before the Court will be which elements of the total projected receivership deficit will never be relevant to justiciability: that is, which elements will, if paid, *not* result in the flow "from one government coffer [i.e., the FSLIC Resolution Fund] to another." Bailey, 341 F.3d at 1346. An obvious category is amounts owed to third-party creditors of the receivership, together with the interest owed thereon. Payment of those amounts would flow to those creditors, not to the U.S. Treasury. If and when justiciability becomes an issue again, this should be demonstrable without witness testimony.

2. The Court May Determine Which Elements Are Insufficiently Final

When and if it becomes necessary for this Court to re-examine justiciability, the second question will be what weight should be given to evidence proffered by the Government. For example, income taxes, a primary component of the total projected net receivership results, will, if ever paid, flow to the U.S. Treasury. However, it is almost certain that the Government will be

unable to submit evidence of the amount of a future tax payment that will be sufficiently probative for the purposes of determining justiciability. The estimates of Carteret's future tax liability contained in the goodwill financial reporting package are highly contingent. As the FDIC has consistently stated, "[t]he amount of taxes, penalties, and interest, if any, due to the IRS has not been finally determined." Response of Plaintiff Federal Deposit Insurance Corporation to AmBase's Motion to Dismiss the FDIC (Fed. Cl. Sept. 30, 2003); see also FDIC's Response to AmBase's Statement of Issues at 19 (Sept. 13, 2006).

As in other goodwill cases, the ultimate tax liability of the Carteret receivership is dependent upon, inter alia, a substantial award of damages and upon the results of negotiations with the Internal Revenue Service. See, e.g., Suess v. United States, 33 Fed. Cl. 89 (1995); Suess v. United States, 52 Fed. Cl. 221 (2002); Order, United States v. Federal Deposit Insurance Corporation, No. 02-1427 (D.D.C., May 2, 2006)(approving tax settlement). The estimate of the Carteret receivership's potential future tax liability that is set forth in the Carteret goodwill reporting package should thus be disregarded for the purposes of determining justiciability. No witness testimony—indeed, no documentary evidence—is required to establish this self-evident fact.[9]

In sum, only amounts that are both reasonably certain *and* reasonably certain to flow back to the "coffers of the Government," such as the outstanding principal on the subrogated deposit resolution loan, should be considered for the purpose of determining continued justiciability.

[9] The issue of whether the Carteret receivership's ultimate tax liability can be projected with sufficient certainty to be relevant for justiciability purposes is different from the issue of whether any damages award in this case should be "grossed up" to reflect tax consequences. See Suess v. United States, 74 Fed. Cl. 510, 515 (2006)(denying, as premature, a gross-up for taxes expected to be paid on damages award).

Shareholder Plaintiffs have vigorously challenged almost every component of the projected Carteret receivership deficit. Although the Court lacks jurisdiction to adjudicate those challenges on the merits, it can take note of them in evaluating the finality, or lack thereof, of the projected receivership deficit. If Shareholder Plaintiffs indicate their intention to contest the FDIC's resolution of their administrative claim against the Carteret receivership estate, following FDIC's final reconciliation of that estate, the Court may wish to take that fact into account. If and when the time comes to decide which elements of the receivership deficit are sufficiently final to be considered for purposes of justiciability, that question will be determinable by documentary evidence. The testimony of witnesses will not be required.

C. Substantive Review of Carteret's Receivership Deficit Will Never Be Appropriate in This Court

In addition to federal income taxes, Shareholder-Plaintiffs propose to challenge other elements of the projected receivership deficit. Their challenges are not based on lack of finality, or the fact that funds will not flow back to "government coffers. Rather, those challenges fall into three broad categories:

- attacks on Congressional action, such as the alleged failure adequately to fund the RTC, which allegedly reduced the value of the Carteret receivership and created a need to borrow, and the enactment of the Minority Preference Program;
- attacks on FDIC's management of the Carteret receivership, such as the sale of Carteret Mortgage Company; and
- attacks on policies established by the FDIC acting in its corporate capacity, including policies relating to tax accounting, post-insolvency interest, allocation of administrative and litigation expenses, and establishing and carrying out a Minority

Preference Program, allegedly in violation of the Constitution and economic rationality.

The FDIC believes that it has handled Carteret, and the hundreds of other receiverships it dealt with during the crisis of the late 1980's and early 1990's, effectively, legally, and well. Whether it is right is a question outside the jurisdiction of this Court. As demonstrated in the FDIC's accompanying motion papers,[10] the Court is precluded, by the FDIC Act, the Rules of this Court, this Court's inability to grant injunctive or declaratory relief, the Court's lack of jurisdiction over claims pursuant to the Administrative Procedure Act, and the U. S. Constitution's prohibition of advisory opinions, from exercising jurisdiction over Shareholder Plaintiff's claims of FDIC mismanagement of the Carteret receivership.

