# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBASE CORPORATION and
CARTERET BANCORP, INC.

Plaintiffs,

FEDERAL DEPOSIT INSURANCE
CORPORATION,

Plaintiff-Intervenor,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 93-531C

Senior Chief Judge Loren A. Smith

## PLAINTIFF-INTERVENOR FDIC'S PRE-TRIAL MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Rule VI.A.14 of Appendix A of the Rules of the Court of Federal Claims ("RCFC"), and the Court's Order filed April 13, 2007, Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC") hereby submits this Memorandum of Contentions of Fact and Law.

## STATEMENT OF THE CASE

In United States v. Winstar, 518 U.S. 839 (1996), the Supreme Court recognized the liability of the Government for breaches of contracts it entered into in the 1980's with the objective of rescuing failing thrifts and reducing payments from the Federal Savings and Loan Insurance Corporation ("FSLIC"), an insolvent fund in 1988. This case concerns two of those contracts:

- a 1982 contract pursuant to which Carteret Savings Bank, F.A. ("Carteret" or the "Thrift") acquired two FSLIC-insured failing thrifts, Barton Savings and Loan Association of Newark, New Jersey (Barton') and First Federal Savings and Loan Association of Delray Beach, Florida ('Delray'), and
- a 1986 contract pursuant to which Carteret acquired three additional troubled thrifts, Admiral-Builders Savings and Loan Association, Parkville, Maryland ('Admiral'); First Federal Savings and Loan Association of Montgomery County, Blacksburg, Virginia ('First Federal'); and Mountain Security Savings Bank, Wytheville, Virginia ('Mountain Security').

**CONTENTIONS OF FACT**

Preliminary Note: Many facts with respect to the parties and their claims have previously been established. AmBase Corp. v. United States, 58 Fed. Cl. 32 (2003); AmBase Corp. v. United States, 61 Fed. Cl. 794 (2004). Those facts are not repeated here.

Jurisdiction & Justiciability

1. The Rules of this Court do not provide for the assertion of cross-claims.
2. The FDIC will waste both time and money if it is compelled to defend its management of the Carteret receivership, or its projections of the Carteret receivership deficit, in this action.
3. Requiring the FDIC to defend here its management of the Carteret receivership, or its projections of the Carteret receivership deficit, would also waste judicial resources.

The FDIC & Carteret's Claims

4. The FDIC is the receiver of Carteret and the manager of the FSLIC Resolution Fund
5. The FDIC is a non-appropriated funds institution ("NAFI"); its reserves derive from the payment by banks and thrifts of deposit insurance premiums, rather than from taxes.
6. The FDIC filed its Complaint in Intervention on March 28, 1997.
7. The FDIC sued to recover damages suffered by Carteret as a result of the Government's breaches of the two contracts.
8. For years, Carteret was regulated and supervised at the federal level by the Federal Home Loan Bank Board and the Federal Deposit Insurance Corporation.
9. After 1989, Carteret was supervised and regulated by the Office of Thrift Supervision.
10. The losses that directly resulted from the Government's breaches of contract in this case were suffered by Carteret.
11. The FDIC will rely on the evidence introduced by Shareholder Plaintiffs as to the amount of damages, or other monetary relief, that should be awarded in compensation for Carteret's losses.
12. The FDIC will rely on the evidence introduced by Shareholder Plaintiffs as to the amount of damages, or other monetary relief, that should be awarded in compensation for injuries resulting from the closure of Carteret.
13. The FDIC will rely on the evidence introduced by Shareholder Plaintiffs as to the amount of damages, or other monetary relief, that should be awarded in compensation for the loss of monies expended and costs incurred by the FDIC in connection with the closing of Carteret.

14. The FDIC will rely on the evidence introduced by Shareholder Plainitffs as to the amount of damages, or other monetary relief, that should be awarded in compensation for the value of all benefits conferred upon the Government in connection with the closing of Carteret.

15. The FDIC will rely on the evidence introduced by Shareholder Plaintiffs as to the amount of damages, or other monetary relief, that should be awarded in compensation under any other theory of damages.

