IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------X

AMBASE, et al., : Case No:
Plaintiff : 93-531C
VS. :
THE UNITED STATES, :
Defendant :

-------------------------------X

PHILADELPHIA
JULY 13, 1999

Deposition of JOSEPH KEHOE, a witness herein, called for examination by counsel for Plaintiff, in the above-entitled matter, pursuant to notice, the witness being duly sworn by Nicole Montagano, a Commissioner of Deeds in and for the Commonwealth of Pennsylvania, taken at Sargent's, 2 Penn Center, Suite 1724, Philadelphia, Pennsylvania, at 9:13 a.m., on Tuesday, July 13, 1999 and the proceedings being taken down by Stenotype by Nicole Montagano and transcribed under her direction.

a couple of weeks ago and reviewed a few documents related to AmBase and Carteret.

Q. Could you tell me what those documents were?

MS. FRANK: Objection. It's attorney work product. You're not to answer the question.

BY MR. HUME:

Q. Okay. Well, I do mostly want to ask you about Carteret and the time you were involved as a supervisor agent. I may want to ask you a few general questions first. Could you briefly review for me your career at the bank board at OTS?

A. I was hired by the Federal Home Loan Bank in New York in 1988 as a, the position was a supervisory associate and was then named a supervisory agent in 1989. Then when the office at Thrift Supervision was created I was an assistant director for them beginning in 1989. And my current position is field manager.

Q. And what did you do before you joined the bank board in 1988?

A. I was an examiner with the office of the controller of the currency.

Q. And do you have an accounting background?

A. I have a Bachelor's degree in accounting

MR. HUME: Mark this Kehoe Five.
(Kehoe Exhibit No. 5
was marked for
identification.)
BY MR. HUME:
Q. Reviewing this letter of March 5th that you sent to the Carteret board. As you can see there are a number of issues in this letter. I'm going to spend a little time asking you about each one of them. Does reading it over refresh your recollection of having written it?
A. No.
Q. I realize it's a long time ago.
A. No, I don't recall writing the letter.
Q. But you have no reason to doubt that you did it?
A. That's correct.
Q. In the second paragraph you state that having reviewed the Thrift's General Valuation Allowance. And you say based on agreed upon methodology that Thrift ought to increase its allowance by $9.1 million. Am I right in saying that this is follow-up work from the $77 million recommended in the report of examinations?
MS. FRANK: Objection as to form.

BY MR. HUME:

Q. I mean, it's the same issue?

MS. FRANK: Objection as to form.

THE WITNESS: It's the same issue. I don't recall if what we were doing was changing the $77 million number that was in the report.

BY MR. HUME:

Q. Well, that's what I'm trying to understand. The Thrift took a total reserve provision against future loan losses in 1989 of about $26 to $27 million. And there were $77 million recommended in the report of exam for 1989. And this letter is written in the first quarter asking for an additional $9 million. So I'm wondering if knowing that and reading this and remembering back, can you tell me was there an adjustment made in OTS as to the amount of reserves that should be taken by the 5th?

A. I don't recall. All I can tell you from reading this letter is that apparently we and management agreed on a number, whatever that number might be, and as a result of that they needed to increase the general allowance by $9 million.

Q. And they needed to increase that for the 1989 year; is that right?