**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMBASE CORPORATION AND CARTERET BANCORP, INC., Plaintiffs, and FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Intervenor, v. UNITED STATES OF AMERICA, Defendant. | ) | Civil Action No. 93-531 (Judge Loren Smith) |

**PLAINTIFFS' MOTION (1) TO SUMMARILY DENY, OR IN THE ALTERNATIVE, TO HOLD IN ABEYANCE, THE FDIC'S MOTIONS TO DISMISS AND (2) TO SUMMARILY DENY THE FDIC'S MOTION IN LIMINE**

Plaintiffs AmBase Corporation and Carteret Bancorp, Inc. ("AmBase") respectfully move the Court to enter an order summarily denying the FDIC's three motions to dismiss filed on December 21, 2007,[1] or, in the alternative, to hold those motions in abeyance until after trial in this matter. AmBase also respectfully moves for entry of an order summarily denying the FDIC's motion in limine, also filed on December 21. *See* Pl.-Intervenor FDIC's Pre-trial Objections to Witnesses and Exs. and Pre-trial Mot. in Limine (Doc. 240).

[1] *See* Pl.-Intervenor FDIC's Mot. to Dismiss Carteret Bancorp's Claim for a Surplus (Doc. 236); Pl.-Intervenor FDIC's Mot. to Dismiss Carteret Bancorp's Claim for a Direct Award of Derivative Damages (Doc. 238); Pl.-Intervenor FDIC's Mot. to Dismiss Shareholder Pls.' Claim that Damages Should Be Based on Their Alleged Losses (Doc. 239).

Because the FDIC's motions raise arguments that the Court has already repeatedly rejected, and because most of the issues raised in the FDIC's motions have little, if anything, to do with the efficient presentation of evidence at trial, neither Ambase nor the Court should be required to divert their valuable time and resources from preparing for trial in order to address the FDIC's motions. Indeed, because the FDIC's filings are merely the latest maneuver in an increasingly desperate campaign to avoid any independent review of the FDIC's actions in connection with the receivership for Carteret Savings Bank ("Carteret"), the Court would be well within its rights to summarily deny the motions. At a minimum, the legal issues raised by the FDIC in its motions—save for the issue of a bifurcated trial, which this Court has already squarely rejected—would be more efficiently addressed through post-trial briefing rather than through briefing on motions filed on the eve of trial.

**ARGUMENT**

In the long history of the litigation of this case, perhaps no event better captures the real agenda and interests of the FDIC than do the events of December 21, 2007. On that date, under this Court's rules and by order of the Court, the FDIC—which repeatedly points out that it is the successor in interest to Carteret and a party-plaintiff in this case—was required to file its Appendix A submissions. *See* Doc. 217. Appendix A requires that a plaintiff file a memorandum of contentions of fact and law, which must include, *inter alia*, "a full but concise statement of the facts plaintiff expects to prove and a discussion of plaintiff's position with respect to facts on which defendant is expected to rely" and "a discussion of the legal principles plaintiff contends are applicable, as well as plaintiff's response to defendant's anticipated legal position." RCFC App. A ¶ 14. Yet the FDIC's pretrial brief is devoid of *any* substantive discussion of damages issues. Instead, the FDIC in its bare-bones brief contents itself to a

declaration that it will "rely on the evidence introduced by [AmBase] as to the amount of damages." FDIC's Pre-trial Memorandum of Contentions of Fact and Law (Doc. 241) at 3.

Thus, instead of devoting any time to fulfilling its obligations and responsibilities as a plaintiff in this case—and thus in lieu of taking seriously both its role as party-plaintiff and its responsibility to recover damages on behalf of Carteret—the FDIC has thrown all of its energies into the preparation of not one, not two, but three separate motions to dismiss, plus a motion in limine. These motions address auxiliary issues that have nothing to do with the facts and legal theories respecting damages that the FDIC must establish at trial and that have everything to do with the FDIC's continuing efforts to prevent this Court from looking behind the FDIC's calculation of the liabilities supposedly owed by the Carteret receivership. Because the overwhelming majority of those "liabilities" are owed to the government, the transparent purpose of the FDIC's motions is to ensure that any damages ultimately awarded by the Court (as a result of AmBase's litigation efforts) are retained by the breaching party. To make matters worse, as discussed in greater detail below, the FDIC has previously advanced and had rejected by this Court virtually every argument made in its latest motions.

