**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**AMBASE CORPORATION and CARTERET BANCORP, INC.**

**Plaintiffs,**

**FEDERAL DEPOSIT INSURANCE CORPORATION,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

**Civil Action No. 93-531C**

**Senior Chief Judge Loren A. Smith**

**PLAINTIFF-INTERVENOR FDIC'S RESPONSE TO PLAINTIFF'S MOTION TO DESIGNATE DEPOSITION TESTIMONY FOR TRIAL**

**Federal Deposit Insurance Corporation**
**Legal Division**
**Andrew C. Gilbert**
***Counsel of Record***
***for Plaintiff-Intervenor FDIC***
**550 Seventeenth Street, NW, MB-3060**
**Washington, DC 20429**
**(202) 898-3871**
**agilbert@fdic.gov**

**Of Counsel:**
**John V. Thomas**
***Deputy General Counsel***
**D. Ashley Doherty**
***Counsel***

**January 7, 2007**

**TABLEOF CONTENTS**

TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 2

I. The Designated Deposition Testimony Is Not Admissible under Fed. R. Evid. 801(d)(2)(D), RCFC 32(a)(2), or RCFC 32(a)(3)(E) ........ 3

II. When Permitted, Substantive Review of FDIC Policies and Regulations Is Limited to the Administrative Record ........ 7

A. Substantive Review of the FDIC's Actions Is Impermissible Here........ 7

B. APA Review is Limited to the Administrative Record........ 11

CONCLUSION........ 13

CERTIFICATE OF FILING........ 15

# TABLE OF AUTHORITIES

## Cases


AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I") .................................................. 2, 8

AmBase Corp. v. United States, 61 Fed. Cl. 794 (2004)("AmBase II") ............................. passim

American Capital Corp. v. United States, 472 F.3d 859 (Fed. Cir. 2006). .................................. 9

Auction Co. of America v. FDIC, 132 F.3d 746 (D.C. Cir. 1998) ............................................... 9

Bailey v. United States, 341 F.3d 1342 (Fed. Cir. 2003)............................................................. 5

Banks v. United States, 78 Fed. Cl. 603 (2007)...................................................................... 3, 6

Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., 447 F.3d 1370 (Fed.Cir.2006) ......................................................................................................... 10

Block v. Community Nutrition Institute, 467 U.S. 340 (1984) ................................................. 11

Caguas Central Federal Savings Bk. v. United States, 215 F.3d 1304 (Fed. Cir. 2000) ................ 9

Califano v. Saunders, 430 U.S. 99 (1977) ................................................................................ 11

Camp v. Pitts, 411 U.S. 138 (1973) ......................................................................................... 13

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) ................................... 13

Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1 (D.C. Cir. 1998)............... 11

Coughlin v. Capitol Cement Co., 571 F.2d 290 (5th Cir. 1978)................................................... 7

Florida Power & Light Co. v. Lorion, 470 U.S. 729 (1985)........................................................ 13

Globe Savings Bank, FSB v. United States, 61 Fed. Cl. 91 (2004)...................................... 3, 6, 7

Gulf Group Inc. v. United States, 61 Fed. Cl. 338 (2004) .......................................................... 13

Long Island Saving Bank, FSB v. United States, 63 Fed. Cl. 157 (2004).................................... 3

National Park Hospitality Association v. Dep't of the Interior, 538 U.S. 2026 (2003)............... 11

Paralyzed Veterans of America v. Sec. Veterans Affairs, 345 F.3d 1334 (Fed. Cir. 2003) ......... 12

Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006)........................................................ 13

Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002).(en banc) .......................................... 12

United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963) ..................................................... 13

Weaver-Bailey Contractors, Inc. v. United States, 19 Ct. Cl. 474 (1990)..................................... 7


## Statutes


12 U.S.C. § 1819(a) Fourth.......................................................................................................... 9

12 U.S.C. § 1821(d)(6) ............................................................................................................. 10

