IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBASE CORPORATION AND CARTERET BANCORP, INC., Plaintiffs, | |
| and | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Intervenor, | No. 93-531C<br>Senior Judge Loren Smith |
| v. | |
| THE UNITED STATES Defendant. | |

**DEFENDANT'S WITNESS LIST**

Pursuant to paragraph 13(b) of Appendix A of the Rules of the United States Court of Federal Claims, and the Court's Order dated April 13, 2007, defendant, the United States, hereby provides the following list of witnesses we expect to present at trial as part of our case-in-chief, with the exception of those witnesses that may be called for impeachment purposes. We reserve the right to revise or supplement this list as permitted by the Rules and any subsequent orders issued by the Court.

Defendant expressly reserves the right to revise or supplement this list, to omit witnesses at trial should their testimony become unnecessary, to call additional impeachment or rebuttal witnesses, and to call any witness necessary to lay the foundation for the admissibility of trial exhibits. A witness's testimony may encompass any and all aspects or sub-topics of a general subject listed for that witness, even if not all such sub-topics are listed. In addition to the topics

listed below, each witness may additionally testify upon any topics that were the subjects of their prior testimony, including affidavits and depositions, regarding any exhibit presented at trial by the parties, and in rebuttal of the testimony offered by plaintiff at trial. Defendant reserves the right to call in its case-in-chief any witness listed on plaintiffs' witness list. We also reserve the right to call any witness identified by the plaintiffs in their witness lists that may later be withdrawn before trial.

Should any witness become unable to testify in person due to some infirmity or otherwise, we reserve the right to seek the Court's permission for leave to present that individual's testimony at trial, where appropriate, by video-teleconferencing, or, alternatively, where warranted, by the introduction of deposition testimony in accordance with the Court's rules and procedural orders.

## I. WITNESSES THE GOVERNMENT EXPECTS TO PRESENT AT TRIAL

1. **Robert C. Albanese**
President and Chief Executive Officer
Pentegra Retirement Services
108 Corporate Park Drive
White Plains, NY 10604

Mr. Albanese was the Regional Director of the Office of Thrift Supervision ("OTS") for the Northeast Region from 1996 until he retired in the summer of 2007. From the mid-1970s until the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), he rose through the ranks of the Federal Home Loan Bank ("FHLB") of New York, and eventually became Senior Vice President and Director of Examinations.

The topics about which Mr. Albanese may testify include: Federal thrift regulation generally; Federal regulation of Carteret; Carteret's operations and performance; the acquisition

of Carteret by Ambase; the impact of FIRREA upon Carteret; Carteret's response to FIRREA including its capital plans; the impact of the District Court injunction upon Carteret; Carteret's efforts to raise capital; the relationship between OTS and the Federal Deposit Insurance Corporation ("FDIC") with respect to Carteret; the impact of Federal Deposit Insurance Corporation Improvement Act ("FDICIA") upon Carteret; the decision to place Carteret into receivership; and in response to testimony by plaintiffs' witnesses.

Estimated time for direct examination: 1 hour.

**2. William J. Day, Jr.**
349 Route 94
Newton, New Jersey 07860

Mr. Day has been employed as an examiner by the FDIC since 1970. From 1988 to 1992, he worked in the FDIC's New York Region which included New York, New Jersey, Pennsylvania, Delaware, Puerto Rico, and Maryland. Two thirds of Mr. Day's time, prior to the enactment of FIRREA, was spent examining state-chartered savings banks, which are state-chartered thrift associations. With the enactment of FIRREA, Mr. Day's responsibilities expanded to include Federally-chartered savings and loan associations and holding companies, including Carteret and Carteret Bancorp ("Bancorp"). Mr. Day was responsible for examining the financial condition of the institution to determine whether it operated in accordance with relevant statutes and regulations.

The topics about which Mr. Day may testify include: FDIC examinations of Carteret and Bancorp from 1989 until 1992; FDIC's regulatory policies and procedures; Carteret's compliance, or lack thereof, with regulatory capital requirements; procedures for conducting FDIC examinations; interaction between the FDIC and the OTS in the examinations of Carteret;

Carteret's regulatory capital position; the condition of Carteret's commercial real estate and commercial loan portfolios; Carteret's overall financial viability; Carteret's ability and efforts to raise capital from outside investors; the FDIC's view of whether Carteret was being operated in a safe and sound manner and the decision to transfer the institution to the Resolution Trust Corporation ("RTC") in 1992; and any matters raised in his deposition or by other witnesses in the course of the trial.

