IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **AMBASE CORPORATION AND CARTERET BANCORP, INC.**, | ) | |
| **Plaintiffs**, | ) | |
| and | ) | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION**, | ) | No. 93-531C |
| | ) | Senior Judge Loren Smith |
| **Plaintiff-Intervenor**, | ) | |
| v. | ) | |
| **THE UNITED STATES** | ) | |
| **Defendant**. | ) | |

**DEFENDANT'S IN LIMINE MOTION TO EXCLUDE EXPERT TESTIMONY CONCERNING AN EX ANTE DAMAGE CALCULATION AND MOTION FOR LEAVE TO DEPOSE PROFESSOR CALOMIRIS**

Pursuant to Rule 7 and Appendix A, Rules of the Court of Federal Claims ("RCFC"), the defendant, United States, respectfully files this motion in limine to exclude opinions Professor Charles W. Calomiris, plaintiff's economics expert, submitted on January 28, 2008, concerning an alleged ex ante calculation of damages Carteret Savings Bank ("Carteret") suffered as a result of the breach, as well as data contending the breach increased Carteret's cost of deposits.[1] In the alternative, if our motion to exclude is denied, we seek leave to depose Professor Calomiris.

FACTUAL BACKGROUND

On May 19, 2007, the deadline for plaintiff's expert reports, Professor Calomiris provided a report which purported to measure Carteret's damages stemming from the breach by crediting

[1] These new damage calculations are attached as Exhibit 1.

the "but for" thrift (i.e., the thrift Professor Calomiis contends would have survived in the absence of the breach) with the growth in profitability he contends was enjoyed by the thrift industry in general from 1992 until 2008, and data purporting to demonstrate that Carteret's cost of deposits on April 4, 1989, was less than peer institutions and would have remained so in the absence of the breach.

On January 28, 2008, as a purported supplement to his prior analyses, Professor Calomiris provided a chart entitled "2nd Measure of Expectancy Damage Calculation," which purports to respond to our expert, Professor Anthony Saunders's, contention that damages should be measured on an ex ante, rather than ex post, basis. In addition, Professor Calomiris presented deposit cost data purporting to demonstrate that, prior to the breach, Carteret's cost of funds was below peer institutions and, following the breach, exceeded that of peer institutions.

Professor Calomiris argues that the January 28, 2008 chart calculates damages ex ante because it does not rely upon the growth in book values or market capitalizations of peer institutions following the breach. He does not, however, explain the basis upon which he contends the calculations are ex ante. For example, the calculation is purportedly based upon "but for" Carteret's "terminal value" at the time of the breach and "intervening cash flows from the breach through 2008." The term "terminal value," however, is not explained and "intervening cash flows through 2008," by definition, occurred following the breach.

Further, Professor Calomiris's new data allegedly addresses Carteret's increased cost of funds. Professor Calomiris, however, does not explain why comparisons are made between Carteret and alleged peer institutions on particular dates set forth in the analysis. Nor does the data connect the breach with differences between the rates before the breach and after the breach.

Accordingly, we cannot understand the data in the absence of re-deposing Professor Calomiris.

## ARGUMENT

## I. PROFESSOR CALOMIRIS'S NEW THEORIES AND DATA ARE UNTIMELY

The purpose of a motion in limine is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Norman v. United States, 56 Fed. Cl. 255, 267 (2003), aff'd, 429 F.3d 1081 (Fed. Cir. 2005), cert. denied, 126 S.Ct. 2288 (2006). Yet, that is precisely what Professor Calomiris seeks to do with his January 28, 2008 submission. Accordingly, we respectfully request that the new material be excluded or, in the alternative, that we be allowed to re-depose Professor Calomiris

It is undisputed that Professor Calomiris's new ex ante theory and deposit cost data have been presented for the first time approximately two weeks prior to trial. This is in violation of the discovery plan which provides that "if a plaintiff fails to comply with the provisions of [the discovery plan], no opinion testimony will be received from that witness on behalf of that plaintiff." Procedural Order No. 2 ("Discovery Plan") (filed August 7, 1997). Further, RCFC 26 specifies that experts' opinions must be submitted within the time frame established by the court. RCFC26(a)(2)(B). "[T]he goal of this rule is disclosure of . . . all the opinions and analysis to be presented at trial." Alost v. United States, 73 Fed. Cl. 480, 504 (Fed. Cl. 2006). RCFC 37(c)(1) provides that a party who fails to disclose expert opinions in accordance with Rule 26, "is not, unless such failure is harmless, permitted to use [the evidence] at trial . . ."

