IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - x

AMBASE CORPORATION, ET AL. :

Plaintiffs :

and : No. 93-531

FDIC :

Plaintiff-Intervenor :

-vs- :

UNITED STATES OF AMERICA, :

Defendant :

- - - - - - - - - - - - - - - - - x

April 5, 2006

Washington, D.C.

DEPOSITION OF:

STEVEN JOHNSTON

was called for examination by counsel for the Plaintiffs, pursuant to notice, taken at Cooper & Kirk, 555 11th Street, N.W., Suite 750, Washington, D.C., commencing at 9:37 a.m., before Misty Klapper, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

ratified -- then it's a fixed amount. Interest can accrue, you know. Interest, you know -- I think it's generally accepted that, you know, the IRS has a right to, you know, assess interest under claims. So by locking into a fixed amount, it would seem to me that they forfeited their right to continue assessing interest.

Q. Now, with respect to the federal tax estimates that you feed into the goodwill reporting package, you may have already testified to this, but were these estimates only performed on institutions that required goodwill reporting packages?

A. That's correct.

Q. Do you know why they're only calculated for those?

A. No.

Q. And how long have you been responsible for performing these tax estimates for the goodwill packages at the FDIC?

A. I've been involved in it since before I moved to D.C. from Dallas, which was August of 1999. So just estimating, I would say my involvement probably began in '98 or, possibly, '97.

Q. Have you had any involvement in computing post-insolvency interest estimates for Carteret?



A. No, I don't believe I have.

Q. You were asked a question about the Suess -- S-U-E-S-S -- resolution, the Ben Franklin resolution.

A. Yes.

Q. Just to clarify, you were not involved with that settlement process; is that correct?

A. I had a little bit of involvement at different points just -- I assisted, you know, with different -- preparing different spreadsheets under different scenarios. I can't recall specifically. It's been a few years.

Q. But you were not directly involved in negotiations?

A. No.

MR. HUGHES: No further questions.

MR. THOMPSON: Just one or two very brief questions.

THE WITNESS: Sure.

FURTHER EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BY MR. THOMPSON:

Q. You were asked by Mr. Hughes a question about FFA and whether it can increase taxable income.

Isn't it true that the inclusion of FFA



can increase -- can increase taxable income in terms of wiping out an NOL, but it doesn't give rise to positive taxable income in a particular year, does it?

A. I believe that's correct under the current tax regulations. And long ago it could, you know, go up above that point.

Q. Under the proposed regs it could result in positive taxable income, but under the final regs it can't result in positive taxable income; is that right?

A. I believe that's correct.

MR. THOMPSON: I'm finished.

MR. KUIPER: FDIC has no questions. We'll read and sign.

(Thereupon, signature having not been waived, at 11:45 a.m. the deposition concluded.)



CERTIFICATE OF DEPONENT

I, Steven Johnston, do hereby certify that I have read the foregoing pages, _____ through ______, inclusive, which contain a correct transcript of the answers given by me to the questions propounded to me herein, except for changes, if any, duly noted on the enclosed errata sheet.

______________________
WITNESS

Sworn and subscribed to before me this ___ day of ______________, 2006.

My commission expires: Notary Public:

______________ ______________

______________
Witness