# In the United States Court of Federal Claims

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                        *
AMBASE CORPORATION AND                  *
CARTERET BANCORP, INC.                  *
                                        *
         Plaintiffs,                    *
                                        *
and                                     *
                                        *
FEDERAL DEPOSIT INSURANCE          `    *    Case No. 93-531C
CORPORATION,                            *
                                        *    Senior Judge Smith
         Plaintiff-Intervenor,          *
                                        *    Filed:   October 31, 2011
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
         Defendant.                     *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

**ORDER**

      The Court hereby DENIES Defendant's Motion to Reconsider. The Court, however, clarifies its opinion on page 29 Section "f. Mitigation" as follows:

**f. Mitigation**

    The Government has also suggested that Carteret was at all times shielded from the effects of the breach because it fully mitigated shortly after FIRREA was enacted when it received a $20 million capital infusion from AmBase and because it sought and obtained a preliminary injunction in 1991 that required OTS to accord full regulatory capital treatment to Carteret's contractual goodwill. This is just not true.

    Following the breach in 1989, AmBase invested $20 million in Carteret to enable the thrift to comply fully with FIRREA's minimum regulatory capital requirements. Thus, the investment arguably mitigated the breach until Carteret's commercial real estate losses caused the thrift to fall out of compliance. In 1991, AmBase invested $30 million to partially mitigate the breach. AmBase argues that, absent the breach, it would have had the money to invest in Carteret after Carteret fell out of regulatory capital compliance in June 1991. Further, there is evidence that AmBase could have invested significantly more if there were other investors.

    The Government further argues that Carteret would have been out of compliance by an

additional $50 million if the money had not been invested in 1989 and 1991; therefore, the timing of the investment was irrelevant to Carteret's inability to satisfy the minimum regulatory capital requirements. As the Federal Circuit observed in *Old Stone Corp. v. United States*, 450 F.3d 1360 (Fed. Cir. 2006), the Government is not responsible if an economic downturn causes the thrift to be seized after the holding company has mitigated the breach. The Government points out that by June 1991, Carteret could not satisfy its minimum tangible requirements even if AmBase could have infused cash to replace all the goodwill affected by FIRREA. Therefore, under *Old Stone* the Government contends it is not responsible for the losses Carteret allegedly suffered after AmBase mitigated the breach. *Old Stone*, 450 F.3d at 1375. The Court finds that this argument is without merit. It is clear, that absent the breach, Ambase would have had $50 million left in its pockets to invest in Carteret and this investment would have been critical in obtaining further capital from other investors. In fact, the evidence presented at trial was that AmBase was willing to invest up to $150 million. AmBase did not do this is as this money alone would not satisfy the regulatory requirements. Additionally, the regulators were breathing down Carteret's neck by not honoring the injunction and investors were not willing to invest in this climate.

   The Government's argument is like that of a bad driver who destroys your car and then says because you have replaced it with your own money you have no damages. Here, the Plaintiffs are not seeking consequential damages where mitigation might be an issue, but damages for the destruction of the bank which the breach has directly caused. Causation is the key issue in this case. The only role of mitigation analysis is to determine whether the Government's breach or the Bank's own actions were the primary cause of the Bank's demise. Without the breach and an additional $50 million investment from AmBase, Carteret's ability to attract investments would have been dramatically improved and the Court finds from the evidence the bank would have survived.

       **It is so ORDERED**.

                                                 s/Loren A. Smith  
                                                 LOREN A. SMITH,  
                                                 SENIOR JUDGE