If any review of FDIC policies implicated in the FDIC's management of the Carteret receivership were permissible, however, it would be limited to the administrative records of those policies. "It is black letter law that, except in the rare case, review in federal court [of administrative agency action] must be based on the record before the agency and, hence, a reviewing court may not go outside the administrative record. Review will then be made on that record." C. Koch, 33 Federal Practice & Procedure § 8306 at 73 (2006). "Generally, a party will not be permitted to expand the record if the administrative record is adequate. Id. at 76. Additions may be allowed only if there is a "strong showing of bad faith or improper behavior," or if the record is so bare that review is impossible." <u>Commercial Drapery Contractors, Inc. v. United States</u>, 133 F.3d 1, 7 (D.C. Cir. 1998).

" '[G]overnment officials are presumed to act in good faith and with regularity.' " <u>Paralyzed Veterans of American v. Sec. Veterans Affairs</u>, 345 F.3d 1334, 1349 (Fed. Cir. 2003), quoting <u>Schism v. United States</u>, 316 F.3d 1259, 1302 (Fed. Cir. 2002)(en banc). Shareholder

[10] Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for a Surplus (Dec. 21, 2007).

Plaintiffs have made no showing of either "bad faith or improper behavior" and have made no showing that the "record is so bare that review is impossible." Therefore, there will be no basis for supplementing the administrative record here with witness testimony. "The concept of record in administrative law includes information compiled in a totally written proceeding." C. Koch, 33 Federal Practice & Procedure § 8183 at 246.

## IV. ADMISSION OF RECEIVERSHIP DEFICIT EVIDENCE WOULD AFFECT SUBSTANTIAL INTERESTS OF THE FDIC

If FDIC witnesses are required to testify in the upcoming trial, it is self-evident that the FDIC will be required to expend both time and money. Both may well be wasted, since justiciability is not now ripe for adjudication and may never become so. The waste of time and money will be even greater if the FDIC witnesses are required to testify about the FDIC's management of the Carteret receivership estate and the adoption of related FDIC policies, since adjudication of Shareholder Plaintiffs' challenges with respect thereto are ultimately outside the jurisdiction of this Court.

In addition, to require the FDIC witnesses to testify would be to act against the interests of judicial restraint: it would constitute judicial interference with another branch of Government (indeed, both other branches of Government, given Shareholder Plaintiffs' attacks on Congressional action like the alleged under-funding of the Resolution Trust Corporation) that would ultimately prove unnecessary. See J.W. Moore, 15 Moore's Federal Practice, § 1-1.70[2] at 101-148.3 (3d ed. 2007). The dispute between Shareholder Plaintiffs and the FDIC (and the Government) over the management of the Carteret receivership deficit will become moot if, after damages are determined, Shareholder Plaintiffs are satisfied with the FDIC's resolution of their administrative claims.

That dispute cannot, in any event, either be adjudicated on the merits in this Court or reviewed by any court until after the FDIC has acted on those claims. To require FDIC witnesses to testify would thus not result in judicial economies. Rather, it would "dissipate judicial energies better conserved for litigants who have a real need for official assistance," as well as forcing parties "to bear the burdens of litigation without substantial justification" and to "grapple with hypothetical possibilities rather than immediate facts." C. Wright et al., 13A Fed. Prac. & Proc. § 3532.1 at 114.

In another goodwill case, the Government insisted, prior to the Court's decision on damages, that "the receivership deficit *would be* a negative number and thus valueless." Suess v. United States, 74 Fed. Cl. 510, 516 (2006)(emphasis added). As the Court noted, this "did not [a]ffect the government's liability for the breach." Id. Therefore, the case went forward, through the damages trial and damages decision, despite uncertainty with respect to future justiciability. Here, where there is currently no pending challenge to justiciability of this case, nor evidence currently indicating that justiciability is or will become questionable, the same procedure should be followed.

**CONCLUSION**

Unless and until the continued justiciability of this action becomes a real, as distinguished from hypothetical, issue, no evidence, documentary and testimonial, relating to the FDIC's projections of the Carteret receivership deficit should be admitted.

If and when the Government moves to dismiss this action for lack of justiciability, the then-current Carteret Goodwill Reporting Package, and related evidence, may be introduced into evidence for the limited purpose of demonstrating the FDIC's estimates of that deficit.

All other documentary evidence and witness testimony, with respect to the FDIC's management of the Carteret receivership or the FDIC's projections of the Carteret receivership deficit, should be precluded from admission into evidence in these proceedings.

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert
*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas
*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

December 21, 2007

**CERTIFICATE OF FILING**

I hereby certify this 21st day of December 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*