16. Any recovery on Carteret's breach of contract claim will be distributed by the FDIC under the priority system applicable to the Carteret receivership

17. The FDIC is not relying on the passage of time to protect the Government from the need to pay damages in this case.

18. The FDIC acted reasonably and in good faith, and exhibited proper behavior, in managing the Carteret receivership and projecting the Carteret receivership deficit

19. In Slattery v. United States, 73 Fed. Cl. 527, 531 (2006), all damages on the thrift's breach of contract claim were payable to the FDIC as receiver for the thrift

Shareholder Plaintiffs' Claims

20. Shareholder Plaintiffs' three direct claims for breach of contract (Counts I-III of their First Amended Complaint) have been dismissed.

21. Shareholder Plaintiffs' direct claim for a "taking" (Count IV of their First Amended Complaint) has been dismissed.

22. Carteret Bancorp asserts a direct claim, Count V of the First Amended Complaint, for damages with respect to an anticipated surplus in the Carteret receivership deficit.

23. Carteret Bancorp was not required to commit resources to a goodwill transaction.

24. The creditors and equity shareholders of Carteret suffered only indirect losses.

25. Carteret Bancorp asserts a derivative claim, on behalf of Carteret, for breach of contract. (Count VI, First Amended Complaint.) This claim asks for damages to be paid to Carteret by the Government.

26. AmBase is not a party to Counts V (surplus) and VI (derivative claim) of Shareholder Plaintffs' First Amended Complaint.

27. Shareholder Plaintiffs challenge the FDIC's management of the Carteret receivership estate.

28. Shareholder Plaintiffs challenge the FDIC's projections of any Carteret receivership deficit.

29. Shareholder Plaintiffs initiated the time-consuming effort to dismiss the FDIC as plaintiff-intervenor and obtain a declaration defining the measure of Carteret's contract damages.

30. Shareholder Plaintiffs' pre-trial litigation efforts have delayed a trial on damages for several years.

31. Shareholder Plaintiffs have vigorously challenged nearly every item of the projected receivership deficit

32. The Shareholder Plaintiffs assert that the actual receivership deficit is zero.

<u>The Government</u>

33. No challenge by the Government to the justiciability of this case is currently pending.

34. Certain future payments by the FDIC to creditors of the Carteret receivership (e.g., third-party creditors) will not flow to federal Government "coffers."

The Carteret Receivership Deficit

35. The FDIC's projections of the Carteret receivership's financial results are highly contingent.

36. The FDIC, not the Government, selected the interest rate that is being applied to certain claims against the Carteret receivership.

37. With the exception of damages that may be awarded in this case, the FDIC does not expect the Carteret receivership to accrue any more assets to offset existing liabilities.

38. Shareholder Plaintiffs have not exhausted their administrative remedies with respect to the receivership claims process.

39. Shareholder Plaintiffs' administrative claim against the Carteret receivership has not yet been resolved.

40. The estimates of the potential future federal tax liability of the Carteret receivership set forth in the FDIC's projections of the Carteret receivership's deficit are highly contingent.

41. Unless and until damages are awarded in this case, the FDIC does not expect to pay any federal income taxes on behalf of the Carteret receivership.

42. The amount of federal income taxes that the FDIC might someday pay to the Internal Revenue Service (Department of the Treasury) on behalf of the Carteret receivership, if and when damages are awarded and paid in this case, is currently unknown and unknowable

43. As a result of the Shareholder Plaintiff's comprehensive challenge to the entire projected Carteret receivership deficit, the result of the final reconciliation of the receivership deficit is currently unknown and unknowable.

## CONTENTIONS OF LAW

### Jurisdiction

1. The Court has subject matter jurisdiction over the claims for breach of Carteret's goodwill contracts set forth in the FDIC's Complaint in Intervention.

2. The Court has subject matter jurisdiction over the derivative claim for breach of contract asserted by Carteret Bancorp in Count V of Shareholder Plaintiffs' First Amended Complaint pursuant to 28 U.S.C. § 1491 (a)(1).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4. This Court lacks jurisdiction over Carteret Bancorp's cross-claims against the FDIC.