In short, on the day it was supposed to fulfill its pretrial obligations as a *plaintiff* in this case, the FDIC chose instead to devote virtually all of its resources to the preparation and filing of motions that rehash arguments that are so aligned with the interests of the *defendant* that a casual reader could be forgiven for assuming that the motions were submitted on behalf of the United States. Yet the FDIC has the temerity to suggest that it is *AmBase* that may be suffering from a conflict of interest. *See* FDIC's Mot. to Dismiss (Doc. 238) at 9-10.

That the FDIC has chosen to devote its resources to such questionable tactics is bad enough. But for AmBase and the Court to be required to devote their scarce time and resources,

on the eve of trial, to dealing with these motions is, frankly, beyond the pale. AmBase respectfully submits that for such a diversion to be justified, the issues raised by the FDIC's motions must satisfy two criteria: (1) they must be genuinely new issues that the Court has not previously addressed; and (2) the resolution of such new issues must be likely to narrow significantly the scope of the trial and to reduce significantly the length of the trial. As we discuss in further detail below, none of the issues raised by the FDIC in its motions satisfy both of these criteria, and most of those issues satisfy neither criterion.

**This Court Has Repeatedly Rejected the Arguments Made by the FDIC**

In its motions, the FDIC advances a series of arguments as to why this Court lacks jurisdiction to examine the deficit run up by the FDIC during its management of the Carteret receivership and asserts, therefore, that the Court should not hear evidence on this issue. If these arguments sound familiar to the Court, it is because the FDIC has raised them before—repeatedly and without regard for the fact that the Court has already, and repeatedly, rejected them. *See, e.g.*, Pl. FDIC's Sur-Reply in Further Resp. to "AmBase's Mot. to Dismiss the FDIC and to Define the Measure of Carteret's Contract Damages" (Doc. 142) (arguing that, under 12 U.S.C. § 1821, the Court lacks jurisdiction to examine the receivership deficit and that Plaintiffs cannot recover directly from the government); FDIC's Resp. to AmBase's Statement of Issues (Doc. 201) (arguing that the FDIC owns the contract claims and that this Court lacks jurisdiction to examine the receivership deficit); FDIC's Statement with Regard to Summ. J. (Doc. 228) (arguing that the receivership deficit is only relevant to justiciability, that substantive review of the receivership deficit is barred by 12 U.S.C. § 1821, and that the damages claims belong to the FDIC-R); Telephone Status Conference Call before Judge Smith (Nov. 30, 2007) (counsel for FDIC arguing that issues related to the receivership deficit should not be reached at trial and that,

at most, trial should be bifurcated) (transcript unavailable). The Court has rejected each and every such argument by the FDIC.

At the outset, it is important to note that under this Court's precedent, the receivership deficit has no relevance to an award of damages. In *Slattery v. United States*, 69 Fed. Cl. 573 (2006), this Court held that because plaintiff-shareholders "have recovered nothing from the receivership, they are entitled to" the value of the thrift but-for the breach. *Id.* at 586. The Court correctly explained that "[a]ny value lost in the receivership and liquidation process would not have been lost, but for the breach. If the breach had not occurred there would have been no receivership." *Id.* The same logic applies here, as explained in AmBase's pre-trial Memorandum of Contentions of Fact and Law. *See* Doc. 237.