12 U.S.C. § 1821(j) ...................................................................................................................... 9

12 U.S.C. § 1821(d) .... 4, 9
28 U.S.C. § 1331 .... 10
28 U.S.C. § 1491(a)(1) .... 9
28 U.S.C. § 1491(b)(2) .... 9
28 U.S.C. § 1491(b)(4) .... 12
5 U.S.C. §§ 701-704 .... 10

**Rules**

Fed. R. Civ. Pro. 13(g) .... 6
Fed. R. Evid. 801(d)(2) .... 3-6
RCFC 13 .... 6
RCFC 14 .... 6
RCFC 32(a)(1) .... 8
RCFC 32(a)(2) .... 7

**Treatises**

C. Wright et al, 30B Fed. Prac. & Proc. Evid. (Interim ed.) § 7015 .... 6
C. Wright et al., 33 Fed. Prac. & Proc. Admin. § 8306 (2006). .... 11

**Constitutional Provisions**

U.S. Const. Art. III .... 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBASE CORPORATION and<br>CARTERET BANCORP, INC.<br><br>Plaintiffs,<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 93-531C<br><br>Senior Judge Loren A. Smith |

**PLAINTIFF-INTERVENOR FDIC'S RESPONSE TO PLAINTIFF'S MOTION TO DESIGNATE DEPOSITION TESTIMONY FOR TRIAL**

Plaintiff-Intervenor Federal Deposit Insurance Corporation ("FDIC") is the successor to the rights of Carteret Savings Bank, FA ("Carteret" or the "thrift"), and manager of the FSLIC Resolution Fund, which succeeded by operation of law to the assets and liabilities of the Resolution Trust Corporation ("RTC").

The FDIC hereby opposes the motion of plaintiffs AmBase Corporation ("AmBase") and Carteret Bancorp, Inc. ("Carteret Bancorp" or the "Holding Company")(collectively, "Shareholder Plaintiffs') for leave to file excerpts of deposition testimony for use as substantive evidence in the upcoming trial in this case. The FDIC's opposition is limited to certain designated deposition testimony of FDIC employees, past and present, as set forth below.

## SUMMARY OF ARGUMENT

The FDIC, the party against which the Shareholder Plaintiffs wish to offer the designated deposition testimony, and the Shareholder Plaintiffs are coparties, not party-opponents. The Shareholder Plaintiffs have not, and may not, assert a cross-claim against the FDIC in this action, the FDIC is not adverse to the Shareholder Plaintiffs, and the Shareholder Plaintiffs may not introduce evidence "against" the FDIC in this proceeding.

In addition, the Court lacks jurisdiction at this time to conduct an evidentiary review of the creditor claims of which the projected Carteret net receivership deficit is comprised and lacks jurisdiction at all times to conduct a substantive review. Moreover, if substantive review of FDIC policies were possible, it would be limited to the administrative record. Therefore, the deposition testimony at issue is not admissible.

## ARGUMENT

The Holding Company's derivative claim for breach of contract—the only claim remaining in this case[1]—arises out of the "federal government's unequivocal renunciation and breach of contractual promises made by federal banking agencies" to Carteret Savings Bank, FA ("Carteret" or "the Thrift"). First Amended Complaint ("FAC") at ¶ 1; see also Plaintiff's Memorandum of Contentions of Fact and Law ("SHP Mem.") at 1, 11 (Dec. 21, 2007).