Estimated time for direct examination: 2.5 hours.

**3. David A. Kennedy**
IPAC Atlantic Center Plaza, Ste. 2400
1180 W. Peachtree Street, N.E.
Atlanta, GA 30309

Mr. Kennedy is a CPA with extensive experience and expertise in RAP and GAAP accounting. He also has extensive experience with, and expertise in, the auditing of financial institutions, the workings of the RTC, valuations of assets held by financial institutions, and the formulation of proper reserves for those assets. He is expected to testify regarding all the issues discussed in his expert report and depositions including, *without limitation* the following four topics:

A. Carteret's reserves were not over stated and were based upon a reasonable and correct valuation of the assets and extensive documentation;

B. Dr. Calomiris's opinion that the breach caused Carteret to seek to raise capital, which, in turn, caused Carteret to increase its reserves, is conceptually flawed and based upon counterfactual assumptions;

C. Dr. Calomiris's opinion that the breach caused Carteret to dispose of commercial assets prematurely is flawed and Dr. Calomiris's assumption that retention of those assets would have benefitted Carteret is erroneous. Had Carteret held on to these assets, its asset quality and regulatory deficits would have been worse, and it would have incurred additional holding costs and less income;

D. Dr. Calomiris's opinion that the RTC sold Carteret's assets at prices that were below their appraised value is erroneous. When Dr. Calomiris's own analysis is corrected for simple errors, the analysis demonstrates that the RTC sold the assets at prices that exceeded the appraised value on a weighted average basis.

Mr. Kennedy may testify with respect to any matters raised in his expert report, in his deposition, or by other witnesses in the course of the trial.

Estimated time for direct examination: 4.5 hours.

**4. Thomas J. O'Rourke**
Examiner in Charge
OTS Complex & International Organizations
American International Group, Inc. ("AIG")
Consolidated Supervision
70 Pine St., 48th Floor
New York, NY 10270

Mr. O'Rourke first served as an examiner in 1985 for the FHLB of Topeka, before transferring to the OTS's Northeast Region in 1990. Before leaving the FHLB, he served as Examiner-In-Charge and Lead Supervisory Analyst of two high profile regulatory receivership cases. He took part in the 1990 examination of Carteret, and served as Examiner-In-Charge during the OTS's examinations of Carteret in 1991 and 1992. Mr. O'Rourke was on-site at Carteret from approximately May 1991 through 1992. Additionally, he made at least one official examination visit to Carteret from December 13, 1993, through January 14, 1994, to observe RTC operations. Subsequent to his involvement with Carteret, Mr. O'Rourke served at the OTS as a Senior Examiner and is presently assigned to the Complex and International Organizations unit. In numerous assignments as an Examiner-In-Charge, Mr. O'Rourke has supervised up to 35 assisting examiners.

The topics about which Mr. O'Rourke may testify include: Federal thrift regulation generally, including his previous experiences as a regulator; Federal regulation of Carteret, including the examinations of Carteret in which he participated; Carteret's operations and performance; the impact of FIRREA upon Carteret; Carteret's response to FIRREA including Carteret's capital plans; the impact of the injunction upon Carteret and its regulation; Carteret's efforts to raise capital; Carteret's need for capital; the relationship between OTS and the FDIC with respect to Carteret; FDICIA's impact upon Carteret; the decision to place Carteret into receivership; in response to any testimony expressed by plaintiff's witnesses; and any other issues raised during his deposition.

Estimated time for direct examination: 3 hours.

**5. Professor Anthony Saunders**
Department of Finance
Kaufman Management Center
Stern School of Business, New York University
44 West 4th St., Rm. 9-91
New York, N.Y. 10012

Professor Saunders is the John M. Schiff Professor of Finance and former Chairman of the Department of Finance at the Stern School of Business at New York University. He holds a B.Sc. in Monetary Economics, a M.Sc. in Money and Finance, and a Ph.D. in Economics, all from the London School of Economics.