Ambase has not complied with the Discovery Plan or the rules of this Court because Professor Calomiris's newly disclosed opinions and data were submitted only two weeks prior to trial. In these circumstances, discovery judges in Winstar-related cases have rejected attempts to

expand the scope of expert discovery beyond the discovery deadlines. See, e.g., La Van, et al. v. United States, No. 90-581C (Fed. Cl.) Order of Aug. 16, 2000, Exhibit 2. In La Van, the discovery was excluded because "plaintiffs were seeking to raise new theories in their expert report." Id. Given the prohibitions against offering expert testimony that has not previously been disclosed in an expert report, the introduction of evidence related to these new damage theories and calculations are improper and prejudicial and would disrupt the trial. Plaintiffs have been aware of the lack of disclosure regarding these damage theories and calculations for at least eight months; therefore, there can be no explanation or substantial justification for their failure to disclose this information.

In fact, plaintiffs submitted a supplemental report in July 2007 which presented new analyses of Carteret's alleged damages but have never supplemented Professor Calomiris's report with an ex ante analysis or data relating to alleged differences between Carteret's and peer institutions' costs of funds. Accordingly, this Court should preclude Professor Calomiris from offering testimony or calculations with respect to these new theories at trial. See, e.g., Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 509 (5th Cir. 1999) (upholding trial court's exclusion of expert not identified in accordance with pre-trial order); Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc., 180 F.3d 542, 549n. 1 (3rd Cir. 1999) (finding "no defect" with district court's refusal to allow party to amend an expert report).

## II. THE NEW DATA WILL PREJUDICE THE GOVERNMENT

Under RCFC 37(c)(1), out-of-time expert discovery is not admissible unless it is "harmless" and there is substantial justification for the out-of-time submission. Ambase has proffered no justification for its submittal of Professor Calomiris's new theories and data on the

eve of trial. Further, we are substantially prejudiced by the new theories and data.

**A. <u>OUR PREJUDICE IS MANIFEST</u>**

Aside from being in direct contravention of the Discovery Plan and RCFC 26, Professor Calomiris's attempt to introduce a new damage theory and deposit cost data at this late date is manifestly unfair. First, we have already devoted substantial resources to addressing plaintiffs' <u>ex post</u> damage theories and prior deposit cost data and allowing the new material will require new analyses and calculations. Indeed, although the material Professor Calomiris now seeks to present has been in the record since the beginning of expert discovery, with the exception of the concept of "franchise value," none of the material he now seeks to introduce has been presented before.[2] Professor Calomiris's failure to present the information in a timely fashion prevented us from deposing Professor Calomiris upon the <u>ex ante</u> theories and the deposit cost data. Both of these subjects are extremely complex because they involve extended time frames and detailed financial calculations. We cannot replicate Professor Calomiris's theories and calculations in the absence of a deposition. With the many burdens that arise in the days immediately prior to trial, it is unconscionable that we should be required to undertake this additional burden at plaintiffs' behest.

The Federal Circuit has recognized that a plaintiff who fails to timely disclose relevant data may be prevented from presenting the data at trial. <u>MicroStrategy, Inc. v. Bus. Objects, S.A.</u>, 429 F.3d 1344, 1357 (Fed. Cir. 2005) (applying Fourth Circuit law). In <u>MicroStrategy</u>, the

[2] Professor Calomiris introduced the concept of "franchise value" in his May 19, 2007 report. However, it was in the context of arguing that Carteret would have survived the breach if it had been able to count goodwill as regulatory capital. The new damage methodology uses the concept of "franchise value" in an entirely different context.

district court excluded evidence of the plaintiff's damages theories under FRCP 37(c)(1) because it had failed to identify the damage theories in response to interrogatories. The Federal Circuit affirmed the rejection of the evidence upon the ground that the evidence was in existence prior to the interrogatories and, if the theories were allowed, the defendant would have to be allowed to depose the expert and prepare a defense. As the court of appeals noted, although the plaintiff's position might have been bolstered by the evidence, "[the plaintiff] alone is to blame for creating this situation." See also, Southern States Rack and Fixture, Inc. v. Sherwin Williams Co., 318 F.3d 592 (4th Cir. 2003) (same).

As in MicroStrategy, Professor Calomiris had access to and was aware of the new data and theories from the beginning of expert discovery, yet held back presenting them until two weeks prior to trial. Why he failed to present the theories and data at an earlier time is undisclosed, but it is manifest that the result is to place unilateral undue burdens upon the defendant. Plaintiffs' submissions are an end-run around the discovery procedures with respect to damages mandated by this Court generally and by the Winstar procedural orders. See, e.g., RCFC 26(a)(2)B) and 37(c)(1); Procedural Order No. 2; Discovery Plan dated August 7, 1997, at § V(A). Accordingly, they should be excluded from the trial.