5. The Court lacks jurisdiction to determine the "precise amount" of the surplus that might remain in the Carteret receivership estate after payment of claims and expenses.

6. The Court lacks jurisdiction over the claim, asserted by Carteret Bancorp in Count V of the FAC, for a direct award of any surplus in the Carteret receivership.

7. The Court lacks jurisdiction over the claim, asserted by Carteret Bancorp in various motion papers, for a direct award of some or all of the damages awarded on the derivative claim for breach of contract alleged by Carteret Bancorp on Carteret's behalf in Count VI of the FAC.

8. The Court lacks jurisdiction over the challenges, asserted by Carteret Bancorp in various motion papers, to the policies, procedures, and actions of the FDIC in administering the Carteret receivership.

9. This Court lacks jurisdiction to apportion a damages award to Carteret in this case between the FDIC and Shareholder Plaintiffs.

10. The Court lacks jurisdiction and power to determine the “exact value” of the Carteret receivership deficit.

11. This Court lacks jurisdiction over Shareholder Plaintiffs’ claims that FDIC policies applied in managing the Carteret receivership were arbitrary, capricious, or irrational, within the meaning of the Administrative Procedure Act.

12. If the FDIC polices applied in administering the Carteret receivership were found to violate the APA, the remedy would be to send those policies back to the FDIC for revision.

13. This Court may award damages in this action only from appropriated funds.

14. This Court may not direct the FDIC to “pass through” to Shareholder Plaintiffs, or either of them, any portion of damages awarded in this case on Carteret’s breach of contract claims.

15. This Court may not enjoin the FDIC’s with respect to resolution of claims against the Carteret receivership.

16. This Court lacks jurisdiction to review, on the merits, the FDIC’s management of the Carteret receivership.

17. This Court lacks jurisdiction to review, on the merits, the FDIC’s projections of the Carteret receivership deficit.

18. This Court's adjudication of this lawsuit will not preclude Shareholder Plaintiffs from seeking judicial review, in the Federal District Court, of the resolution of their claims against the Carteret receivership estate.

19. A suit by Shareholder Plaintiffs in District Court with respect to the resolution of their claims against the Carteret receivership estate will not divest this Court of jurisdiction over Carteret's breach of contract claims.

Justiciability

20. This case is currently justiciable.

21. If damages awarded exceed the projected receivership deficit, or so much of the receivership deficit as is relevant for the purposes of determining justiciability, this case will remain justiciable throughout.

22. Shareholder Plaintiffs' challenges to the FDIC's management of the Carteret receivership are not ripe.

23. Shareholder Plaintiffs' challenges to the FDIC's projections of the Carteret receivership deficit are not ripe.

24. Any finding by this Court with respect to the FDIC's alleged mismanagement of the Carteret receivership would constitute an advisory opinion, in violation of Article III of the U.S. Constitution.

25. Any finding by this Court with respect to alleged deficiencies in the FDIC's projection of the Carteret receivership deficit would constitute an advisory opinion.

26. Shareholder Plaintiffs' claims of receivership mismanagement are premature, since they have not exhausted their administrative remedies.

27. Depending on the damages award in this case, evidence with respect to the projected receivership deficit may be relevant to the issue of justiciability in the future.

28. Evidence with respect to the projected receivership deficit is not admissible unless and until the continued justiciability of this case is challenged.

29. In the absence of evidence of current non-justiciability, a hearing on issues related to the projected Carteret receivership deficit is premature.

30. Issues related to the FDIC's projections of the Carteret receivership deficit are not currently ripe for adjudication.

31. Issues related to the FDIC's projections of the Carteret receivership deficit may never be ripe for adjudication.

<u>Parties</u>

32. As receiver of Carteret and manager of the FSLIC Resolution Fund, the FDIC is the successor to Carteret's rights.

33. The FDIC is authorized by statute to recover all losses suffered by it and to distribute the proceeds to creditors and shareholder.

34. All damages recovered here by the FDIC will be distributed to Carteret's creditors and shareholder in accordance with the applicable statutory priority system.