But to the extent the government, the FDIC, or this Court believes that the receivership deficit must be subtracted from any damages award in this case, or that damages must both flow through the receivership and be siphoned off to satisfy the alleged liabilities underlying the receivership deficit, then the Court should examine the validity of the receivership deficit. Moreover, this Court has already rejected the FDIC's efforts to block an examination of the deficit. It is likewise clear that in the course of rejecting such efforts, the Court has rejected the arguments advanced by the FDIC in its current filings. In 2004, in its last published opinion in this case, this Court addressed its "jurisdiction to review the FDIC's administration of the Carteret receivership when determining the value of the damages to be awarded to the Plaintiffs as a result of the breach of contract by the government." *AmBase Corp. v. United States*, 61 Fed. Cl. 794, 795 (2004). The Court concluded:

> In *Suess v. United States*, 33 Fed. Cl. 89 (1995), this Court held that "claims of . . . shareholders attempting to recover [a] surplus could be heard. It strikes this Court as surprising that it might have the power to award a surplus in such a case but not the power to determine the precise amount of that surplus; yet this is what

> the position of the FDIC . . . would suggest. A deficit, of course, is the flip side of a surplus. The FDIC . . . would have this Court rely on the naked assertions of the FDIC as to whether there is a deficit or a surplus, and what the amount of either happens to be. Were the FDIC to assert that the receivership is currently in debt for ten billion dollars, it is the FDIC's position that this assertion must be accepted at face value, and the case immediately dismissed as moot. This is the assertion of a judicially non-reviewable administrative power. Such power, of course, is not the norm of our constitutional system.

*Id.* at 797. The Court rejected the argument that the FDIC Act bars such review, *id.* at 798-99, noting that "Plaintiffs seek to determine the size of the receivership amount so a damage claim against the government, not the receiver, may be apportioned," *id.* at 799. The Court further explained that "[i]f this litigation were to continue much longer it is likely that the receivership deficit would swallow the potential award and there could be *no* recovery by the Plaintiffs. This seems an unjust result, especially if the very existence of the receivership deficit is the result of the breach of contract by the Defendant." *Id.* at 802. Thus, the Court concluded—in language so plain it is hard to understand how the FDIC fails to comprehend it—that "this Court must carefully review the receivership deficit to permit inclusion of only those costs which are legitimately part of the receivership deficit." *Id.* Accordingly, the Court granted "AmBase's Motion to Define the Measure of Carteret's Contract Damages, to the extent that it requires the Court to consider the size and value of the FDIC's receivership deficit when calculating damages." *Id.*

Similarly, in 2006, the Court again rejected the FDIC's arguments regarding the Court's supposed inability to look into the calculation of the receivership deficit, when it concluded that "[t]he Court . . . finds that after reviewing the parties arguments the case is justiciable at this time." Order of Dec. 13, 2006 (Doc. 210). And just over one month ago, the Court again addressed these arguments, concluding that summary judgment was inappropriate and rejecting the FDIC's contention that any examination of the receivership deficit should not occur at trial.

Telephone Status Conference Call before Judge Smith (Nov. 30, 2007) (transcript unavailable).[2] Moreover, at that conference the Court explicitly and without qualification rejected the FDIC's suggestion for a bifurcated trial. Yet, the FDIC's motion in limine, filed just weeks after the conference, essentially again asks the Court to bifurcate the trial. *See* FDIC's Mot. in Limine (Doc. 240) at 8-13.

The present filings, then, are nothing more than motions for reconsideration—or, more accurately, re-re-reconsideration. Neither AmBase nor the Court should be made to suffer for the FDIC's obstinate refusal to take no for an answer by being required, at this late date, to devote valuable time and resources to addressing the FDIC's attempts to relitigate issues that have been repeatedly and squarely decided against it.