The Government's liability to Carteret for those breaches has been established. AmBase Corp. v. United States, 58 Fed. Cl. 32, 41-49 (2003)("AmBase I"). The only outstanding issue is the amount of damages owed to Carteret, and thus to the FDIC, its successor, on the shareholder

[1] Shareholder Plaintiffs asserted six claims for relief: five direct and one derivative. FAC Counts I-V, VI. Four of the direct claims (FAC, Counts I-IV) have been dismissed. AmBase Corp. v. U.S., 58 Fed. Cl. 32 (2003)("AmBase I"). The FDIC has moved to dismiss the fifth direct claim, for recovery of a surplus, which was asserted by Carteret Bancorp alone. FAC, Count V. Plaintiff AmBase Corp. is not a party to the derivative claim for breach of contract. FAC, Count VI. Therefore, AmBase is no longer a party to this action.

derivative claim. AmBase Corp. v. United States, 61 Fed. Cl. 794, 795 (2004)("AmBase II")(FDIC is "successor to the rights of Carteret, which include the breach of contract claims that the shareholder Plaintiffs seek to pursue derivatively"); FAC Count VI; see also SHP Mem. at 1 (submitting memorandum "pertaining to the damages issues that are to be tried in this action").

## I. The Designated Deposition Testimony Is Not Admissible under Fed. R. Evid. 801(d)(2), RCFC 32(a)(2), or RCFC 32(a)(3)(E)

Rule 801(d)(2) of the Federal Rules of Evidence excludes from the definition of hearsay (and thus allows for admission into evidence of) an out-of-court statement that is an "[a]dmission by [a] party-opponent." To qualify, the statement must be, inter alia, "offered against a party." Fed. R. Evid. 801(d)(2); see also Banks v. United States, 78 Fed. Cl. 603, 616 (2007) ("Specifically, the statement must be offered against a party"); Long Island Saving Bank, FSB v. United States, 63 Fed. Cl. 157, 164 (2004)("proffered portions of the testimony of named individuals . . . constitute admissions because the portions are 'offered against a party' ")(internal citation omitted); Globe Savings Bank, FSB v. United States, 61 Fed. Cl. 91, 97 (2004) (deposition testimony was admission because it was " 'offered against a party' in this case the United States' ")(internal citation omitted).

Some of the deposition testimony that the Holding Company seeks to designate may meet that initial condition. Much of it, however, does not.

The designated deposition testimony of the following FDIC employees, past and present,

- Donna Cribbs
- Wayne Green
- Karen Hughes
- Herbert Held
- Edward Griffin

- Steven Johnson
- Gloria Maligaya,
- James Mindnich
- Michael Saran
- Elaine Tama, and
- James Vordtriede

that relates to the projected Carteret receivership deficit is not offered against the Holding Company's sole party-opponent, the defendant United States ("the Government"), which is the party from whom damages are sought. Nor could it be, since, as the Holding Company itself acknowledges, "the receivership deficit has *no relevance* to an award of damages" because "the receivership deficit is not typically an asset available for recovery." SHP Mem. at 85 (emphasis added); see also Plaintiffs' Motion (1) to Summarily Deny, or, in the Alternative, to Hold in Abeyance, the FDIC's Motions to Dismiss and (2) to Summarily Deny the FDIC's Motion in Limine at 5 (Jan. 7, 2008)("the receivership deficit has no relevance to an award of damages").

Rather, the Holding Company offers this evidence against the FDIC. SHP Mem. at 83-124. The Holding Company seeks to prove that the FDIC erred in filling out Carteret's tax returns (id. at 87), erred in calculating interest on funds advanced to pay Carteret's depositors and now owed to FRF-RTC (id. at 100), erred in its accounting (id. at 106), and erred in handling the Carteret conservatorship (id. at 110). It seeks "findings of fact that the receivership deficit is at the level of fact and law invalid." Id. at 85.

The alleged purpose of this request is to prevent an "offset [to] a damages recovery." Id.; see also id. at 4, 5, 22, 83, 85, 96, 99, 129. But damages awarded on Carteret's breach of contract claim will not be "offset" here by the claims of Carteret's creditors. Those claims, like the

receivership claims of the Holding Company, can only be decided via the Carteret receivership claims process and procedures. Judicial review of the FDIC's handling of the Holding Company's claim against the Carteret receivership will not be available until after the claims process has been completed. 12 U.S.C. 1821(d).