Throughout his academic career, Professor Saunders' teaching and research have focused on financial institutions in general and banking in particular. He has taught undergraduate and graduate courses in banking at New York University since 1978, and has served as a visiting professor at universities throughout the world. Professor Saunders' research has been published

in leading finance, money, and banking journals. Indeed, a recent article in the Journal of Financial Literature named him the most prolific author in 16 core finance journals (P.L. Cooley and J.L. Heck, "Prolific Authors in the Finance Literature: A Half Century of Contributions," Vol. 1, Winter 2005, pp. 46-69). Professor Saunders is the author or co-author of a number of books on various aspects of banking, including two widely used textbooks, Financial Markets and Institutions, now in its third edition, and Financial Institutions Management: A Risk Approach, now in its sixth edition. He is also the co-editor of the Journal of Banking and Finance, the editor of Financial Markets, Instruments, and Institutions, and serves as an associate editor of eight other journals.

Professor Saunders has served on the Board of Academic Consultants of the Federal Reserve Board of Governors. He has also served as a research consultant, advisor, or scholar to the Office of the Comptroller of the Currency, the Research Department of the Federal Reserve Bank of Philadelphia, the Research Department of the Federal Reserve Bank of New York, the World Bank, and the International Monetary Fund.

Professor Saunders is an expert in finance, banking, and economics. He is expected to testify with respect to the matters set forth in his Declarations of August 7, 2006, and September 21, 2007. The subject matters about which he may testify, as set forth in his Declarations, include whether Professor Calomiris's estimates of damages allegedly caused by the breach are accurate; whether Carteret would have failed in the absence of the breach; whether Carteret was healthier than other failed thrifts at the time of failure; whether the RTC received fair market value for Carteret's assets and liabilities in the course of resolving Carteret; whether goodwill could have been transferred by the receiver in resolving Carteret; the market value of goodwill, if

any; the market value of Carteret at the time of the breach; the value of Carteret Mortgage Company, if any, at the time of the failure; whether the accrual of post-receivership interest by the receiver was consistent with principles of financial economics; and any other issues addressed in the Declarations served in this case. Professor Saunders may also testify with respect to any matter that was covered in his depositions and with respect to any new facts or damage claims to which plaintiffs' witnesses may testify at trial or in rebuttal.

Estimated time for direct examination: 7 hours.

6. **Professor Roy C. Smith**
New York University
Stern School of Business
New York, NY 10012

Professor Smith is the Kenneth Langone Professor of Entrepreneurship and Finance and a Clinical Professor of Finance and International Business at the New York University Stern School of Business. Prior to his appointment at New York University, he was a General Partner at Goldman, Sachs & Company.

Professor Smith will testify as to the matters set forth in the report he prepared in this case. The topics about which Professor Smith may testify include: the history of the savings and loan industry; Carteret's operations and performance from 1981 to 1992, including its strategic and management decisions, from the perspective of an investment banker; Ambase's operations and performance from 1985 to 1992; Ambase's acquisition of Carteret ; how FIRREA affected Carteret; Carteret's efforts to raise capital; the availability of capital to thrifts post-FIRREA; the

ability of Carteret to raise capital in the absence of the breach; and in response to opinions expressed by plaintiff's experts.

Estimated time for direct examination: 3 hours.

**7. Scott B. Smith**
737 Strafford Ridge Drive
Ballwin, MO 63021

Mr. Smith worked at the FHLB of New York and later the OTS's New York office from October 1986 until May 1993. Mr. Smith was the OTS field manager responsible for Carteret's examinations from 1989 through 1992, and was involved in the drafting of the S-memorandum recommending receivership. The topics about which Mr. Smith may testify include: Federal thrift regulation generally; Federal regulation of Carteret, including the examinations of Carteret in which he participated; Carteret's operations and performance; the effect of FIRREA upon Carteret; Carteret's response to FIRREA; the effect of the injunction upon Carteret and its regulation; Carteret's efforts to raise capital; Carteret's need for capital; the relationship between OTS and the FDIC with respect to Carteret; FDICIA's impact upon Carteret; Carteret's financial condition; and the decision to place Carteret into receivership.

Estimated time for direct examination: 1 hours.

**8. Angelo Vigna**
Sandler, O'Neill & Partners
919 3rd Avenue
6th Floor
New York, NY 10022

Mr. Vigna was the Senior Executive Vice President and Director of Agency Functions at the FHLB of New York and, after FIRREA, became the Northeast Regional Director of the OTS until he retired in 1996. He was involved with the regulation of New Jersey thrifts, including

Carteret. He was also involved in Carteret's acquisitions of Barton and Del Ray, as well as Ambase's acquisition of Carteret.