**B. WE ARE ENTITLED TO RE-DEPOSE PROFESSOR CALOMIRIS AND ADDRESS HIS NEW THEORIES**

In the absence of excluding the evidence, we are entitled to re-depose Professor Calomiris and address his new theories at trial.

It is undisputed that Professor Calomiris's new ex ante analysis and cost of deposit evidence was first presented on January 28, 2008, which is long after we deposed Professor Calomiris. Plaintiffs had a duty under Rule 26(e)(1) to supplement their expert reports when they

"learn[ed] that in some material respect the information disclosed [wa]s incomplete or incorrect and [that] the additional or corrective information ha[d] not otherwise been made known to the other parties during the discovery process or in writing." RCFC 26(c)(1). Plaintiffs have been aware that their expert reports do not address these damages theories since May 2007, yet have taken no action to supplement any of their expert reports.

Professor Calomiris has provided no explanation of his new analyses or data. Although he contends he has completed an ex ante analysis, he does not explain how cash flows following the breach could be ex ante, or why Carteret's alleged franchise value at the time of the breach is relevant to the calculation. Further, although he contends the deposit cost data demonstrates the breach caused deposit costs to increase, the data appear to facially demonstrate that Carteret's deposit costs paralleled those of peer institutions both before and after the breach. The new material provides no explanation for the data choices made or the contention that the alleged trends in the data are in any way attributable to the breach. Accordingly, in the absence of the exclusion of the data, we are entitled to re-convene the deposition of Professor Calomiris.

Further, if the Court permits Professor Calomiris to present this new theory at trial, the court should permit the Government's experts to address these new theories as well. Specifically, Government experts should be allowed to address Professor Calomiris's new theory without the expense or inconvenience of supplementing the Government's expert reports. Only by permitting a deposition and open-ended opportunities to adress plaintiffs' new theories can the Government hope to reduce the prejudice that would exist by allowing Professor Calomiris to testify regarding his new theory.

## **CONCLUSION**

For these reasons, this motion should be granted.

Respectfully submitted,
MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

/s/ David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 307-0309

Attorneys for Defendant

OF COUNSEL:
TAREK SAWI
Senior Trial Counsel

ARLENE PIANKO GRONER
ELIZABETH HOSFORD
F. JEFFERSON HUGHES
DELISA SANCHEZ
AMANDA TANTUM

Date: February 4, 2008

CERTIFICATE OF FILING

I hereby certify that on this 4th day of February 2008, a copy of the foregoing "Defendant's In Limine Motion To Exclude Expert Testimony Concerning Ex Ante Damage Calculation And Motion For Leave To Depose Professor Calomiris" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ David A. Levitt
David A. Levitt

# EXHIBIT 1

The slides in "Calomiris 2008 Jan 28.ppt" can be summarized as follows:

1. Professor Saunders has suggested that damages should be measured on an ex ante basis. Drawing upon the calculations in my May 2007 report, I have calculated the cash flows expected by investors in 1989. Those cash flows would include the earnings of Carteret and a terminal value of Carteret. As a conservatism, I have assumed that the terminal value equals the sum of its franchise value and book value and that neither the book value nor the franchise value was expected to grow, but would decline with amortization of goodwill. The earnings were reported in Table 6 of my 2007 report; the franchise value was reported at Table 15; and the information necessary to calculate the book value at the end of 2008 (assuming 100 percent dividend payout, again a conservative assumption) is contained in paragraph 40 and Table A9 (book value of $269.3 million as of 1989 minus goodwill amortization from July 31, 1989 to December 31, 2008 of $182.5 million).

2. Cost of funds: in response to Professor Saunders' suggestion that TFR data is the best source for assessing relative cost of funds, I performed a sensitivity analysis using Professor Saunders' preferred approach. The results were virtually identical to those reported in my May 2007 report.