35. Because it is not a party to the remaining derivative claim, AmBase should be dismissed as a party to the action.

<u>Carteret's Claims</u>

36. The Government breached Carteret's goodwill contracts.

37. The breach of contract claims being asserted by the FDIC here belong to the Carteret receivership—not to its creditors or shareholders.

38. The Government owes damages to the FDIC, as Carteret's successor, for the breach of Carteret's contracts.

39. The loss to Carteret is the measure of damages for the breach of Carteret's contracts.

40. Shareholders will benefit if there is a residual left after creditors, governmental and non-governmental, are paid in full.

<u>Shareholder Plaintiffs' Claims</u>

41. Carteret Bancorp lacks a "direct personal interest" in the Carteret receivership estate.

42. Count V of the First Amended Complaint (Carteret Bancorp's direct claim for a surplus) fails to state a claim for relief and should be dismissed.

43. Carteret Bancorp's claim for a direct award of the derivative damages awarded on Carteret's derivative claim for breach of contract (Count VI of the First Amended Complaint) should be dismissed.

44. Carteret Bancorp's theory that damages in this case should be measured by the Shareholder Plaintiffs' losses rather than those of Carteret should be dismissed.

45. Carteret Bancorp's challenge to the FDIC's management of the Carteret receivership estate fails to state a claim for relief and should be dismissed.

46. Carteret Bancorp's challenge to the FDIC's projections of the Carteret receivership deficit fails to state a claim for relief and should be dismissed.

The Government

47. The Government is not a stakeholder in this case.

48. The Government does not face the possibility of double liability in this case.

Shareholder Derivative Law

49. OTS has not pre-empted New Jersey law with respect to shareholder derivative actions.

50. New Jersey law governs Shareholder Plaintiffs' derivative claims asserted on Carteret's behalf.

51. There is no federal common law of corporations.

52. New Jersey is the source of substantive law applicable to the derivative claim asserted by Carteret Bancorp in this case.

53. Under New Jersey law, Carteret Bancorp may not be awarded any of the derivative damages that may be paid to Carteret on its contract claims.

54. Under general principles of American law, Carteret Bancorp may not be awarded any of the derivative damages that may be award to Carteret on its contract claims.

55. Carteret Bancorp's attempt to divert some or all of the damages awarded on Carteret's derivative claim to Carteret Bancorp alone violates that bank holding company's obligations as a fiduciary for the creditors, governmental and non-governmental, of Carteret.

Contract Law

56. Carteret's losses as a result of the Government's breach of its goodwill contracts are measured exclusively by the loss caused to Carteret alone.

57. Shareholder Plaintiffs are not the legal victims of the Government's breach of Carteret's goodwill contracts.

The Carteret Receivership Deficit

58. Evidence with respect to the projected receivership deficit is not relevant now to any issue in this case.

59. Shareholder Plaintiffs' various challenges to Government action (e.g., Congress's alleged failure fully to fund the Resolution Trust Corporation) are not relevant to their claim that the FDIC mismanaged the Carteret receivership

60. The FDIC has complied fully and reasonably with its statutory duties in managing the Carteret receivership.

61. The tax returns prepared for and by the FDIC with respect to the Carteret receivership and filed with the Internal Revenue Service were prepared reasonably.

62. The post-insolvency interest rate applied to the Carteret receivership's outstanding loan from the FRF-RTC is reasonable.

63. The projections of the Carteret receivership contained in the FDIC's Carteret Goodwill Reporting Package (FX 1A) are reasonable.

64. The FDIC's projection of the Carteret receivership's future federal tax liability should be disregarded for purposes of evaluating the continued justiciability of this case.

65. Given Shareholder Plaintiffs' challenges to the FDIC's projections of the Carteret receivership deficit, those projections may be disregarded for the purposes of evaluating the continued justiciability of this case.

66. If the Court had jurisdiction to conduct an APA review of the FDIC policies applied in managing the Carteret receivership, its review would be limited to the documentary administrative records of those policies.

67. To require the FDIC to defend here its management of the Carteret receivership, or its projections of the Carteret receivership financial results, would constitute unnecessary judicial interference with the other branches of Government.

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert
*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas
*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

December 21, 2007

**CERTIFICATE OF FILING**

I hereby certify this 21st day of December 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*