**<u>The FDIC's Motions Would Not Significantly Alter the Course of Trial</u>**

That requiring AmBase to respond at this time to the FDIC's motions would be a waste of the parties' and the Court's scarce time and resources is reinforced by the fact that most of the the issues raised by the FDIC will not significantly affect the course of trial and can be dealt with, if they need to be addressed at all, in post-trial briefing. For example, any issue regarding whether a shareholder can be granted direct recovery of damages in a derivative suit would not affect the presentation of any evidence regarding the nature and amount of those damages. Similarly, the FDIC's argument that AmBase's claim for recovery of any surplus in the Carteret

[2] The FDIC adds one arguably new wrinkle to its jurisdictional contentions, claiming that Plaintiffs may not "cross-claim" against the FDIC. Though dressed in new clothes, this argument is just another variant of the FDIC's fundamental misapprehension regarding Plaintiffs' request in this case. The FDIC's continued attempts to characterize Plaintiffs' request for examination of the receivership deficit as a "claim" against the FDIC is pure sophistry—and constitutes willful ignorance of this Court's ruling on this issue. In 2004, this Court succinctly and correctly explained that "Plaintiffs in this case ask nothing more of this Court than the exercise of its equitable power incident to their claim for money damages against the federal government, a claim which lies squarely within our jurisdiction." *AmBase*, 61 Fed. Cl. at 797.

receivership estate does not need to be addressed and resolved now, since that issue does not bear in the slightest on the evidence that will be presented at trial regarding the amount of damages caused by the government.

Along these same lines, it is also worth noting that in its Motion in Limine, the FDIC grossly mischaracterizes the trial time that will be spent on the receivership deficit issue. *See* FDIC's Mot. in Limine (Doc. 240) at 4-5. If this Court grants Plaintiffs' Motion to Designate Deposition Testimony for Trial (Doc. 244), then Plaintiffs will likely have little to no need to call any fact witnesses on this issue, a reality reflected in the joint proposed preliminary trial schedule submitted to this Court and agreed to by the FDIC. *See* Doc. 234. As that same agreed-upon schedule reflects, if the Court does not grant Plaintiffs' Motion to Designate, then Plaintiffs will likely require, at most, two additional trial days to deal with the receivership deficit issue.

**CONCLUSION**

The FDIC's filings represent an inexcusable attempt to delay this long-awaited trial. Far from providing this Court with the guidance contemplated by Appendix A, the FDIC is instead endeavoring to distract both AmBase and this Court from trial preparation. We would not be the first party to note the FDIC faces a potential conflict of interest in *Winstar* cases and that its actions and posture suggest such a conflict has become more real than potential. *See, e.g.*, Br. for Pl.-Cross Appellant Frank P. Slattery at 65 n.24, *Slattery v. United States*, No. 2007-5063 (Fed. Cir. Nov. 20, 2007) ("Apparently succumbing to its conflict of interest, FDIC-Receiver is advocating FDIC-Corporate's interests at the expense of the bank whose interests it purports to represent.") Accordingly, AmBase respectfully requests that, to the extent the Court has already rejected the arguments advanced by the FDIC in its December 21 motions, the Court deny those motions. In particular, the Court has already ruled that it can and will address the receivership

deficit at trial. The FDIC's motions for what is in effect reconsideration should be denied for the reasons undergirding those original orders.

To the extent the Court believes the FDIC raises new issues that will not significantly affect the course of trial, and to the extent the Court desires further consideration of those issues, Plaintiffs respectfully request that the Court hold the motions in abeyance pending trial. Lastly, if the Court deems necessary further briefing on any of these motions prior to trial, Plaintiffs respectfully request an extension of time to file responses until January 31, 2007, an extension that is necessary given the demands of the fast-approaching trial date.

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
*Counsel of Record*

Of Counsel:

Vincent J. Colatriano
David H. Thompson
Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)

Dated: January 7, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January 2008, I caused to be served by the Court's electronic filing system copies of the foregoing on the following counsel:

David Levitt, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.—Room 12006
Attn: Classification Unit—8th Floor
Washington, DC 20530

Andrew Gilbert, Esq.
FDIC Legal Division
550 17th Street, N.W.
Room 2098
Washington, DC 20429

/s/ Jesse Panuccio
Jesse Panuccio