If the final damages award here is less than the amount of the creditors' claims, the Government will presumably question the continued justiciability of the case. Bailey v. United States, 341 F.3d 1342 (Fed. Cir. 2003). Even then, however, neither the validity of those claims nor the FDIC's management of the Carteret receivership would be in issue. The Court could "review the receivership deficit to permit inclusion of only those costs which are legitimately part of the receivership deficit" for the purpose of determining justiciability. AmBase II, 61 Fed. Cl. at 802. This evidentiary review would be limited: the only question would be whether the final damages award exceeded the amount reasonably anticipated ultimately to flow "from one government coffer to another"—that is, whether the final damages award exceeded the non-contingent claims of federal government creditors. Bailey, 341 F.3d at 1346 (internal citation omitted). If–as appears likely—that should be the case,[2] the entire damages award would be payable to the FDIC as Carteret's successor, for distribution according to the governing statutes and regulations. If not, the entire case would be dismissed.

The unlikely future need to review justiciability does not convert the FDIC to a "party-opponent" that is "adverse" to the Holding Company. As this Court previously acknowledged, the "FDIC is not generally considered to be the government for jurisdictional purposes in

---

[2] With the exception of restitution, every damages theory advanced by the Holding Company should, if successful, result in an award of damages to Carteret that will exceed the projected Carteret net receivership deficit, exclusive of projected federal income taxes, through at least the end of calendar year 2009. FDIC, Chart: Components of the Carteret FSB Receivership Deficit Projections by Year (Reported: 2002-2006; Projected 2007-2010)(Dec. 21, 2007)(FX 1C);(Ex.1hereto).

Winstar litigation." AmBase II, 61 Fed. Cl. at 797. Moreover, an attempt by the Holding Company to assert a "claim against the FDIC" would be a "claim between two non-governmental parties [that] would seem to fall outside the jurisdictional limitations of the Tucker Act." Id. As a result, the FDIC is not, and cannot be, the defendant on the Holding Company's case in chief.

Nor is the FDIC a defendant to a cross-claim by the Holding Company. No such claim may be asserted here: the Rules of this Court, while allowing for counterclaims and third-party claims by the defendant, make no provision for cross-claims. RCFC 13, 14; compare Fed. R. Civ. Pro. 13(g). Rather than being party-opponents, the FDIC and Holding Company are each coparties. Id.

Because the FDIC is not a defendant, and thus is not a party-opponent, the Holding Company cannot introduce evidence "against" it under 801(d)(2). "The Rule expressly concerns the declarant's relationship with the party-opponent, which in this case is the United States, not a particular agency." Globe Savings Bank, 61 Fed. Cl. at 97. Consequently, the deposition testimony above is not admissible under Rule 801(d) of the Federal Rules of Evidence. Banks v. United States, 78 Fed. Cl. at 617 (certain exhibits constituted admissions because "plaintiffs offered those documents against its party-opponent, defendant"; other evidence, although made by an authorized person, did not qualify as an admission "because it is not offered by a party-opponent."); see also C. Wright et al, 30B Fed. Prac. & Proc. Evid. (Interim ed.) § 7015 ("Relevant admissions of a party . . . are admissible when offered by an opponent").

RCFC 32(a)(2) is also inapplicable. That Rule provides that

> [t]he deposition of . . . anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under RCFC 30(b)(6) . . . to testify on behalf of a public or private corporation, . . . or governmental agency which is a party may be used by the adverse party for any purpose.