The topics about which Mr. Vigna may testify include: Federal thrift regulation generally; Federal regulation of Carteret; Carteret's operations and performance, including its expansion into commercial real estate and corporate lending; Ambase's acquisition of Carteret; how FIRREA affected Carteret; Carteret's response to FIRREA including its capital plans; how the injunction affected Carteret; Carteret's efforts to raise capital; the relationship between OTS and the FDIC with respect to Carteret; how FDICIA affected Carteret; the decision to place Carteret into receivership; and in response to opinions expressed by plaintiff's witnesses.

Estimated time for direct examination: 1 hour.

**9. Michael Zamorski**
P.O. Box 75850
Dubai, U.A.E.

Mr. Zamorski is a former Regional Director of the FDIC and had a primary role in FDIC's oversight of thrift institutions in the New York region between 1989 and 1995. The topics about which Mr. Zamorski may testify include: the FDIC's role in overseeing thrifts, including Carteret; the findings set forth in the FDIC's reports of examination of Carteret; Carteret's financial condition prior to its closure; and FDIC's consideration of potential action under Section 8(a) of the Federal Deposit Insurance Act.

Estimated time for direct examination: 2 hours.

## II. WITNESSES THE GOVERNMENT MAY PRESENT AT TRIAL IF THE NEED ARISES

**1. Daniel Dionne**
New York, NY

Mr. Dionne is a former FDIC Assistant Regional Director. Mr. Dionne had a primary role in FDIC's oversight of thrift institutions in the New York region between 1989 and the end of 1991. If called to testify, some of the topics about which Mr. Dionne may testify include: the FDIC's role in overseeing thrifts, including Carteret; FDIC reports of examinations; Carteret's financial condition prior to its closure; and the interactions between OTS and the FDIC relating to the examination and supervision of thrifts.

Estimated time for direct examination: 2 hours.

**2. John F. Downey**
Vienna, VA

From 1967 through 1986, Mr. Downey held various positions with the Comptroller of the Currency, including Deputy Comptroller of the Currency and Chief National Bank Examiner of the United States. In 1986, Mr. Downey joined the FHLB of Indianapolis as Executive Vice President and head of regulatory functions. Upon the passage of FIRREA and the creation of OTS, Mr. Downey became a district director for the OTS. In April of 1990, Mr. Downey became OTS's Senior Deputy Director for Supervision and subsequently became the Director of Regional Operations for the agency. In 1995, Mr. Downey became the OTS's Executive Director. Mr. Downey retired from the OTS in January of 1998. If called to testify, some of the topics about which Mr. Downey may testify include: Federal thrift regulation generally; Federal regulation of

Carteret; Carteret's operations and performance; how FIRREA affected Carteret; and Carteret's response to FIRREA.

Estimated time for direct examination: 2 hours.

3. **Jonathan Fiechter**
7805 Shreve Road
Falls Church, Virginia 22043

Mr. Fiechter served as the Acting Director of the OTS from December 1992 to October 1996, at which time he joined the World Bank where he is currently the Director of Special Financial Operations. Prior to serving as the Acting Director of OTS, Mr. Fiechter served as the Senior Deputy Director for Operations of OTS with the responsibility to manage the Washington operations of OTS, including policy, research and administration. Earlier in his career, Mr. Fiechter was an employee of the Comptroller of the Currency from 1978 until 1987, where he became Deputy Comptroller in charge of strategic planning and economic analysis. Thereafter he was employed by the Federal Home Loan Bank Board ("FHLBB"), where he was the Deputy Director in charge of supervisory policy for the Office of Regulatory Policy ("ORPOS").

If called to testify, some of the topics about which Mr. Feichter may testify include: the operations and regulatory policies of OTS, particularly with respect to the decision-making process related to transferring insolvent or troubled thrifts to the RTC; capital markets and economic conditions in OTS's Northeast Region from 1990 until 1992; the interactions between OTS and the FDIC relating to the examination and supervision of thrifts; the relationship between OTS regional management and the Washington operation, with particular emphasis on the

decision-making process for transferring thrifts to the RTC; and any matters raised at his deposition or in the trial testimony of other witnesses.

Estimated time for direct examination: 1 hour.