# 2nd Measure of Expectancy Damage Calculation

| | | ($ Millions) |
|---|---|---|
| Intervening Cash Flows from Breach through 2008 | | $595.6 |
| + | | |
| Terminal Value at End of 2008 | Book Value at Breach | $269.3 |
| | Plus: Franchise Value at Breach | $99.9 |
| | Less: Amortized Goodwill from Breach to 12/31/08 | $182.5 |
| | | $186.6 |
| = | | $782.2 |

Source: Declaration of Charles W. Calomiris of May 17, 2007, at 17, 28, 44-45, 112; PX 4822

# Timing of Rate Changes
# Carteret's Relative Cost of Funds

- Professor Saunders argues that my analysis of Carteret's cost of funds depends on a "single point in time" – the April 3, 1989 CD rate – in establishing Carteret's but-for interest rate spread
- Saunders cites CD rates in Carteret's TFRs to attack my but-for spread
- A proper comparison between 6-12 month CD rates from Carteret TFRs and the Federal Reserve's average secondary market 6-month CD rates produces comparable results to my original rate spread calculation using Carteret's 6-month rates reported in press articles

| | Pre-Breach | Post-Breach | Change |
|---|---|---|---|
| *TFR Method* | 3/31/1989 | 12/31/1990 | |
| TFR | 9.76 | 7.75 | |
| Federal Reserve | 10.47 | 7.43 | |
| Spread | -0.71 | 0.32 | **1.030** |
| *Press article method* | 4/3/1989 | 12/28/1990 | |
| Press articles | 9.285 | 7.68 | |
| Federal Reserve | 10.34 | 7.67 | |
| Spread | -1.06 | 0.01 | **1.065** |

Source: Declaration of Professor Anthony Saunders, Sept. 21, 2007, at 59-60; Declaration of Charles W. Calomiris of May 17, 2007, at 54; PX 1708 – PX 1713; PX 1715; PX 1718; PX 1721; PX 1724; PX 1727; PX 1730; PX 1732; PX 1734 – PX1737; PX 6037; PX 6100 – PX 6165

# Timing of Rate Changes
# Carteret's Relative Cost of Funds




Source: PX 1708 – PX 1713; PX 1715; PX 1718; PX 1721; PX 1724; PX 1727; PX 1730; PX 1732; PX 1734 – PX1737; PX 6037

# Timing of Rate Changes
# Carteret's Relative Cost of Funds

| Date | Carteret's Rate of New 6-12 Month CD Deposits (from TFRs) | Federal Reserve Avg. 6-Month CD Rate (Secondary Market) | Spread |
|---|---|---|---|
| 9/30/1988 | 7.85 | 8.54 | -0.69 |
| 12/31/1988 | 8.57 | 9.25 | -0.68 |
| 3/31/1989 | 9.76 | 10.47 | -0.71 |
| 6/30/1989 | 8.95 | 8.89 | 0.06 |
| 9/30/1989 | 8.33 | 8.89 | -0.56 |
| 12/31/1989 | 8.00 | 8.13 | -0.13 |
| 3/31/1990 | 8.20 | 8.52 | -0.32 |
| 6/30/1990 | 8.35 | 8.28 | 0.07 |
| 9/30/1990 | 8.20 | 8.18 | 0.02 |
| 12/31/1990 | 7.75 | 7.43 | 0.32 |
| 3/31/1991 | 6.75 | 6.33 | 0.42 |
| 6/30/1991 | 6.20 | 6.36 | -0.16 |
| 9/30/1991 | 6.00 | 5.49 | 0.51 |
| 12/31/1991 | 4.85 | 4.14 | 0.71 |
| 3/31/1992 | 4.50 | 4.39 | 0.11 |
| 6/30/1992 | 4.10 | 3.97 | 0.13 |
| 9/30/1992 | 4.00 | 3.13 | 0.87 |

Carteret's CD rate was consistently lower than the market rate before the breach, and became consistently higher than the market rate after the breach

Source: PX 1708 – PX 1713; PX 1715; PX 1718; PX 1721; PX 1724; PX 1727; PX 1730; PX 1732; PX 1734 – PX1737; PX 6037

# EXHIBIT 2

# In the United States Court of Federal Claims

RECEIVED
AUG 17 A 7:52
CASE PROCESSING UNIT
CIVIL DIVISION/OHI

FILED
AUG 16 2000
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * *

LA VAN, et al., *

Plaintiffs, *

and *

FEDERAL DEPOSIT INSURANCE CORPORATION, * No. 90-581C

Plaintiff-Intervenor, * Filed: August 16, 2000

v. *

UNITED STATES OF AMERICA, *

Defendant. *

* * * * * * * *

**ORDER**

Our ruling on defendant's motion was based on its representation that plaintiffs were seeking to raise new theories in their expert report. We would not oppose amendments or refinements to an existing report; such is the obligation of any expert. This is an issue that should be resolved by the presiding judge, but it is not clear when an assignment will be made in this case. Therefore, if defendant wishes to respond to plaintiff FDIC's arguments that it will not be prejudiced, we will consider this issue once again.

Robert H. Hodges, Jr.
Judge