Because the FDIC and Holding Company are coparties, rather than party opponents, they are not "adverse parties." The Rule permits " 'a party to introduce the deposition of an *adversary* as part of his substantive proof.' " Weaver-Bailey Contractors, Inc. v. United States, 19 Ct. Cl. 474, 483 (1990), quoting Coughlin v. Capitol Cement Co., 571 F.2d 290, 308 (5th Cir. 1978)(citations omitted in original)(emphasis added). It does not permit a party to introduce the deposition of a coparty as to matters outside the party's substantive case. Therefore, the deposition testimony specified above is not admissible under this provision.[3]

Similarly, RCFC 32(a)(3)(E) does not authorize the admission of the designated deposition testimony. Subsection (3)(E) is subject to the general provisions of Section 32(a), which provides for the use of depositions only "*against* any party"(emphasis added.) Given that the FDIC and the Holding Company, as coparties, are neither "party opponents" nor "adverse parties," it follows that the Holding Company cannot use deposition testimony "against" the FDIC. Therefore, the deposition testimony specified above is not admissible under this provision.[4]

## II. When Permitted, Substantive Review of FDIC Policies and Regulations Is Limited to the Administrative Record

### A. Substantive Review of the FDIC's Actions Is Impermissible Here

The Holding Company asserts that this Court has previously held that it can review the receivership deficit "to determine whether and to what extent the deficit constitutes a valid offset

[3] The Holding Company has also failed to demonstrate that any of the witnesses listed above "had decision-making authority within the pertinent governmental agency at a key time and kept a responsible position within the agency or at a successor of sister agency at the time of the deposition." Globe Savings Bank, 60 Fed. Cl. at 98. The Holding Company has failed to show "what the employee actually did rather than what title or position she held." Id. (internal citations and quotation marks omitted). In particular, the Holding Company has failed to show that any "employee's authority included exercising his or her personal discretion in making decisions without obtaining additional authorization from supervisors." Id. (internal citation and quotation marks omitted).

[4] RCFC 32(a)(1), cited but not discussed by the Holding Company (SHP Motion at 13), is subject to the same general provision and is thus likewise inapplicable.

to the damages that the United States owes to AmBase for breaching the contract." SHP Mem. at 83. It seeks to admit the designated deposition testimony in support of that review. However, the Holding Company misreads the Court's prior opinions in several ways.

First, this Court has not held that the Government owes damages to AmBase. To the contrary, the Court has dismissed Shareholder Plaintiffs' takings claims (FAC Count IV). AmBase I, 58 Fed. Cl. at 49-52. It has upheld Carteret's contract claims. Id. It has found that "AmBase was not a party to the supervisory goodwill contracts that were subsequently breached by the Government through the enactment of FIRREA." Id. at 50. And it has stated that

> [t]he government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action.

Id. at 51. Given the Court's subsequent finding that the FDIC is "successor to the rights of Carteret, which include the breach of contract claims that the shareholder Plaintiffs seek to pursue derivatively," AmBase II, 61 Fed. Cl. at 795, it is clear that this Court has held that the damages in this case are owed by the Government to the FDIC, not AmBase.

Second, the receivership deficit does not constitute an "offset" to a damages award in this case. As demonstrated above, that cannot be the case, since "the receivership deficit has *no relevance* to an award of damages." SHP Mem. at 85 (emphasis added). If the non-contingent claims of governmental creditors and expenses are less than the final damages award, that award will be payable to the FDIC in full. If more, no damages will be paid. In no case will the receivership deficit, or any portion of it, function as an "offset" and result in a partial award of damages here.

Most importantly, this Court has not undertaken to conduct a substantive review of the receivership deficit. Ripped out of context, language in the Court's prior opinions can be twisted

to support that meaning. In context, however, it is clear that the Court was proposing to scrutinize carefully any evidence proffered by the Government in support of the proposition that the case had become non-justiciable. Given the statutory prohibitions on judicial review until after claims against the receivership have been resolved and on injunctions against the FDIC as receiver, 12 U.S.C. § 1821(j), the Court cannot have been deciding that it has jurisdiction to conduct a *substantive* review of the FDIC's management of the Carteret receivership. See Caguas Central Federal Savings Bk. v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000)("If the Federal Deposit Insurance Corporation has been derelict in the performance of its duties . . . the proper remedy would have been a suit against the Federal Deposit Insurance Corporation, not one against the United States."); Auction Co. of America v. FDIC, 132 F.3d 746, 753 (D.C. Cir. 1998)(plaintiffs suing the FDIC may bring suit in the Court of Federal Claims only if they have a Tucker Act suit; other cases must be brought in "a court of law or equity under the FDIC sue-and-be-sued clause").