**4. Michael E. Finn**
Daley City, CA

Throughout his career, Mr. Finn has held various positions at the FHLBB and OTS. If called to testify, some of the topics about which Mr. Finn may testify include: Federal thrift regulation generally; FHLB and OTS practices and procedures; Federal regulation of Carteret; Carteret's financial condition; Carteret's operations and performance; the effect of the passage of FIRREA upon Carteret; Carteret's compliance with applicable regulatory capital requirements; Carteret's response to FIRREA; and any matters raised in his deposition or by other witnesses in the course of the trial.

Estimated time for direct examination: 1.5 hours.

**5. Wayne S. Green**
350 N. St. Paul
ODC-23079
Dallas, Texas 75201

Mr. Green received a B.Sc. degree in accounting from the University of New Orleans in 1974. He has a CPA license from the state of Georgia. From 1975 to 1985, Mr. Green worked as a bookkeeper and accountant at New Orleans Federal Savings and Loan, following which he became Vice-President and Comptroller at Crescent Federal Savings Bank. In March 1987, Mr. Green joined the Federal Savings and Loan Insurance Corporation ("FSLIC") as an accountant and became a specialist in receivership accounting. Following the merger of FSLIC and the FDIC, Mr. Green became a senior accountant at the FDIC. His principal responsibility has been

the management of the general ledger for institutions in receivership. Currently, Mr. Green is Senior Liability Accountant with oversight responsibility for the general ledger, and the forensic and litigation support units.

If called to testify, some of the topics about which Mr. Green may testify include: receivership accounting and tax policies of the FDIC; policies related to receivership financial reporting, including, but not limited to, the reporting of post insolvency interest, the calculation of post insolvency interest, the relation between the depositor preference statute and policies relating to post-insolvency interest, interactions between the FDIC and IRS related to receivership tax reporting, the preparation and filing of receivership tax returns, the preparation and content of financial and other reports prepared for receiverships in goodwill litigation with the United States; and any matters raised at his deposition or in the trial testimony of other witnesses.

Estimated time for direct examination: 1 hour.

6. **John C. Griffin**
Shrewsberry, NJ

Mr. Griffin joined the FHLB of New York in 1988 and, upon the enactment of FIRREA and creation of OTS, he joined OTS and worked there until 1993. Throughout his tenure at the FHLB-NY and OTS, Mr. Griffin held various supervisory and regulatory positions. If called to testify, some of the topics about which Mr. Griffin may testify include: Federal thrift regulation generally; Federal regulation of Carteret; Carteret's operations and performance; how FIRREA affected Carteret; and Carteret's response to FIRREA; and any matters raised at his deposition or in the trial testimony of other witnesses.

Estimated time for direct examination: 1 hour.

**7. Karen J. Hughes**
Federal Deposit Insurance Corporation
Division of Finance
Room D-5118
Virginia Square, L. William Seidman Center
3501 Fairfax Drive
Arlington, Virginia 22226

Karen J. Hughes is currently the Deputy Director and Comptroller of the Division of Finance of the FDIC. She has held this position since 1997. Her primary responsibilities as Deputy Director and Comptroller involve accounting functions as well as corporate and regulatory reporting. In addition, Ms. Hughes has responsibilities over receivables and disbursement processing. Two years ago, as a result of a division-wide reorganization, the Deputy Director and Comptrollers' responsibilities over accounting and tax policy were transferred to an operations unit within the division.

Ms. Hughes received a B.Sc. in Accounting from Virginia Tech University in 1988 and passed the CPA exam. After serving as an auditor for the General Accounting Office between 1987 and 1988, Ms. Hughes became an accountant and analyst in the FDIC's Division of Finance ("DOF") with responsibilities for operations, accounting policy and fiscal control. She served in this capacity from 1987 until 1993, at which time she became a policy analyst in the Division of Liquidation, after which she returned to the Division of Finance as a Special Assistant to the Director and Assistant Director responsible for planning, staffing and reporting. In 1997 she became Deputy Director and Comptroller of the DOF. She reports directly to the Director of DOF.

If called to testify, some of the topics about which Ms. Hughes may testify include: receivership tax and accounting policies as practiced by the FDIC; accounting policies relating to

the reporting of post insolvency interest on receivership financial statements, as well as policies relating to the recognition of interest deductions on receivership tax returns; the interactions between the receivership accounting and tax personnel and other DOF personnel concerning the creation and implementation of accounting and tax policy related to receiverships; the 95 percent rule relating to the reporting of post insolvency interest on receivership financial statements; the financial and accounting reports prepared for the receiverships pursuing goodwill contract claims against the United States; the promulgation in 2002 of a rule relating to the payment of post insolvency interest by FDIC-administered receiverships; and any matters raised at her deposition or in the trial testimony of other witnesses.