If the Court's earlier decision was as broad as the Shareholder Plaintiffs believe, then that decision must be revisited now that it is clear that a bank holding company does not, without more, have a direct claim for damages in a Winstar-related case. American Capital Corp. v. United States, 472 F.3d 859 (Fed. Cir. 2006). However, the Court granted Shareholder Plaintiffs' motion only "to the extent that it requires the Court to consider the size and value of the FDIC's receivership deficit when calculating damages." AmBase II, 61 Fed. Cl. at 802. As noted above, however, even the Shareholder Plaintiffs now agree that "the receivership deficit has *no relevance* to an award of damages." Supra at 4. It follows that the Court is not required to consider the receivership deficit *at all* in calculating damages. Right now, the receivership deficit is irrelevant to this case. The only issue as to which it may become relevant is justiciability.

If and when the issue of justiciability becomes ripe, and is thus within the jurisdiction of this Court, the Court may need to conduct an *evidentiary* review to evaluate the sufficiency and probative value of evidence submitted by the Government. For example, given the contingent nature of the Carteret receivership's projected federal tax liability, it would be appropriate to disregard any evidence of that liability when evaluating justiciability. See Plaintiff-Intervenor FDIC's Pre-Trial Objections to Witnesses and Exhibits and Pre-Trial Motion in Limine at 10-13 (Dec. 21, 2007).

What will never be appropriate here, however, is substantive review of the receivership deficit. Not only would such review allow the Holding Company to assert an impermissible cross-claim, it is precluded by

- the FDI Act, 12 U.S.C.§§ 1821(d), 1821(j), 1819(a) Fourth (FDIC's "sue and be sued" clause);
- the lack of jurisdiction over non-Tucker Act suits and the unavailability of declaratory or injunctive relief in this action, 28 U.S.C. § 1491(a)(1); compare id. at § 1491(b)(2); see also Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., 447 F.3d 1370, 1374-75 (Fed.Cir.2006)("In the Tucker Act, Congress . . . limited the jurisdiction of the Court of Federal Claims to hear claims 'against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort' ") (internal citation omitted);
- the Holding Company's failure to exhaust its administrative remedies, 12 U.S.C. § 1821(d)(6);

- the lack of jurisdiction here over claims pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-704; Califano v. Saunders, 430 U.S. 99 (1977); Block v. Community Nutrition Institute, 467 U.S. 340, 346 (1984)(APA provides only cause of action, not jurisdiction);
- Congress's grant of original jurisdiction to the federal district courts of all civil actions arising under the laws of the United States; 28 U.S.C. § 1331; and
- the U.S Constitution's prohibition of advisory opinions, U.S. Const. Art. III; National Park Hospitality Association v. Dep't of the Interior, 538 U.S. 803, 810-11 (2003). See also Plaintiff-Intervenor FDIC's Motion to Dismiss Carteret Bancorp's Claim for a Surplus (Dec. 21, 2007).

**B. APA Review is Limited to the Administrative Record**

Even if the Administrative Procedure Act ("APA") authorized substantive review here of the FDIC policies applied in managing the Carteret receivership, the designated deposition testimony of the FDIC employees listed above would not be admissible. Any review of FDIC policies implicated in the FDIC's management of the Carteret receivership must be limited to the administrative records of those policies. "It is black letter law that, except in the rare case, review in federal court [of administrative agency action] must be based on the record before the agency and, hence, a reviewing court may not go outside the administrative record. Review will then be made on that record." C. Wright et al., 33 Fed. Prac. & Proc. Admin § 8306 at 73 (2006). "Generally, a party will not be permitted to expand the record if the administrative record is adequate. Id. at 76. Additions may be allowed only if there is a "strong showing of bad faith or improper behavior," or "when the record is so bare" that effective judicial review is not possible. Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998).