Estimated time for direct examination: 1 hour.

**8. Nicholas J. Ketcha**
Princeton Junction, NJ

Mr. Ketcha held various positions in the FDIC, including Regional Director for the New York Region, which included the Middle Atlantic states, Puerto Rico, and the Virgin Islands. He was later promoted to the position of Director of the Division of Supervision. If called to testify, some of the topics about which Mr. Ketcha may testify include: the FDIC's policies and procedures with respect to regulation of financial institutions and determining which institutions should be closed for safety and soundness reasons or other regulatory considerations; the risks and costs of permitting non-viable institutions to continue to operate; Carteret's financial condition and operations and the risks it posed to the insurance fund; the FDIC's regulatory decisions with

respect to Carteret and the reason for those decisions; Cateret's capital compliance; and any matters raised in his deposition or by other witnesses in the course of the trial.

Estimated time for direct examination: 1 hour.

**9. Donald Kramer**
1 Beekman Place
New York, New York

Mr. Kramer served on the Board of Directors of Ambase Corporation and was President and Chief Financial Officer of Carteret Savings Bank from 1991 to 1993 and owned approximately 290,000 shares of common stock of Ambase Corporation. Since 1996, he has served as the Vice-Chairman of the Ace Limited Company, a large insurance company in Bermuda. He also served as the chief executive of Tempest Reinsurance Company, a large catastrophe reinsurance company and a subsidiary of Ace Limited. Mr. Kramer has also served as an investment advisor and workout specialist in the insurance industry, and founded the management consulting firm, Kramer Capital.

If called to testify at the trial, Mr. Kramer will testify concerning Carteret's financial condition in the late 1980s and early 1990s; Carteret's management in the late 1980s and early 1990s; the value, if any, of Carteret's supervisory goodwill; Carteret's relationships with the FDIC and OTS following the enactment of FIRREA; Carteret's financial prospects following the change in management in May 1991; Carteret's efforts to recapitalize from May 1991 until December 1992; and in response to testimony by plaintiffs' witnesses.

Estimated time for direct examination: 2 hours.

**10. Marshall Manley**
Address Unknown

Mr. Manley is an attorney who, in 1978, became the California managing partner of Finley, Kumble, Heine, Underberg, Manley & Casey ("Finley, Kumble"). On March 8, 1985, Mr. Manley became president and a director of The Home Group and chairman of Home Insurance Company, a subsidiary of The Home Group. He continued in an "of counsel" capacity with Finley, Kumble at the time he served as president of The Home Group and chairman of Home Insurance Company. In 1986, Mr. Manley became the Chief Executive Officer of The Home Group and Home Insurance Company. In 1988, The Home Group changed its name to Ambase Corporation and Mr. Manley served as the CEO of Ambase from 1988 until January 1991 when he was asked to resign as the CEO of Ambase.

If called to testify, Mr. Manley may testify concerning Ambase's acquisition of Carteret and Carteret's financial condition from 1987 to 1991. Mr. Manley may also testify concerning the management of Carteret. Finally, Mr. Manley may testify concerning the franchise value, if any, of Carteret.

Estimated time of direct testimony: 1 hour

**11. Russell J. Meyer**
35 7th Street
Belford, NJ

Mr. Meyer was a field examiner with the OTS for the Northeast Region. In 1989 and 1990, he was the examiner-in-charge on the examinations of Carteret, and he worked on the asset review in Carteret's 1992 examination. Mr. Meyer was also the examiner-in-charge for the 1990 examination of Ambase. If called to testify, some of the topics about which Mr. Meyer may

testify include: OTS examinations of Carteret; Carteret's financial condition; Federal thrift regulation generally; OTS practices and procedures; Federal regulation of Carteret; Carteret's financial condition; Carteret's operations and performance; the effect of the passage of FIRREA upon Carteret; Carteret's compliance with applicable regulatory capital requirements; Carteret's response to FIRREA; and any matters raised in his deposition or by other witnesses in the course of the trial.

Estimated time for direct examination: 2 hours.