"[G]overnment officials are presumed to act in good faith and with regularity." Paralyzed Veterans of American v. Sec. Veterans Affairs, 345 F.3d 1334, 1349 (Fed. Cir. 2003), citing Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002)(en banc). The Holding Company has not overcome that presumption. It has made no showing—indeed, no allegation—of either "bad faith or improper behavior."

Such a showing cannot be made. The FDIC not only acted "in good faith and with regularity," it had (and has) no motive to do otherwise. The Holding Company's claims that the post-insolvency interest rate applied by the FDIC "overcompensates the FDIC" (SHP Mem. at 23) mischaracterizes the system established by Congress. The ultimate recipient of any post-insolvency interest paid on the outstanding balance of those funds (advanced to pay Carteret's depositors) is not the FDIC but the FSLIC Resolution Fund. It should be obvious that the FDIC, a non-appropriated funds instrumentality, has no incentive to inflate a payment to that fund (or, for that matter, to the IRS). To the contrary: inflation of the claims of federal government creditors would, by increasing the odds of non-justiciability, and thus no damages award, lessen the FDIC's odds of having its administrative expenses reimbursed.

Nor has the Holding Company shown that the "record is so bare" that review is impossible. Therefore, there is no basis for supplementing the administrative record here with witness testimony. As noted in a bid protest case, following APA standards of review pursuant to 28 U.S.C. § 1491(b)(4),

> [t]he Supreme Court had determined . . . how it expects lower courts to conduct APA review of informal agency decisions. . . The 'focal point for judicial review should be the administrative record already in existence,' and this applies even where, as here, the matter being reviewed was not the product of a formal hearing.

Gulf Group Inc. v. United States, 61 Fed. Cl. 338, 350 (2004), citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), quoting Camp v. Pitts, 411 U.S. 138 (1973), and citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).[5]

"It is a basic principle of administrative law that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based.' " Robinette v. Commissioner, 439 F.3d 455, 459 (8th Cir. 2006)(overturning trial court's receipt of new evidence and identifying as "the focal point" for APA review "the administrative record already in existence, not some new record made initially in the reviewing court"), quoting United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963). The deposition testimony designated by the Holding Company, as described above, would therefore not be admissible in this proceeding even if it complied with the applicable evidentiary and procedural rules, and even if there were jurisdiction here to review the FDIC's management of the Carteret receivership.

**CONCLUSION**

For the foregoing reasons, the FDIC respectfully requests that the Court deny the Shareholder Plaintiffs' motion for leave to file excerpts of the deposition testimony of the witnesses listed above for use as substantive evidence in the upcoming trial in this case.

Respectfully submitted,

Federal Deposit Insurance Corporation
Legal Division

s/ *Andrew C. Gilbert*
Andrew C. Gilbert

[5] In fact, even "discovery is normally not allowed in APA-style review" into the mental thought processes of the decisionmakers." Gulf Group, 61 Fed. Cl. at 347.

*Counsel of Record*
*for Plaintiff-Intervenor*
550 Seventeenth Street, NW, MB-3060
Washington, DC 20429
(202) 898-3871

Of Counsel:

John V. Thomas
*Deputy General Counsel*
D. Ashley Doherty
*Counsel*

January 7, 2007

**CERTIFICATE OF FILING**

I hereby certify this 7th day of January, 2007, that I caused a copy of the foregoing to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that parties may access this filing through the Court's electronic filing system.

s/ *Andrew C. Gilbert*




**Note:** Estimated Tax Liability is projected using an annual average increase of 8%, while the Admin Liab, Subrog Clms and PII component is projected to increase 6.6% each year. Reported amounts are gleaned from the Goodwill Reporting Packages for years ended 2002 - 2006.