**12. J. Paul Ramey, Jr.**
Address Unknown

In 1967, Mr. Ramey joined the Federal Deposit Insurance Corporation as an examiner. He served as an examiner for approximately five years, after which he served as a review examiner in Atlanta, Georgia for approximately four years. In 1976, Mr. Ramey became a regional director of the FDIC in Omaha, Nebraska. Thereafter, Mr. Ramey moved to Washington, D.C., where he became an assistant director in the FDIC's Failing Banks and Assistance Transactions Section. He served in this position until 1989 when he joined the RTC where he became the Director of Field Operations. He served in various capacities at the RTC until 1995 when he retired from Government service.

If called to testify at trial, Mr. Ramey may testify concerning the RTC's resolution operations and policies. He may testify concerning the minority bidding procedures and the policy of least cost resolutions that governed those procedures. He may testify concerning the

resolution experience of Carteret, including the sale of Carteret's assets and liabilities. Finally, Mr. Ramey may testify concerning the RTC's internal controls and policies.

Estimated time of direct examination: 1 hour

**13. Michael Saran**
Attorney
New York Regional Office
Federal Deposit Insurance Corporation
20 Exchange Place, 4th Floor
New York, New York 10005

Mr. Saran currently serves as an attorney in the New York Regional Office of the FDIC. He received his B.A. from Tulane University in 1974 and a business degree from Rutgers Graduate School of Business in 1975. He received a law degree from Seton Hall Law School in 1980. Following law school, Mr. Saran worked at Price, Waterhouse and then became a senior tax advisor at Coopers & Lybrand. In or about 1985, Mr. Saran became an associate at Starr, Weinberg & Frankin in Roseland, New Jersey, where his work focused on real estate, tax planning, and estate planning. Mr. Saran joined the RTC in April 1991 and he worked out of the Somerset, New Jersey Field Office. In or about 1993, Mr. Saran transferred to the RTC's regional office in Valley Forge, Pennsylvania, and, in 1995, to the Hartford, Connecticut, regional office. In June 2001, Mr. Saran was transferred to the New York Regional Office.

Mr. Saran's current and past work involves giving legal advice about receivership and supervisory issues. He does not provide policy guidance and thus played no role in developing policies regarding the administration of receiverships, the marketing or liquidation of receivership assets, the determination of receivership claims, or the reporting of income and expense to tax authorities.

If called to testify, some of the topics about which Mr. Saran may testify include the calculation of post insolvency interest for Carteret and other receiverships with goodwill claims against the United States.

Estimated time for direct examination: 30 minutes.

**14. Wayne J. Moor**
Palm Beach Gardens, FL

Mr. Moor was an executive vice president at Carteret. Carteret hired him in the summer of 1991. His primary responsibility was to understand and address Carteret's commercial real estate portfolio. He has more than twenty five years of experience in commercial real estate. The topics about which Mr. Moor may testify, in accordance with his deposition, include: the extent of the problems in Carteret's commercial real estate portfolio; the appropriateness of the write-downs Carteret recorded; that Carteret's capital position had no bearing on how he valued the portfolio's assets and how he determined the amount of reserves needed; Carteret's management; Carteret's deficient policies that led to the extensive problems in the commercial loan portfolio.

Estimated time for direct examination: 2 hours.

**15. Robert B. O'Brien**
Address Unknown

Mr. O'Brien was the Chairman of the Board of Directors and Chief Executive Officer of Carteret Savings Bank from September 1981 until April 1990. In April 1990, he was replaced as CEO by Robert Walsh, and retained his position as Chairman. Following his retirement in 1991, Mr. O'Brien became a consultant to the savings and loan industry and President of Governors Bank Corporation of West Palm Beach, Florida. Currently Mr. O'Brien is retired.

If called to testify at trial, Mr. O'Brien may testify concerning the growth of Carteret's assets and liabilities between 1981 and 1991, including it's entry into the mortgage banking, consumer loan, and commercial real estate loan lines of business. Mr. O'Brien may testify concerning Carteret's ambition to develop a national brand and the acquisition of branches in Florida and the mid-Atlantic areas. Mr. O'Brien may testify concerning the slowdown in the economy following the Tax Reform Act of 1988 and the impact of that statute on Carteret's commercial real estate loan portfolio. Finally, Mr. O'Brien may testify concerning FIRREA's affect, if any, on Carteret's banking operations.

Estimated time for direct examination: 1 hour.

**16. Michael L. Simone**
Regional Deputy Director
Northeast Region
Office of Thrift Supervision
Harborside Financial Center, Plaza Five, Suite 1600
Jersey City, NJ 07311

Mr. Simone has been the Regional Deputy Director of the OTS for the Northeast Region since 1998. After working for the New York State Banking Department as an examiner and performing military service between 1969 and 1976, Mr. Simone moved to the FHLB of New York. From 1976 until FIRREA's enactment, Mr. Simone rose through the ranks of the FHLB of New York, and eventually became Vice President and Director of Supervision. Among other assignments, he served as the supervisory agent for New Jersey. After the enactment of FIRREA, he served as Assistant Director within the OTS before his promotion to Regional Deputy Director.

If called to testify, some of the topics about which Mr. Simone may testify include: Federal thrift regulation generally; Federal regulation of Carteret; Carteret's operations and

performance; Ambase's acquisition of Carteret; how FIRREA affected Carteret; Carteret's response to FIRREA including its capital plans; how the injunction affected Carteret; Carteret's efforts to raise capital; the relationship between OTS and the FDIC with respect to Carteret; how FDICIA affected Carteret; the decision to place Carteret into receivership; in response to opinions expressed by plaintiff's witnesses; and any matters raised during his deposition in this case.

Estimated time for direct examination: 1 hour.

**17**. **James F. Vordtriede**
Dallas Field Office
Federal Deposit Insurance Corporation
1601 Bryan Street
Dallas, Texas 75201

James F. Vordtriede is currently the Senior Technical Tax Analyst in the FDIC's Dallas Field Office. Mr. Vordtriede has a B.Sc. in Business Administration from the University of Missouri, an M.B.A. from Central Missouri State University, a Master of Science in Taxation from Fontbonne University, and a Masters Degree in Financial Economics from the University of London. After receiving his undergraduate degree in 1973, Mr. Vordtriede joined the Internal Revenue Service as a revenue agent. He served in that capacity from 1973 to 1985. Following his work at the IRS, Mr. Vordtriede joined a private accounting firm. In October 1986, Mr. Vordtriede joined the FDIC and, since May 1987, has worked on receivership tax issues for the FDIC. Mr. Vordtriede provides policy and tax advice to FDIC field offices.

If called to testify, some of the topics about which Mr. Vordtriede may testify include: the preparation and filing of Carteret's receivership tax returns; various tax issues relating to the calculation of Federal financial assistance; the deductibility of post-insolvency interest; interactions between the FDIC and the IRS; the FDIC's tax policies. Mr. Vordtriede may also

testify concerning the FDIC's efforts to eliminate the late filing penalty assessment against Carteret and the tax settlement in the Ben Franklin receivership. Finally, Mr. Vordtriede may also testify concerning any matters raised at his deposition or in the trial testimony of other witnesses.

Estimated time for direct examination: 1 hour.

**18. Robert C. Walsh**
4 Campus Drive
Parsippany, New Jersey

Mr. Walsh became Executive Vice-President and President of the Mortgage Banking Division of Carteret Savings Bank in April 1984. In November 1988, Mr. Walsh became Chief Financial officer and, in April 1990, Chief Executive Officer. He remained Chief Executive Officer until May 1991 when he joined Gruntal & Company as chairman of its mortgage-backed securities division. In 1997, he was involved in a leveraged buyout of the mortgage-backed security division of Gruntal. Currently Mr. Walsh operates a private mortgage banking firm called Walsh Securities.

If called to testify at trial, Mr. Walsh may testify concerning Carteret's financial performance between 1984 and 1991. He may testify concerning the impact of the economic slowdown and recession upon Carteret's mortgage banking and commercial loan portfolios. Mr. Walsh may testify about efforts to restructure Carteret's branch system beginning in 1988. Finally, Mr. Walsh may testify concerning the effect, if any, of FIRREA upon Carteret's banking operations.

Estimated time for direct examination: 2 hours.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ David A. Levitt by
/s/ Delisa M. Sanchez
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Tel: (202) 307-0309
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:

TAREK SAWI
Senior Trial Counsel

ARLENE PIANKO GRONER
ELIZABETH M. HOSFORD
F. JEFFERSON HUGHES
DELISA M. SANCHEZ
AMANDA TANTUM

January 22, 2008

CERTIFICATE OF FILING

I hereby certify that on this 22nd day of January 2008, a copy of the foregoing "DEFENDANT'S WITNESS LIST" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Delisa M. Sanchez
Delisa M. Sanchez